## KEOGH, COX & WILSON, LTD.
ATTORNEYS AT LAW

STEPHEN R. WILSON
JOHN P. WOLFF, III*
STEVEN G. JUDICE
ANDREW BLANCHFIELD
EDWARD F. STAUSS, III
KIRK L. LANDRY*
GRACELLA SIMMONS
NANCY B. GILBERT
COLLIN J. LEBLANC
CHAD A. SULLIVAN, R.N., J.D.++
CHRISTOPHER K. JONES
MARY ANNE WOLF**
STEPHEN M. WHITLOW
MARTIN E. GOLDEN

*LICENSED IN LOUISIANA & TEXAS
++REGISTERED NURSE
** LICENSED ENGINEER

701 MAIN STREET (70802)
P.O. BOX 1151 (70821)
BATON ROUGE, LOUISIANA
(225) 383-3796
FAX (225) 343-9612
kcwlaw@kcwlaw.com

mgolden@kcwlaw.com

November 23, 2010

TORI S. BOWLING
TIFFANY N. THORNTON
VIRGINIA J. MCLIN
KIMBERLY HIGGINBOTHAM
JAMIE A. POLOZOLA
NICHOLE A. SCHULTE

SPECIAL COUNSEL
ANDREW J. HODGES IV

OF COUNSEL:
JOHN R. KEOGH
REBECCA H. KLAR
BRIAN COX (1923 - 2010)

POSTED
NOV 24 2010

Clerk of Court, Civil Section
19th Judicial District Court
300 North Boulevard
Baton Rouge, LA 70802

RE:  *Maria Cruz Maldonado, et ux. v. Kiewit Louisiana Co., d/b/a Kiewitt Massman
Traylor Constructors a/k/a KMTC, et al*, Suit No: 582,129 Division "D", 19th Judicial
District Court, Parish of East Baton Rouge, State of Louisiana
Our File No.: 156.1024905

Dear Sir:

Please find enclosed the original and three (3) copies of a Motion for Summary Judgment,
Statement of Material Facts which are not genuinely disputed, exhibits, and Memorandum in Support
in the captioned matter. Please present the original to Judge Clark, certify the copies, and return one
of the certified copies in the enclosed, self-addressed envelope. One copy is provided for service,
which I ask that you have perfected in accordance with the instructions thereon. Return a file-
stamped copy to my courier at the time of filing. I am also enclosing my firm's check in the amount
of $440 in payment of all costs incurred herewith. Please let me know if you need anything further.

By copy of this letter to all counsel of record, I am providing them with a copy of this
pleading.

Very truly yours,

KEOGH, COX & WILSON, LTD.

Martin E. Golden

MEG/scc
Enc.
cc:  Wade R. Quinn, via US Mail, with enclosure

EXHIBIT
C

582,129 Division "D"
November 23, 2010
Page 2

Bruce R. Hoefer, Jr.. via US Mail, with enclosure
Steve M. Sikich. via US Mail, with enclosure
Keely Y. Scott & Leigh Groves, via US Mail, with enclosure
Terrence Brennan, via US Mail, with enclosure
Charles Clayton. via US Mail, with enclosure
Robert Lyon, via US Mail, with enclosure
Juan Carlos Hernandez. via US Mail, with enclosure
James T. Busenlener. via US Mail, with enclosure

NINETEENTH JUDICIAL DISTRICT COURT

PARISH OF EAST BATON ROUGE

STATE OF LOUISIANA

COST OK $ 440 –

NOV 2 4 2010

DEPUTY CLERK OF COURT

MARIA CRUZ MALDONADO, ET AL

V.

KIEWITT LOUISIANA CO. d/b/a KIEWITT
MASSMAN TRAYLOR CONSTRUCTORS
a/k/a KMTC, ET AL

POSTED SUIT NUMBER 582,129



DIVISION "D"

## MOTION FOR SUMMARY JUDGMENT

NOW INTO COURT, through undersigned counsel, comes the defendant, JL Steel Reinforcing, L.L.C. ("JL Steel"), and moves for Summary Judgment dismissing the plaintiffs' suit against JL Steel because there are no genuine issues of material fact remaining for trial and JL Steel is entitled to judgment as a matter of law, on the following grounds:

1.

JL Steel owns and operates JL Steel Reinforcing, L.L.C., which employed Ulvaldo Soto Martinez ("Martinez") as a laborer and construction worker at the time of the subject accident.

2.

Since Martinez was in the course and scope of his employment for JL Steel at the time of the subject accident, his exclusive remedy against JL Steel for any form of non-intentional tort is workers' compensation. La. R. S. 23:1032(A).

3.

Plaintiffs allege that JL Steel and its Foreman, Angel Felipe Corona ("Corona"), (1) knew that Martinez's death was certain to follow by ordering him to the top of the rebar cage to disengage a crane; (2) knew the consequences that were reasonably certain to follow when they ordered Martinez to climb the cage and prematurely disengage the crane; (3) believed that Martinez's death was substantially certain to follow by ordering him to the top of the cage to disengage the crane prematurely; and (4) knew that Martinez's death was certain or substantially certain to follow by their actions of ordering him to the top of the cage to prematurely disengage the crane.

1

EBR530120

Furthermore, Plaintiffs allege that JL Steel knew Martinez's death was substantially certain to follow by allowing the foregoing commissions and omissions to occur, yet proceeded with the acts and omissions regardless of the risk.

Despite their conclusory allegations that JL Steel intended to cause Martinez's death, JL Steel and Corona executed the attached affidavit averring that there actions were not intentional. *Please see* Affidavit of Angel Felipe Corona attached hereto as Exhibit A. There are no genuine issues of material fact remaining for trial on Plaintiffs' intentional tort claim and JL Steel is entitled to judgment as a matter of law. La. C. C. P. Art. 966.

WHEREFORE, the defendant, JL Steel Reinforcing, L.L.C., prays that its Motion for Summary Judgment be set for hearing at the Court's next available date, and that the Motion be granted and plaintiffs' suit dismissed at their cost.

Respectfully submitted,
KEOGH, COX & WILSON, LTD.

By: _Mar E Ill_

    Martin E. Golden (#14295)
701 Main Street
Baton Rouge, LA 7080
P. O. Box 1151
Baton Rouge, LA 70821-1151
Telephone: 225.383.3796
Facsimile: 225.343.9612
mgolden@kcwlaw.com

-and-
Wade R. Quinn
Attorney-in-Charge
TBA No. 16433600
Southern District #10917
Ramey, Chandler, McKinley & Zito, P.C.
One Bering Park
750 Bering Drive, Suite 600
Houston, Texas 77057
713-266-0074 - Phone
713-266-1064 - Fax
Wquinn@ramey-chandler.com

**Attorneys for Defendant,
JL Steel Reinforcing, LLC**

**CLERK OF COURT
FILE COPY**
CASE ID:_____
FILING DATE:_____
ATTORNEY:_____
NO. PAGES:_____

EXHIBIT/ATTACHMENT TO:
☐   MOTION/SUMMARY JDGMT
☐   PETITION
☐   MEMORANDUM
☐   OTHER_____

**DEPUTY CLERK**

2

NINETEENTH JUDICIAL DISTRICT COURT

PARISH OF EAST BATON ROUGE

STATE OF LOUISIANA

MARIA CRUZ MALDONADO, ET AL      §      SUIT NUMBER 582,129

V.      §

KIEWITT LOUISIANA CO. d/b/a KIEWITT §
MASSMAN TRAYLOR CONSTRUCTORS §
a/k/a KMTC, ET AL      §      DIVISION "D"

## ORDER

IT IS ORDERED that the defendant, JL Steel Reinforcing, L.L.C.'s Motion for
Summary Judgment, is set for hearing by this Court on the _____7_____ day of
_____, 2010, at 9:30 a.m.

Baton Rouge, Louisiana, this _____30_____ day of _____Nov_____, 2010

_____
JUDGE JANICE CLARK, DIVISION D,
19TH JUDICIAL DISTRICT COURT, EAST
BATON ROUGE PARISH

## SERVICE INFORMATION

Please Serve:

**The Plaintiffs, Maria Cruz
Maldonado, Individually and as
Representative of the Estate of
Ulvaldo Soto Martinez, Deceased,
and as next Friend and Natural
Guardian of Justin Soto-
Maldonado and Usvaldo Jesus
Soto-Maldonado, Minors,**

Through their counsel of record,
Steve M. Sikich (Bar No. 18026)
The Sikich Law Firm
309 E. Sallier Street, Ste. B
Lake Charles, LA 70601.

## CERTIFICATE

I hereby certify that a copy of the above and foregoing has been mailed, postage
prepaid, on this _23d_ day of _November_, 2010, to all counsel of record.

_____
Martin E. Golden

3

NINETEENTH JUDICIAL DISTRICT COURT

PARISH OF EAST BATON ROUGE

STATE OF LOUISIANA

MARIA CRUZ MALDONADO, ET AL    §       SUIT NUMBER 582,129
                               §
V.                            §
                               §
KIEWITT LOUISIANA CO. d/b/a KIEWITT §
MASSMAN TRAYLOR CONSTRUCTORS §
a/k/a KMTC, ET AL                 §       DIVISION "D"

**STATEMENT OF MATERIAL FACTS WHICH ARE NOT GENUINELY DISPUTED**

NOW INTO COURT, through undersigned counsel, comes the defendant, JL

Steel Reinforcing, L.L.C., and shows that the following facts material to plaintiffs' claims

against it are not genuinely disputed for purposes of this Motion for Summary

Judgment:

1. Ulvaldo Soto Martinez was in the course and scope of his employment for JL Steel as a laborer and construction worker at the time of the subject accident.

2. This is a personal injury case stemming from a work-related construction accident in Bridge City, Louisiana that resulted in Martinez's death.

3. Plaintiffs have alleged wrongful death, survival, and other tort claims against JL Steel based on its alleged negligence and gross negligence with respect to Martinez's work related death. Plaintiffs have also alleged that Martinez's death resulted from JL Steel's intentional act(s).

4. JL Steel and Angel Felipe Corona did not consciously, or subconsciously for that matter, desire to bring about the death of Uvaldo Martinez when Corona sent Martinez up the rebar cage to disengage the crane. *Please see* Affidavit of Angel Rodriguez attached hereto as **Exhibit A.**

5. Corona too was devastated by the death of his co-worker and friend. Corona has always maintained that had he thought for a second that the injury and subsequent death of Martinez was substantially certain to follow from climbing up the rebar cage to disengage the crane he would have never sent him up to release the crane. *Id.*

6. Corona did not know or believe that Martinez's death was virtually sure to occur, or nearly inevitable *Id.* Had Corona thought for a second that the injury and subsequent death of Martinez was virtually sure to occur, or nearly inevitable, from climbing up the rebar cage to disengage the crane he would have never sent him up to release the crane. *Id.*

7. As has been shown here though Angel Corona's affidavit and the law in this State, JL Steel's and Corona's actions cannot be considered intentional.

8. Therefore, the Workers' Compensation Act applies and afford Plaintiffs with their sole remedy in this case.


EBR530121

Respectfully submitted,
KEOGH, COX & WILSON, LTD.

By: _Mar E. Sch_
      Martin E. Golden (#14295)
701 Main Street
Baton Rouge, LA 7080
P. O. Box 1151
Baton Rouge, LA 70821-1151
Telephone: 225.383.3796 ext. 140
Facsimile: 225.343.9612
mgolden@kcwlaw.com

-and-

Wade R. Quinn
Attorney-in-Charge
TBA No. 16433600
Southern District #10917
Ramey, Chandler, McKinley & Zito. P.C.
One Bering Park
750 Bering Drive, Suite 600
Houston, Texas 77057
713-266-0074 - Phone
713-266-1064 - Fax
Wquinn@ramey-chandler.com
**Attorneys for Defendant,**
**JL Steel Reinforcing, LLC**

## CERTIFICATE

I hereby certify that a copy of the above and foregoing has this day been mailed,
postage prepaid, on this _23d_ day of _November_, 2010, to all counsel of record.

_Mar E. Sch_
Martin E. Golden

NINETEENTH JUDICIAL DISTRICT COURT

PARISH OF EAST BATON ROUGE

STATE OF LOUISIANA

MARIA CRUZ MALDONADO, ET AL     §         SUIT NUMBER 582,129
                                §

V.                                §
                                §
KIEWITT LOUISIANA CO. d/b/a KIEWITT §
MASSMAN TRAYLOR CONSTRUCTORS §
a/k/a KMTC, ET AL                  §         DIVISION "D"

## MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

MAY IT PLEASE THE COURT:

COMES NOW Defendant JL Steel Reinforcing, L.L.C. ("JL Steel") and files this Motion for Summary Judgment because JL Steel has been improperly joined as a party and would respectfully show this Honorable Court the following:

### I. Summary of Argument

The Court should dismiss any and all of Plaintiffs' claims against JL Steel because Plaintiffs improperly joined JL Steel as a party to this case.

At the time of his death, Ulvaldo Soto Martinez ("Martinez") was employed by JL Steel. JL Steel provided workers' compensation coverage to its employees and Martinez was covered under this policy at the time of his accident and death. As such, JL Steel is immune from Plaintiffs' claims under applicable workers' compensation law (Louisiana) and has been improperly joined as a party in this litigation.

### II. Facts

This is a personal injury case stemming from a work-related construction accident in Bridge City, Louisiana that resulted in Martinez's death. Plaintiffs have alleged wrongful death, survival, and other tort claims against JL Steel based on its alleged negligence and gross negligence with respect to Martinez's work related death. Plaintiffs have also alleged that Martinez's death resulted from JL Steel's intentional act(s).


EBR530122

## III. Argument

### A. *Louisiana Workers' Compensation Act Applies Absent an Intentional Act*

JL Steel provided its employees with workers compensation coverage in both Louisiana and Texas. *See* Affidavit of Karen Terrell attached hereto as **Exhibit B** and "Workers' Compensation and Employers' Liability Policy" issued by The Hartford and attached hereto as **Exhibit B1**.

This accident occurred in Louisiana. Workers' compensation laws in both Louisiana and Texas provide injured employees with their sole remedy against their employer, and provide covered employers with statutory immunity from tort based lawsuits from their employees arising out of work place related accidents.

Under the Louisiana Workers' Compensation Act (the "Louisiana Act"), employers are immune from all tort claims except those based on intentional acts. La.Rev.Stat. 23:1032. *See Bourgue v. Nan Ya Plastics Corp.*, 906 F.Supp. 348, 350 (M.D. La. 1995), *affirmed* 157 F.3d 903 (5th Cir. 1995)(holding that, under the Louisiana Act, an employer is immune from tort claims by its employees because the remedies provided to an injured employee under the Louisiana Act displace all other rights and remedies against the employer). Texas' Workers' Compensation Act excepts intentional tort claims and gross negligence claims. Tex. Labor Code §408.001(b).

In *Hughes Wood Products v. Wagner*, the Texas Supreme Court held that *Restatement (Second) of Conflicts* §184, supplies the correct standard a court should employ when determining which state's law applies to the issue of tort suit immunity in cases involving workers' compensation coverage. 18 S.W.3d 202, 206 (Tex. 2000). Texas has long employed the multi-factor "most significant relationship" test under sections 6 and 145 of the *Restatement* when deciding choice of law issues. *Id.* at 205. The *Hughes Wood* Court noted that, "Section 184 of the *Restatement* provided the standards by which a court is to determine immunity from a tort suit when an employee is covered by workers' compensation insurance." *Id.* at 205. Furthermore, the *Hughes Wood* Court noted that the *Restatement's* admonition to consider which state's law has the most significant relationship to the particular substantive issue to be resolved and

2

approved Section 184 precisely because it "articulates and applies the principles of Section 6 [of the *Restatement*] to the workers' compensation exclusive remedy issue." *Id* at 206.

Section 184 of the *Restatement* provides:

"Recovery for a tort or wrongful death will not be permitted in any state if the defendant is declared immune from such liability by the workmen's compensation statute of a state under which the defendant is required to provide insurance against the particular risk and under which

(a)  the plaintiff has obtained an award for the injury, or
(b)  the plaintiff could obtain an award for the injury, if this is the state (1) where the injury occurred, or (2) where the employment is principally located, or (3) where the employer supervised the employee's activities from a place of business in the state, or (4) whose local law governs the contract of employment under the rules §§ 187-188 and 196."

RESTATEMENT (SECOND) OF CONFLICTS OF LAWS § 184 (1971).

Under Section 184, Louisiana law will govern JL Steel's immunity from suit if (1) JL Steel would be immune from suit under Louisiana law, and (2) Plaintiffs have obtained or could obtain an award for Martinez's death in Louisiana. Both of these elements are met in this case.

First, the Louisiana Act provides that, except for intentional acts, workers' compensation benefits are the exclusive remedy for claims by inured employees against their covered employers. La.Rev.Stat. 23:1032. It is undisputed that JL Steel was Martinez's employer at the time of his death. *See* Affidavit of Megan LaPointe attached hereto as **Exhibit C** and Martinez's "Aplicacion Para Empleo" (Application for Employment) with JL Steel LP attached hereto as **Exhibit C1**. It is undisputed that JL Steel maintained workers' compensation insurance coverage under the Louisiana Act. *See* **Exhibit B**. Therefore, JL Steel is immune from Plaintiffs' claims under the Louisiana Act. The first element of Section 184 of the *Restatement* is met.

Second, Martinez did not obtain an award for his injury in Louisiana but certainly could have done so. It has been shown above that Martinez was employed by JL Steel and thus could obtain benefits under JL Steel's workers' compensation

3

coverage. Also, JL Steel filed a report of Martinez's injury with its workers' compensation insurance carrier and submitted same to the office of workers' compensation administration in Baton Rouge, Louisiana as required by Louisiana law. *See* Affidavit of Julie Justice attached hereto as **Exhibit D** and LDOL-WC-1007, "Employer Report of Injury/Illness" attached hereto as **Exhibit D1**. JL Steel's filing of LDOL-WC-1007 was necessary and it triggered the workers' compensation coverage. JL Steel's filing of LDOL-WC-1007 made it possible for Martinez to obtain a workers compensation award in Louisiana.

Martinez, and now subsequently Maria Cruz Maldonado, Individually and as Representative of the Estate of Ulvaldo Soto Martinez, deceased, and as Next Friend and Natural Guardian of Justin Soto-Maldonado and Usvaldo Jesus Soto-Maldonado, Minors, and Gilberto Soto Martinez could obtain an award for Martinez's death in Louisiana because Louisiana is the state (1) where the injury and death occurred, (2) where the employer supervised the employee's activities from a place of business in the state, and (3) Louisiana law governs the contract of employment. The second element of Section 184 of the *Restatement* is met. Louisiana law also governs JL Steel's immunity to suit in tort under Louisiana's choice of law rules, Civil Code Articles 3542 – 3548. *Rigdon v. Pittsburgh Tank & Tower Co., Inc.*, 682 So.2d 1303, 1995-2611 (La. App. 1 Cir. 11/8/96).

*B.    JL Steel's Actions Were NOT Intentional*

Angel Rodriguez was the JL Steel employee who managed and supervised the JL Steel employees at this location. Angel Rodriguez advised Uvaldo Soto Martinez and two other JL Steel employees to claim the rebar cage and unhook the crane that had set the rebar cage on top of the concrete pier.

Plaintiffs allege in their Second Supplemental and Amending Petition for Damages, Paragraph 6, that: (1) JL Steel and Angel Rodriguez knew that the resulting death or serious injury was certain to follow by ordering the men to the top of the cage to disengage the crane; (2) JL Steel and Angel Rodriguez knew the consequences that were reasonably certain to follow when they ordered Plaintiff to climb the cage and

4

prematurely disengage the crane; (3) JL Steel and Angel Rodriguez believed that the resulting death or serious injury was substantially certain to follow by ordering plaintiff to the top of the cage to disengage the crane prematurely; and (4) JL Steel and Angel Rodriguez knew that the resulting death or serious injury were certain or substantially certain to follow by their actions of ordering the men to the top of the cage to prematurely disengage the crane.

Furthermore, Plaintiffs allege in their Second Supplemental and Amending Petition for Damages, Paragraph 13(q) that JL Steel knew the death of plaintiff was substantially certain to follow by allowing the foregoing commissions and omissions to occur, yet proceeded with the acts and omissions regardless of the risk.

The remedies provided to an injured employee by the Louisiana Workers' Compensation statute, La.R.S. 23:1032 displace all other rights and remedies against the injured employee's employer or co-employees. "The rights and remedies herein granted to an employee ... on account of injury ... for which he is entitled to compensation under this Chapter, shall be exclusive of all other rights and remedies of such employee ... against his employer, or any principal or any officer, director, stockholder, partner, or employee of such employer or principal, for said injury ..." La.R.S. 23:1032, Section 1032 A. (1)(a).

However, an employee's claim against his employer or co-workers is not barred by the Workers' Compensation statute if the claim is based on an intentional act. "Nothing in this chapter shall affect the liability of the employer ... or employee of such employer or principal to a fine or penalty under any other statute or the liability, civil or criminal, resulting from an intentional act." La.R.S. 23:1032, Section 1032 B.

The workers' compensation statute does not define "intentional act," but Louisiana jurisprudence has set forth a definition of "intentional tort." A tort is intentional whenever the defendant consciously desires to bring about the physical results of his act or believes those results are substantially certain to follow from the conduct. *Bazley v. Tortorich*, 397 So.2d 475 (La., 1981); *King v. Schuylkill Metals Corp.*, 581 So.2d 300 (La.App. 1 Cir., 1991). An employer's mere knowledge or appreciation of a work place

5

risk to an employee does not constitute "intent" under the intentional act exclusion. *Tapia v. Schwegmann Giant Supermarkets, Inc.*, 590 So.2d 806 (La.App. 4 Cir., 1991). An injury is not "substantially certain" to occur merely because a high probability of injury exists; injury is only intentionally caused where the injury is virtually sure to occur, or nearly inevitable. *Mahfouz v. J.A.C.E. Oilfield Sales and Service, Inc.*, 569 So.2d 1074 (La.App. 3 Cir., 1990). Negligence, or even gross negligence, is not enough to allow imputation of intent. *Gallant v. Transcontinental Drilling Co.*, 471 So.2d 858 (La.App. 2 Cir., 1985).

Plaintiffs have asserted to this Court that JL Steel, and specifically Angel Felipe Corona's ("Corona"), actions were intentional and thus they consciously desired to bring about the death of Uvaldo Martinez when Corona sent Martinez up the rebar cage to disengage the crane, or that JL Steel, and specifically Angel Corona, believed Martinez's death was substantially certain to follow from climbing up the rebar cage to disengage the crane.

JL Steel and Corona did not consciously, or subconsciously for that matter, desire to bring about the death of Uvaldo Martinez when Corona sent Martinez up the rebar cage to disengage the crane. *Please see* Affidavit of Angel Corona attached hereto as **Exhibit A**. Corona too was devastated by the death of his co-workers and friends. *Id.* Corona has always maintained that he had thought for a second that the injury and subsequent death of Martinez was substantially certain to follow from climbing up the rebar cage to disengage the crane he would have never sent him up to release the crane. *Id.*

Plaintiffs continue and have further asserted to this Court that Uvaldo Martinez's death was intentionally caused by JL Steel, and specifically Angel Corona, because Corona knew that Martinez's death was virtually sure to occur, or nearly inevitable. Again, Corona did not know or believe that Martinez's death was virtually sure to occur, or nearly inevitable. *See* **Exhibit A**. Had Corona thought for a second that the injury and subsequent death of Martinez was virtually sure to occur, or nearly inevitable, from climbing up the rebar cage to disengage the crane he would have never

6

sent him up to release the crane. *Id.*

As has been shown here though Angel Corona's affidavit and the law in this State, JL Steel's and Corona's actions cannot be considered intentional. Therefore, as outlined above, Louisiana's Workers' Compensation Act applies and afford Plaintiffs with their sole remedy in this case.

### IV. Conclusion

JL Steel is immune from Plaintiffs' non-intentional tort claims under Louisiana law because the deceases was in the course and scope of his employment for the JL Steel at the time of the accident, and there are no genuine issues of material fact remaining for trial on the plaintiffs' intentional tort claim against JL Steel. Accordingly, JL Steel is entitled to judgment as a matter of law, and prays for judgment dismissing the plaintiffs' claims against it at the plaintiffs' cost.



Respectfully submitted,

KEOGH, COX & WILSON, LTD.

By: Martin E. Golden (#14295)
701 Main Street
Baton Rouge, LA 7080
P. O. Box 1151
Baton Rouge, LA 70821-1151
Telephone: 225.383.3796 ext. 140
Facsimile: 225.343.9612
mgolden@kcwlaw.com

-and-

Wade R. Quinn
Attorney-in-Charge
TBA No. 16433600
Southern District #10917
Ramey, Chandler, McKinley & Zito, P.C.
One Bering Park
750 Bering Drive, Suite 600
Houston, Texas 77057
713-266-0074 - Phone
713-266-1064 - Fax
Wquinn@ramey-chandler.com

**Attorneys for Defendant,
JL Steel Reinforcing, LLC**

7

## CERTIFICATE

I hereby certify that a copy of the above and foregoing has this day been mailed, postage prepaid, on this _23d_ day of _November_ , 2010, to all counsel of record.

_Martin E. Golden_
Martin E. Golden

8

NINETEENTH JUDICIAL DISTRICT COURT

PARISH OF EAST BATON ROUGE

STATE OF LOUISIANA

CLERK OF COURT
FILE COPY

CASE ID: _____

MARIA CRUZ MALDONADO, ET AL §
§
V. §
§
KIEWITT LOUISIANA CO. d/b/a KIEWITT §
MASSMAN TRAYLOR CONSTRUCTORS §
a/k/a KMTC, ET AL §

SUIT NUMBER: _____
FILING DATE: _____
ATTORNEY: _____
NO. PAGES: _____

EXHIBIT / ATTACHMENT _____
DIVISION □ □  MOTION/SUMMARY _____
            □  PETITION
            □  MEMORANDUM
ANGEL FELIPE CORONA AFFIDAVIT  OTHER _____

Before me, the undersigned notary, on this day personally appeared Angel Felipe Corona the affiant, a person whose identity is known to me. After I administered an CLERK oath to affiant, affiant testified:

"My name is Angel Felipe Corona. I am over 18 years of age, of sound mind, and capable of making this affidavit. The facts stated in this affidavit are within my personal knowledge and are true and correct.

1.  JL Steel Reinforcing, LLC ("JL Steel") is a general/subcontracting company that specializes in the installation of reinforcing steel. On June 16, 2008 JL Steel entered into a subcontract with Kiewitt Louisiana Co. on the Huey P. Long Bridge Widening Project in Bridge City, Louisiana.

2.  I have worked at JL Steel since 2008 and worked on the above project in Louisiana.

3.  I have received and read Plaintiffs', Maria Cruz Maldonado, Individually and as Representative of the Estate of Ulvaldo Soto Martínez, deceased, and as Next Friend and Natural Guardian of Justin Soto-Maldonado and Ulvaldo Soto-Maldonado, Minors, and Gilberto Soto Martinez, Second Supplemental and Amending Petition for Damages and I am familiar with their causes of actions and allegations.

4.  The Plaintiffs' causes of action arises from an on-the-job accident. On June 12, 2009 Ulvaldo Soto Martinez was working for JL Steel on the Huey P. Long bridge widening project in Bridge City, Louisiana. Mr. Martinez was climbing down from a rebar cage that had been set and secured when the cable system holding the cage in place failed causing the cage to collapse. Mr. Martinez and another JL Steel employee, Martin Anastacio Reyes Osuna, were killed in the accident.

5.  In their Second Supplemental and Amending Petition for Damages the Plaintiffs allege the following intentional acts:

    a.  JL Steel and I knew that the resulting death or serious injury was certain to follow by ordering the men (Martinez and Reyes-Osuna) to the top of the cage to disengage the crane prematurely;

    b.  JL Steel and I knew the consequences that were reasonably certain to follow when we ordered [Mr. Martinez] to climb the cage and prematurely disengage the crane;

    c.  JL Steel and I believed that the resulting death or serious injury was substantially certain to follow by ordering [Mr. Martinez] to the top of the cage to disengage the crane prematurely;



EBR530123

    d.    JL Steel and I knew that the resulting death or serious injury was substantially certain to follow by their actions of ordering the men to the top of the cage to prematurely disengage the crane; and

    e.    JL Steel knew the death of [Mr. Martinez] was substantially certain to follow by allowing the foregoing commissions and omissions to occur, yet proceeded with the acts and omissions regardless of the risk.

6.    It is true that I was the Foreman for JL Steel at the site and that I instructed Mr. Martinez and his co-workers to the top of the cage, but the load (cage) had already been released by the crane. The rigging was slack and the cage was held in place by a series of guy cables (a method that had been used successfully on two piers prior to this one). The men were sent to disconnect the slack rigging from the top of the rebar cage.

7.    What is not true is that JL Steel, specifically me, did not consciously, or subconsciously for that matter, desire and/or intend to bring about the death of Ulvaldo Martinez when I sent him up the rebar cage to disconnect the rigging.

8.    If I thought for a second that the serious injury and subsequent death of Mr. Martinez was substantially certain to follow from climbing up the rebar cage to disconnect the rigging then JL Steel, specifically me, I would have never sent him up the cage.

9.    I did not think, know or believe that Mr. Martinez's death was virtually sure to occur, or nearly inevitable.

10.    Again, if I thought for a second that the injury and subsequent death of Mr. Martinez was virtually sure to occur, or nearly inevitable, from climbing up the rebar cage to disconnect the rigging then JL Steel, specifically me, I would have never sent him up to disconnect the rigging.

11.    Martin Reyes Osuna was a very close friend to me and I have been, and am currently, devastated by the tragic accident."

Angel Felipe Corona

SWORN TO AND SUBSCRIBED before me, the undersigned authority, by the said Angel Felipe Corona on _7-28-10_, 2010, to certify which witness my hand and seal of office.

Notary Public in and for the
State of Louisiana

My Commission Expires:

OFFICIAL SEAL
JAMES F. EZELL
NOTARY #53735
PARISH OF LIVINGSTON
My Commission Expires

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

GUADALUPE ARENAS VARGAS,                §
Individually and As Representative       §
of the Estate of MARTIN ANASTACIO        §
REYES OSUNA, Deceased, and As Next       §
Friend of ZAID MARTIN REYES ARENAS       §
                                         §
VS.                                      §          CA: 4:09-cv-02521
                                         §
TRAYLOR BROTHERS, INC., IHI, INC.,       §
MASSMAN CONSTRUCTION CO. & JL            §
STEEL REINFORCING, LLC                   §

## BUSINESS RECORD AFFIDAVIT

Before me, the undersigned notary, on this day personally appeared Karen Terrell,

the affiant, a person whose identity is known to me. After I administered an oath to affiant,

affiant testified:

"My name is Karen Terrell. I am over 18 years of age, of sound mind,
and capable of making this affidavit. The facts stated in this affidavit are
within my personal knowledge and are true and correct.

I am a Specialize Services  - Front Line Manager for The Hartford
Insurance Company.

Attached to this affidavit are forty-nine (49) pages of records from The
Hartford Insurance Company.

These records are kept by The Hartford Insurance Company in the
regular course of business, and it was the regular course of business of The
Hartford Insurance Company for an employee or representative of The
Hartford Insurance Company, with knowledge of the act, event, condition,
opinion, or diagnosis that was recorded, to make this record or to transmit the
information to be included in this record. The record was made at or near the
time or reasonably soon after the act, event, condition, opinion, or diagnosis
that was recorded. The records attached to this affidavit are the originals or
exact duplicates of the originals."

Karen Terrell



# Workers' Compensation and Employers' Liability

## Policy

From The Hartford




Endorsements



THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## CHANGE IN INFORMATION PAGE

INSURER: HARTFORD UNDERWRITERS INSURANCE COMPANY
NCCI Company Number: 10456                           AUDIT PERIOD:   ANNUAL
POLICY EFFECTIVE DATE:   06/30/08                    POLICY EXPIRATION DATE:   06/30/09
Policy Number: 46 WE  QTL803        Endorsement Number: 01      HOUSING CODE:  S5
Effective Date: 04/08/09    Effective hour is the same as stated in the Information Page of the policy.
Named Insured and Address:   J.L. STEEL REINFORCING, LLC

                     P.O. BOX 14709
                     FORT WORTH, TX 76117

FEIN Number: 262601354                          PRO RATA FACTOR:    .227
PRODUCER NAME:   FRANK SIDDONS INS AGY FT WORTH, INC         PRODUCER CODE: 505375
It is agreed that the policy is amended as follows:
ANY CHANGES IN YOUR PREMIUM WILL BE REFLECTED IN YOUR NEXT BILLING
STATEMENT.

                     THIS IS NOT A BILL.

IN CONSIDERATION OF A PREMIUM TO BE DETERMINED AT AUDIT IT IS AGREED THAT:

FORM NUMBERS OF ENDORSEMENTS ADDED TO THIS POLICY AT ENDORSEMENT
ISSUE: G2240 3B01

FORM NUMBERS OF ENDORSEMENTS REVISED AT ENDORSEMENT
ISSUE: WC000311      WC420304

Countersigned by _____
                                        Authorized Representative

Form WC 99 00 06 A     (1) Printed in U.S.A.              Page 1
Process Date: 07/15/09                            Policy Expiration Date: 06/30/09



THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## VOLUNTARY COMPENSATION AND EMPLOYERS LIABILITY COVERAGE ENDORSEMENT

05254

0100046QT18030509

Policy Number: 46 WE   QT1803

Endorsement Number: 01

Effective Date: 04/08/09     Effective hour is the same as stated on the Information Page of the policy.

Named Insured and Address:   J.L. STEEL REINFORCING, LLC

P.O. BOX 14709
FORT WORTH, TX 76117

This endorsement adds Voluntary Compensation Insurance to the policy.

### A. How This Insurance Applies

This insurance applies to bodily injury by accident or bodily injury by disease. Bodily injury includes resulting death.

1. The bodily injury must be sustained by an employee included in the group of employees described in Item 1 of the Schedule.

2. The bodily injury must occur in the course of employment necessary or incidental to work in a state listed in Item 1 of the Schedule.

3. The bodily injury must occur in the United States of America, its territories or possessions or Canada, and may occur elsewhere if the employee is a United States or Canadian citizen temporarily away from those places.

4. Bodily injury by accident must occur during the policy period.

5. Bodily injury by disease must be caused or aggravated by the conditions of your employment. The employee's last day of last exposure to the conditions causing or aggravating such bodily injury by disease must occur during the policy period.

### B. We Will Pay

We will pay an amount equal to the benefits that would be required of you if you and your employees

described in Item 1 of the Schedule were subject to the workers compensation law shown in Item 1 of the Schedule. We will pay those amounts to the persons who would be entitled to them under the law.

### C. Exclusions

This insurance does not cover:

1. any obligation imposed by a workers compensation or occupational disease law, or any similar law.

2. bodily injury intentionally caused or aggravated by you.

### D. Before We Pay

Before we pay benefits to the persons entitled to them, they must:

1. Release you and us, in writing, of all responsibility for the injury or death.

2. Transfer to us their right to recover from others who may be responsible for the injury or death.

3. Cooperate with us and do everything necessary to enable us to enforce the right to recover from others.

If the persons entitled to the benefits of this insurance fail to do those things, our duty to pay ends at once. If they claim damages from you or from us for the injury or death, our duty to pay ends at once.

Form WC 00 03 11   Printed in U.S.A.
Process Date: 07/15/09

Page 1 of 2
Policy Expiration Date: 06/30/09

E. Recover From Others

If we make a recovery from others, we will keep an amount equal to our expenses of recovery and the benefits we paid. We will pay the balance to the persons entitled to it. If the persons entitled to the benefits of this Insurance make a recovery from others, they must reimburse us for the benefits we paid them.

F. Employers Liability Insurance

Part Two (Employers Liability Insurance) applies to bodily injury covered by this endorsement as though the State of employment shown in the Schedule were shown in Item 3.A. of the Information Page.

## SCHEDULE

| Employees | State of Employment | Designated Workers Compensation Law |
|---|---|---|
| ALL EMPLOYEES, INCLUDING DOMESTIC AND FARM LABORERS, WHO ARE NOT SUBJECT TO THE WORKERS' COMPENSATION LAW OR OCCUPATIONAL DISEASE LAW OF ANY STATE OF THE UNITED STATES OF AMERICA, BUT EXCLUDING ANY PERSON SUBJECT TO THE FEDERAL EMPLOYERS LIABILITY ACT OR THE MERCHANT MARINE ACT (JONES) ACT OF 1920. | TX | WORKERS COMPENSATION LAW OR LAWS OF THE STATE OF OPERATIONS. |

Countersigned by _____

Form WC 00 03 11   Printed in U.S.A.

Authorized Representative
Page 2 Of 2

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## TEXAS WAIVER OF OUR RIGHT TO
## RECOVER FROM OTHERS ENDORSEMENT

Policy Number: 46 WE QT1803           Endorsement Number: 01

Effective Date: 04/08/09    Effective hour is the same as stated on the Information Page of the policy.

Named Insured and Address:  J.L. STEEL REINFORCING, LLC

P.O. BOX 14709
FORT WORTH, TX 76117

This endorsement applies only to the insurance provided by the policy because Texas is shown in Item 3.A. of the Information Page.

We have the right to recover our payments from anyone liable for an injury covered by this policy. We will not enforce our right against the person or organization named in the Schedule, but this waiver applies only with respect to bodily injury arising out of the operations described in the Schedule where you are required by a written contract to obtain this waiver from us.

This endorsement shall not operate directly or indirectly to benefit anyone not named in the Schedule.

The premium for this endorsement is shown in the Schedule.

**SCHEDULE**

1. ( ) Specific Waiver

   Name of person or organization:

   (X) Blanket Waiver

   Any person or organization for whom the Named Insured has agreed by written contract to furnish this waiver.

2. Operations:

3. Premium: INCLUDED

   The premium charge for this endorsement shall be N/A percent of the premium developed on payroll in connection with work performed for the above person(s) or organization(s) arising out of the operations described.

4. Minimum Premium:

5. Advanced Premium:

Countersigned by _____

                                     Authorized Representative

Form WC 42 03 04 Printed in U.S.A.
Process Date: 07/15/09

Policy Expiration Date: 06/30/09

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

ADDITIONAL ENDORSEMENT ADDED TO THE PO

LICY

Policy Number: 46 WE QT1803      Endorsement Number: 01

Effective Date: 04/08/09    Effective hour is the same as stated on the Information Page of the policy.

Named Insured and Address: J.L. STEEL REINFORCING, LLC

P.O. BOX 14709
FORT WORTH, TX 76117

WC000301

Nothing herein contained shall be held to vary, waive, alter, or extend any of the terms, conditions, agreements or declarations of the policy, other than as herein stated.

This endorsement shall not be binding unless countersigned by a duly authorized agent of the company, provided that if this endorsement takes effect as of the effective date of the policy and, at issue of said policy, forms a part thereof, countersignature on the declarations page of said policy by a duly authorized agent of the company shall constitute valid countersignature of this endorsement.

Countersigned by _____

                         Authorized Representative

Form G-2240-3 B Printed in U.S.A.          SEQ 01     Page 1 of 2

Process Date: 07/15/09               Policy Expiration Date: 06/30/09

Form G-2240-3 B



# WORKERS COMPENSATION AND EMPLOYERS LIABILITY INSURANCE POLICY

In return for the payment of the premium and subject to all terms of this policy, we agree with you as follows:

## GENERAL SECTION

**A. The Policy**
This policy includes at its effective date the Information Page and all endorsements and schedules listed there. It is a contract of insurance between you (the employer named in Item 1 of the Information Page) and us (the insurer named on the Information Page). The only agreements relating to this insurance are stated in this policy. The terms of this policy may not be changed or waived except by endorsement issued by us to be part of this policy.

**B. Who Is Insured**
You are insured if you are an employer named in Item 1 of the Information Page. If that employer is a partnership, and if you are one of its partners, you are insured, but only in your capacity as an employer of the partnership's employees.

**C. Workers Compensation Law**
Workers Compensation Law means the workers or workmen's compensation law and occupational disease law of each state or territory named in Item 3.A. of the Information Page. It includes any amendments to that law which are in effect during the policy period. It does not include any federal workers or workmen's compensation law, any federal occupational disease law or the provisions of any law that provide nonoccupational disability benefits.

**D. State**
State means any state of the United States of America, and the District of Columbia.

**E. Locations**
This policy covers all of your workplaces listed in Items 1 or 4 of the Information Page; and it covers all other workplaces in Item 3.A. states unless you have other insurance or are self-insured for such workplaces.

## PART ONE - WORKERS COMPENSATION INSURANCE

**A. How This Insurance Applies**
This workers compensation insurance applies to bodily injury by accident or bodily injury by disease. Bodily injury includes resulting death.

1. Bodily injury by accident must occur during the policy period.

2. Bodily injury by disease must be caused or aggravated by the conditions of your employment. The employee's last day of last exposure to the conditions causing or aggravating such bodily injury by disease must occur during the policy period.

**B. We Will Pay**
We will pay promptly when due the benefits required of you by the workers compensation law.

**C. We Will Defend**
We have the right and duty to defend at our expense any claim, proceeding or suit against you for benefits payable by this insurance. We have the right to investigate and settle these claims, proceedings or suits.
We have no duty to defend a claim, proceeding or suit that is not covered by this insurance.

**D. We Will Also Pay**
We will also pay these costs, in addition to other amounts payable under this insurance, as part of any claim, proceeding or suit we defend:

1. reasonable expenses incurred at our request, but not loss of earnings;

2. premiums for bonds to release attachments and for appeal bonds in bond amounts up to the amount payable under this insurance;

3. litigation costs taxed against you;

4. interest on a judgment as required by law until we offer the amount due under this insurance; and

5. expenses we incur.

E. **Other Insurance**

We will not pay more than our share of benefits and costs covered by this insurance and other insurance or self-insurance. Subject to any limits of liability that may apply, all shares will be equal until the loss is paid. If any insurance or self-insurance is exhausted, the shares of all remaining insurance will be equal until the loss is paid.

F. **Payments You Must Make**

You are responsible for any payments in excess of the benefits regularly provided by this workers compensation law including those required because:

1. of your serious and willful misconduct;

2. you knowingly employ an employee in violation of law;

3. you fail to comply with a health or safety law or regulation; or

4. you discharge, coerce or otherwise discriminate against any employee in violation of the workers compensation law.

If we make any payments in excess of the benefits regularly provided by the workers compensation law on your behalf, you will reimburse us promptly.

G. **Recovery From Others**

We have your rights, and the rights of persons entitled to the benefits of this insurance, to recover our payments from anyone liable for the injury. You

will do everything necessary to protect those rights for us and to help us enforce them.

H. **Statutory Provisions**

These statements apply where they are required by law.

1. As between an injured worker and us, we have notice of the injury when you have notice.

2. Your default or the bankruptcy or insolvency of you or your estate will not relieve us of our duties under this insurance after an injury occurs.

3. We are directly and primarily liable to any person entitled to the benefits payable by this insurance. Those persons may enforce our duties; so may an agency authorized by law. Enforcement may be against you and us.

4. Jurisdiction over you is jurisdiction over us for purposes of the workers compensation law. We are bound by decisions against you under that law, subject to the provisions of this policy that are not in conflict with that law.

5. This insurance conforms to the parts of the workers compensation law that apply to:
   a. benefits payable by this insurance;
   b. special taxes, payments into security or other special funds, and assessments payable by us under that law.

6. Terms of this insurance that conflict with the workers compensation law are changed by this statement to conform to that law.

Nothing in these paragraphs relieves you of your duties under this policy.

## PART TWO - EMPLOYERS LIABILITY INSURANCE

A. **How This Insurance Applies**

This employers liability insurance applies to bodily injury by accident or bodily injury by disease. Bodily injury includes resulting death.

1. The bodily injury must arise out of and in the course of the injured employee's employment by you.

2. The employment must be necessary or incidental to your work in a state or territory listed in Item 3.A. of the Information Page.

3. Bodily injury by accident must occur during the policy period.

4. Bodily injury by disease must be caused or aggravated by the conditions of your employment. The employee's last day of last

exposure to the conditions causing or aggravating such bodily injury by disease must occur during the policy period.

5. If you are sued, the original suit and any related legal actions for damages for bodily injury by accident or by disease must be brought in the United States of America, its territories or possessions, or Canada.

B. We Will Pay

We will pay all sums you legally must pay as damages because of bodily injury to your employees, provided the bodily injury is covered by this Employers Liability Insurance.

The damages we will pay, where recovery is permitted by law, include damages:

1. for which you are liable to a third party by reason of a claim or suit against you by that third party to recover the damages claimed against such third party as a result of injury to your employee;

2. for care and loss of services; and

3. for consequential bodily injury to a spouse, child, parent, brother or sister of the injured employee;

provided that these damages are the direct consequence of bodily injury that arises out of and in the course of the injured employee's employment by you; and

4. because of bodily injury to your employee that arises out of and in the course of employment, claimed against you in a capacity other than as employer.

C. Exclusions

This insurance does not cover:

1. liability assumed under a contract. This exclusion does not apply to a warranty that your work will be done in a workmanlike manner;

2. punitive or exemplary damages because of bodily injury to an employee employed in violation of law;

3. bodily injury to an employee while employed in violation of law with your actual knowledge or the actual knowledge of any of your executive officers;

4. any obligation imposed by a workers compensation, occupational disease, unemployment compensation, or disability benefits law, or any similar law;

5. bodily injury intentionally caused or aggravated by you;

6. bodily injury occurring outside the United States of America, its territories or possessions, and Canada. This exclusion does not apply to bodily injury to a citizen or resident of the United States of America or Canada who is temporarily outside these countries;

7. damages arising out of coercion, criticism, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination against or termination of any employee, or any personnel practices, policies, acts or omissions;

8. bodily injury to any person in work subject to the Longshore and Harbor Workers' Compensation Act (33 USC Sections 901-950), the Nonappropriated Fund Instrumentalities Act (5 USC Sections 8171-8173), the Outer Continental Shelf Lands Act (43 USC Sections 1331-1356), the Defense Base Act (42 USC Sections 1651-1654), the Federal Coal Mine Health and Safety Act of 1969 (30 USC Sections 901-942) any other federal workers or workman's compensation law or other federal occupational disease law, or any amendments to these laws;

9. bodily injury to any person in work subject to the Federal Employers' Liability Act (45 USC Sections 51-60), any other federal laws obligating an employer to pay damages to an employee due to bodily injury arising out of or in the course of employment, or any amendments to those laws;

10. bodily injury to a master or member of the crew of any vessel;

11. fines or penalties imposed for violation of federal or state law; and

12. damages payable under the Migrant and Seasonal Agricultural Worker Protection Act (29 USC Sections 1801-1872) and under any other federal law awarding damages for violation of those laws or regulations issued thereunder, and any amendments to those laws.

D. We Will Defend

We have the right and duty to defend, at our expense, any claim, proceeding or suit against you for damages payable by this insurance. We have the right to investigate and settle these claims, proceedings and suits.

Form WC 00 00 00 A  Printed in U.S.A.

Page 3 of 6

We have no duty to defend a claim, proceeding or suit that is not covered by this insurance. We have no duty to defend or continue defending after we have paid our applicable limit of liability under this insurance.

E. **We Will Also Pay**

We will also pay these costs, in addition to other amounts payable under this insurance, as part of any claim, proceeding or suit we defend:

1. reasonable expenses incurred at our request, but not loss of earnings;

2. premiums for bonds to release attachments and for appeal bonds in bond amounts up to the limit of our liability under this insurance;

3. litigation costs taxed against you;

4. interest on a judgment as required by law until we offer the amount due under this insurance; and

5. expenses we incur.

F. **Other Insurance**

We will not pay more than our share of damages and costs covered by this insurance and other insurance or self-insurance. Subject to any limits of liability that apply, all shares will be equal until the loss is paid. If any insurance or self-insurance is exhausted, the shares of all remaining insurance and self-insurance will be equal until the loss is paid.

G. **Limits of Liability**

Our liability to pay for damages is limited. Our limits of liability are shown in Item 3.B. of the Information Page. They apply as explained below.

1. Bodily Injury by Accident. The limit shown for "bodily injury by accident-each accident" is the most we will pay for all damages covered by this insurance because of bodily injury to one or more employees in any one accident.

A disease is not bodily injury by accident unless it results directly from bodily injury by accident.

2. Bodily Injury by Disease. The limit shown for "bodily injury by disease - policy limit" is the most we will pay for all damages covered by this insurance and arising out of bodily injury by disease, regardless of the number of employees who sustain bodily injury by disease. The limit shown for "bodily injury by disease - each employee" is the most we will pay for all damages because of bodily injury by disease to any one employee.

Bodily injury by disease does not include disease that results directly from a bodily injury by accident.

3. We will not pay any claims for damages after we have paid the applicable limit of our liability under this insurance.

H. **Recovery From Others**

We have your rights to recover our payment from anyone liable for an injury covered by this insurance. You will do everything necessary to protect those rights for us and to help us enforce them.

I. **Actions Against Us**

There will be no right of action against us under this insurance unless:

1. You have complied with all the terms of this policy; and

2. The amount you owe has been determined with our consent or by actual trial and final judgment.

This insurance does not give anyone the right to add us as a defendant in an action against you to determine your liability. The bankruptcy or insolvency of you or your estate will not relieve us of our obligations under this Part.

## PART THREE - OTHER STATES INSURANCE

A. **How This Insurance Applies**

1. This other states insurance applies only if one or more states are shown in Item 3.C. of the Information Page.

2. If you begin work in any one of those states after the effective date of this policy and are not insured or are not self-insured for such work, all provisions of the policy will apply as though that

state were listed in Item 3.A. of the Information Page.

3. We will reimburse you for the benefits required by the workers compensation law of that state if we are not permitted to pay the benefits directly to persons entitled to them.

4. If you have work on the effective date of this policy in any state not listed in Item 3.A. of the

Form WC 00 00 00 A   Printed in U.S.A.

Page 4 of 6

Information Page, coverage will not be afforded for that state unless we are notified within thirty days.

B. Notice
Tell us at once if you begin work in any state listed in item 3.C. of the Information Page.

## PART FOUR - YOUR DUTIES IF INJURY OCCURS

Tell us at once if injury occurs that may be covered by this policy. Your other duties are listed here.

1. Provide for immediate medical and other services required by the workers compensation law.

2. Give us or our agent the names and addresses of the injured persons and of witnesses, and other information we may need.

3. Promptly give us all notices, demands and legal papers related to the injury, claim, proceeding or suit.

4. Cooperate with us and assist us, as we may request, in the investigation, settlement or defense of any claim, proceeding or suit.

5. Do nothing after an injury occurs that would interfere with our right to recover from others.

6. Do not voluntarily make payments, assume obligations or incur expenses, except at your own cost.

## PART FIVE - PREMIUM

A. Our Manuals
All premium for this policy will be determined by our manuals of rules, rates, rating plans and classifications. We may change our manuals and apply the changes to this policy if authorized by law or a governmental agency regulating this insurance.

B. Classifications
Item 4 of the Information Page shows the rate and premium basis for certain business or work classifications. These classifications were assigned based on an estimate of the exposures you would have during the policy period. If your actual exposures are not properly described by those classifications, we will assign proper classifications, rates and premium basis by endorsement to this policy.

C. Remuneration
Premium for each work classification is determined by multiplying a rate times a premium basis. Remuneration is the most common premium basis.
This premium basis includes payroll and all other remuneration paid or payable during the policy period for the services of:

1. all your officers and employees engaged in work covered by this policy; and

2. all other persons engaged in work that could make us liable under Part One (Workers Compensation Insurance) of this policy. If you do not have payroll records for these persons, the contract price for their services and materials may be used as the premium basis. This paragraph 2 will not apply if you give us proof that the employers of these persons lawfully secured their workers compensation obligations.

D. Premium Payments
You will pay all premium when due. You will pay the premium even if part or all of a workers compensation law is not valid.

E. Final Premium
The premium shown on the Information Page, schedules, and endorsements is an estimate. The final premium will be determined after this policy ends by using the actual, not the estimated, premium basis and the proper classifications and rates that lawfully apply to the business and work covered by this policy. If the final premium is more than the premium you paid to us, you must pay us the balance. If it is less, we will refund the balance to you. The final premium will not be less than the highest minimum premium for the classifications covered by this policy

Form WC 00 00 00 A  Printed in U.S.A.

Page 5 of 6

If this policy is cancelled, final premium will be determined in the following way unless our manuals provide otherwise:

1. If we cancel, final premium will be calculated pro rata based on the time this policy was in force. Final premium will not be less than the pro rata share of the minimum premium.

2. If you cancel, final premium will be more than pro rata; it will be based on the time this policy was in force, and increased by our short rate cancellation table and procedure. Final premium will not be less than the minimum premium.

F. Records

You will keep records of information needed to compute premium. You will provide us with copies of those records when we ask for them.

G. Audit

You will let us examine and audit all your records that relate to this policy. These records include ledgers, journals, registers, vouchers, contracts, tax reports, payroll and disbursement records, and programs for storing and retrieving data. We may conduct the audits during regular business hours during the policy period and within three years after the policy period ends. Information developed by audit will be used to determine final premium. Insurance rate service organizations have the same rights we have under this provision.

## PART SIX - CONDITIONS

A. Inspection

We have the right, but are not obligated to inspect your workplaces at any time. Our inspections are not safety inspections. They relate only to the insurability of the workplaces and the premiums to be charged. We may give you reports on the conditions we find. We may also recommend changes. While they may help reduce losses, we do not undertake to perform the duty of any person to provide for the health or safety of your employees or the public. We do not warrant that your workplaces are safe or healthful or that they comply with laws, regulations, codes or standards. Insurance rate service organizations have the same rights we have under this provision.

B. Long Term Policy

If the policy period is longer than one year and sixteen days, all provisions of this policy will apply as though a new policy were issued on each annual anniversary that this policy is in force.

C. Transfer of Your Rights and Duties

Your rights or duties under this policy may not be transferred without our written consent.

If you die and we receive notice within thirty days after your death, we will cover your legal representative as insured.

D. Cancellation

1. You may cancel this policy. You must mail or deliver advance written notice to us stating when the cancellation is to take effect.

2. We may cancel this policy. We must mail or deliver to you not less than ten days advance written notice stating when the cancellation is to take effect. Mailing that notice to you at your mailing address shown in Item 1 of the Information Page will be sufficient to prove notice.

3. The policy period will end on the day and hour stated in the cancellation notice.

4. Any of these provisions that conflict with a law that controls the cancellation of the insurance in this policy is changed by this statement to comply with that law.

E. Sole Representative

The insured first named in Item 1 of the Information Page will act on behalf of all insureds to change this policy, receive return premium, and give or receive notice of cancellation.

03 (Policy Provisions: WC 00 00 00 A)
18
QT   **INFORMATION PAGE**
WE   **WORKERS COMPENSATION AND EMPLOYERS LIABILITY POLICY**

INSURER: HARTFORD UNDERWRITERS INSURANCE COMPANY

HARTFORD PLAZA, HARTFORD, CONNECTICUT 06115

NCCI Company Number:  10456

Company Code: 6


THE
HARTFORD



Suffix
LARS RENEWAL
00

POLICY NUMBER:      46 WE   QT1803
Previous Policy Number:    NEW
HOUSING CODE:  S5
1.  Named Insured and Mailing Address: J.L. STEEL REINFORCING, LLC
(No., Street, Town, State, Zip Code)

P.O. BOX 14709
FEIN Number: 262601354               FORT WORTH, TX 76117
State Identification Number(s):
UIN:

The Named Insured is: LIMITED LIABILITY COMPANY
Business of Named Insured: CONTRACTOR - STEEL REBAR TYING
Other workplaces not shown above: 2409 MINNIS DR.
                            HALTOM                    TX   76117
2.  Policy Period:      From  06/30/08    To    06/30/09
                        12:01 a.m., Standard time at the insured's mailing address.

Producer's Name:  FRANK SIDDONS INS AGY FT WORTH, INC

                  2900 MARQUITTA DRIVE
                  FORT WORTH, TX 76116
Producer's Code: 505375
Issuing Office:   THE HARTFORD
                  ATTN: HSC SUPPORT MGR T-20-87
                  HARTFORD                      CT 06115
                  (860) 547-3506

Total Estimated Annual Premium:         $192,684
Deposit Premium:
Policy Minimum Premium:       $250 TX
Audit Period:  ANNUAL                Installment Term:  10
The policy is not binding unless countersigned by our authorized representative.

Countersigned by _____
                        Authorized Representative              Date

Form WC 00 00 01 A     (1) Printed in U.S.A.            Page 1 (Continued on next page)
Process Date: 07/17/08                                  Policy Expiration Date: 06/30/09

## INFORMATION PAGE (Continued)                    Policy Number: 46 WE   QT1803

3. A. Workers Compensation Insurance: Part one of the policy applies to the Workers Compensation Law of the
      states listed here: TX

   B. Employers Liability Insurance: Part Two of the policy applies to work in each state listed in Item 3.A.
      The limits of our liability under Part Two are:

      | | | |
      |---|---|---|
      | Bodily Injury by Accident | $1,000,000 | each accident |
      | Bodily Injury by Disease | $1,000,000 | policy limit |
      | Bodily Injury by Disease | $1,000,000 | each employee |

   C. Other States Insurance: Part Three of the policy applies to the states, if any, listed here:

      ALL STATES EXCEPT ND, OH, WA, WV, WY, AND
      STATES DESIGNATED IN ITEM 3.A. OF THE INFORMATION PAGE.

   D. This policy includes these endorsements and schedule:
      WC 99 00 05   WC 00 04 06   WC 00 03 11   WC 42 03 10   WC 99 03 78
      WC 99 03 79   LG2240 2D     WC 42 03 01F  WC 42 04 07   WC 42 04 08

4. The premium for this policy will be determined by our Manuals of Rules, Classifications, Rates and Rating
   Plans. All information required below is subject to verification and change by audit.

| Classifications Code Number and Description | Premium Basis Total Estimated Annual Remuneration | Rates Per $100 of Remuneration | Estimated Annual Premium |
|---|---|---|---|
| (SEE ATTACHED SCHEDULES) | | | |
| INCREASED LIMITS PART TWO   (9812)   2.00 PERCENT | | | 3,778 |
| TX - SCHEDULE MODIFICATION        (1.220)   (9889) | | | 42,387 |
| PREMIUM ADJUSTED BY SCHEDULE MODIFICATION | | | 235,055 |
| TX HEALTH CARE NETWORK CREDIT 10.00 % (9874) | | | -23,506 |
| TOTAL ESTIMATED ANNUAL STANDARD PREMIUM | | | 211,549 |
| PREMIUM DISCOUNT   9.3 PERCENT | | | -19,674 |
| EXPENSE CONSTANT (0900) | | | 180 |
| FOREIGN TERRORISM (9740) | 2,620,000 | .024 | 629 |
| TOTAL ESTIMATED ANNUAL PREMIUM | | | 192,684 |

| | |
|---|---|
| Total Estimated Annual Premium: | $192,684 |
| Deposit Premium: | |
| Policy Minimum Premium: | $250   TX |

Interstate/Intrastate Identification Number:

Labor Contractors Policy Number:

NAICS:
SIC:   1611
UIN:
NO. OF EMP:   45

Form WC 00 00 01 A   (1) Printed in U.S.A.
Process Date: 07/17/08

Page 2
Policy Expiration Date: 06/30/09

00333

*20002446QT18030101



## SCHEDULE OF OPERATIONS

This Schedule of Operations forms a part of the policy effective on the inception date of the policy unless another date is indicated below:

INSURER: HARTFORD UNDERWRITERS INSURANCE COMPANY

Company Code: 6

Policy Number: 46 WE QT1803    Schedule Number: 01-42-01
Effective Date: 06/30/08    Effective hour is the same as stated on the Information Page of the policy.
Named Insured and Location Address of operations covered by this schedule:
J.L. STEEL REINFORCING, LLC
2409 MINNIS DR.
HALTOM        TX  76117

                                  NAICS:
FEIN: 262601354    UIN:           SIC: 1611        NO. OF EMPL: 45

4. The premium for this policy will be determined by our Manuals of Rules, Classifications, Rates and Rating Plans. All information required below is subject to verification and change by audit.

| Classifications Code Number and Description | Premium Basis Total Estimated Annual Remuneration | Rates Per $100 of Remuneration | Estimated Annual Premium |
|---|---|---|---|
| 5203 CONCRETE CONSTRUCTION - BRIDGES - & DRIVERS | 200,000 | 15.73 | 31,460 |
| 5506 STREET OR ROAD CONSTRUCTION - ALL OPERATIONS & DRIVERS | 1,800,000 | 8.40 | 151,200 |
| 5606 CONTRACTOR - EXECUTIVE SUPERVISOR OR CONSTRUCTION SUPERINTENDENT | 200,000 | 2.17 | 4,340 |
| 6219 EXCAVATION NOC & DRIVERS | IF ANY | 7.63 | |
| 8227 CONTRACTOR'S PERMANENT YARD | IF ANY | 4.40 | |

Countersigned by _____
                                          Authorized Representative

Form WC 99 00 06    (1) Printed in U.S.A.
Process Date: 07/17/08                    Policy Expiration Date: 06/30/09



## SCHEDULE OF OPERATIONS

This Schedule of Operations forms a part of the policy effective on the inception date of the policy unless another date is indicated below:

INSURER: HARTFORD UNDERWRITERS INSURANCE COMPANY

Company Code: 6

Policy Number: 46 WE QT1803    Schedule Number: 01-42-01

Effective Date: 06/30/08    Effective hour is the same as stated on the Information Page of the policy.
Named Insured and Location Address of operations covered by this schedule:
J.L. STEEL REINFORCING, LLC
2409 MINNIS DR.
HALTOM          TX   76117
                                NAICS:
FEIN: 262601354   UIN:          SIC: 1611          NO. OF EMPL: 45

4.  The premium for this policy will be determined by our Manuals of Rules, Classifications, Rates and Rating Plans. All information required below is subject to verification and change by audit.

| Classifications Code Number and Description | Premium Basis Total Estimated Annual Remuneration | Rates Per $100 of Remuneration | Estimated Annual Premium |
|---|---|---|---|
| 8809 | 300,000 | .49 | 1,470 |
| EXECUTIVE OFFICERS NOC - PERFORMING CLERICAL OR OUTSIDE SALESPERSONS DUTIES ONLY | | | |
| 8810 | 120,000 | .35 | 420 |
| CLERICAL OFFICE EMPLOYEES NOC | | | |
| TOTAL CLASS PREMIUM | | | 188,890 |
| INCREASED LIMITS PART TWO (9812)  2.00 PERCENT | | | 3,778 |
| TX - SCHEDULE MODIFICATION    (1.220)  (9889) | | | 42,387 |
| PREMIUM ADJUSTED BY SCHEDULE MODIFICATION | | | 235,055 |
| TX HEALTH CARE NETWORK CREDIT 10.00% (9874) | | | -23,506 |
| TOTAL ESTIMATED ANNUAL STANDARD PREMIUM | | | 211,549 |
| PREMIUM DISCOUNT   9.3 PERCENT | | | -19,674 |
| EXPENSE CONSTANT (0900) | | | 180 |
| FOREIGN TERRORISM (9740) | 2,620,000 | .024 | 629 |
| TOTAL ESTIMATED ANNUAL PREMIUM | | | 192,684 |

Countersigned by _____

                                Authorized Representative

Form WC 99 00 06    (1) Printed in U.S.A.
Process Date: 07/17/08              Policy Expiration Date: 06/30/09

NINETEENTH JUDICIAL DISTRICT COURT

PARISH OF EAST BATON ROUGE

STATE OF LOUISIANA

| | | |
|---|---|---|
| MARIA CRUZ MALDONADO, ET AL | § | SUIT NUMBER 582,129 |
| | § | |
| V. | § | |
| | § | |
| KIEWITT LOUISIANA CO. d/b/a KIEWITT | § | |
| MASSMAN TRAYLOR CONSTRUCTORS | § | |
| a/k/a KMTC. ET AL | § | DIVISION "D" |

### BUSINESS RECORD AFFIDAVIT

Before me, the undersigned notary, on this day personally appeared Megan

LaPointe, the affiant, a person whose identity is known to me. After I administered an oath

to affiant, affiant testified:

"My name is Megan LaPointe. I am over 18 years of age, of sound mind, and capable of making this affidavit. The facts stated in this affidavit are within my personal knowledge and are true and correct.

I am the Office Manager and Corporate Secretary of JL Steel Reinforcing, LLC. One of my duties is ensuring that JL Steel maintains accurate and complete employment records.

Attached to this affidavit are sixteen (16) pages of records from JL Steel Reinforcing, LLC.

These records are kept by JL Steel Reinforcing, LLC in the regular course of business, and it was the regular course of business of JL Steel Reinforcing, LLC for an employee or representative of JL Steel Reinforcing, LLC with knowledge of the act, event, condition, opinion, or diagnosis that was recorded, to make this record or to transmit the information to be included in this record. The record was made at or near the time or reasonably soon after the act, event, condition, opinion, or diagnosis that was recorded. The records attached to this affidavit are the originals or exact duplicates of the originals."

Megan LaPointe



SWORN TO AND SUBSCRIBED before me on this _24_ day of _June_,
2010.

_____
Notary Public in and for the State of Texas

BARRY R. STEELE
Notary Public, State of Texas
My Commission Expires
September 09, 2011



TODOS EMPLEADOS SER POTENCIAL EVALUARON SIN LA CONSIDERACION PARA COMPETIR, COLORAR, LA RELIGION, EL GENERO, EL ORIGEN NACIONAL, LA EDAD, MARITAL O EL VETERANO ESTATUS, LA PRESENCIA DE UN NO-TRABAJO LA DESVENTAJA RELACIONADA O CUALQUIER OTRO ESTATUS LEGALMENTE PROTEGIDO.

La Posición Buscó: _IRON WORKER_ Fecha: _____

Nombre _Ubaldo Soto Martinez_
Dirección _3757 East Loyola Dr._
Ciudad _Kenner_ Estado _LA_ Código postal _70065_
Teléfono _____ Social Security Number: _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_

Sueldo deseado$ _____
¿Es usted un ciudadano de EE.UU., o es usted de otro modo autorizó a trabajar en los EEUU sin alguna restricción? [✓] Sí [ ] No

¿Si seleccionado para el empleo, está usted dispuesto a someterse a una prueba de la investigación de la droga del pre-empleo? [✓] Sí [ ] No

La instrucción, las certificaciones, o las licencias tuvieron: _____

---

**EMPLOYMENT**
*(Más Reciente Primer).*

1. Nombre de la compañía _Titan Reinforcing_ Job Title _____
Las fechas Emplearon 07/08 - 05/09 Ciudad _Minel_ Estado _FL_
Teléfono _(954) 547-1195_ Supervisor _Vicente_
Tipo de Trabajo _Iron Worker._

2. Nombre de la compañía _Exclusive Rebar_ Job Title _Mint_
Las fechas Emplearon 01/06 - 07/08 Coidad _Miami_ Estado _FL_
Teléfono _(305) 347-1849_ Supervisor _Prome_
Tipo de Trabajo _Iron Worker._

---

**ACKNOWLEDGMENT AND AUTHORIZATION**

Yo certifico que la información es verdadera y correcta por mi entendimiento.

Autorizo la investigación de todas declaraciones contenidas en esta aplicación para el empleo.

Yo entiendo que prueba de authorización para empleo es necesario antes de tener empleo según la reforma de imigracion de 1986.

Yo entiendo que es necesario de pasar un examen de droga sera requerido antes de employment.

Yo entiendo que soy requerido a respetar todas reglas y las regulaciones de JL Steel Reinforcing, LLC.

X _Ubvaldo Soto_ _05/13/09_
Firma Fecha



LA 007



ALL POTENTIAL EMPLOYEES ARE EVALUATED WITHOUT REGARD TO RACE, COLOR, RELIGION, GENDER, NATIONAL ORIGIN, AGE, MARITAL OR VETERAN STATUS, THE PRESENCE OF A NON-JOB RELATED HANDICAP OR ANY OTHER LEGALLY PROTECTED STATUS.

Position Sought: _____ Date _____

Name _____

Address _____

City _____ State _____ Zip _____

Phone # _____ Social Security Number: _____

Desired Wage $ _____
Are you a U.S. citizen, or are you otherwise authorized to work in the U.S. without any restriction?
[   ] Yes [   ] No

If selected for employment, are you willing to submit to a pre-employment drug screening test?
[   ] Yes [   ] No

Training, certifications, or licenses held: _____

| EMPLOYMENT |
*(Most Recent First.)*

1. Employer_____ Job Title_____
Dates Employed_____ City_____ State_____ Zip_____
Phone_____ Supervisor_____
Duties Performed _____

2. Employer_____ Job Title_____
Dates Employed_____ City_____ State_____ Zip_____
Phone_____ Supervisor_____
Duties Performed _____


| ACKNOWLEDGMENT AND AUTHORIZATION |

I certify that the facts set forth in this application are true and complete to the best of my knowledge.

I authorize investigation of all statements contained in this application for employment.

I understand that proof of authorization for employment under the immigration reform and control act of 1986 is required before employment.

I understand that passing a drug screen will be required before employment.

I understand that I am required to abide by all rules and regulations of JL Steel Reinforcing, LLC.

_____          _____
Signature of Applicant                                    Date

LA007

## EMERGENCY CONTACTS

In case of emergency notify:

Name of the employee: _NAVA/DO  SOTO  MARTINEZ_

Name: _MARIA  CRUZ_

Relationship: _WIFE_

Telephone: (_786_)  _422-2810_

Work #: _____

Address: _835  SW  7  street  APT-5_

City, State, Zip Code: _MIAMI  FL.  33130_

Alternate contact:

Name: _Eloy  RUMBO  NAVARRETE_

Relationship _FRIEND_

Telephone (_954_)  _336  YZ  75_

Work #: _____

Address: _3757  E.  Loyola  DR._

City, State, Zip Code: _KENNER  L.A_

_70065_

Please list below any allergies or special medical conditions that would be affected by emergency medical attention: _____



## PROPOSICION DE REGLAS PARA REGRESAR A TRABAJAR

JL Steel Reinforcing, LLC esta obligado a proporcionar un lugar de trabajo seguro para nuestros empleados. La prevención de heridas o de enfermedades relacionadas con el trabajo es nuestro objetivo principal... Nuestro programa para regresar al trabajo proporciona las oportunidades al empleado que es perjudicado en el trabajo de volver al trabajo en el tiempo completo. Si el empleado no es físicamente capaz de regresar al tiempo completo, nuestro programa de trabajo proporciona oportunidades, cuando está disponible de realizar una asignación del trabajo temporal. La asignación regular de un empleado se puede modificar para acomodar las capacidades físicas del empleado, o trabajo alterno asignado siempre que sea posible.

Se requerirá un examen de drogas a todos los empleados de JL Steel Reinforcing, LLC que ocupemos y que vivan en el estado de Louisiana de acuerdo con el Titulo 40 Trabajo Y Empleo Parte1 La Administración de Compensación del Trabajador, el Capitulo 15 programas de control de drogas en el trabajo casos de accidenté relacionados.

UNA OFERTA DEL EMPLEO ES EL CONDICIONAL BASADO EN LOS RESULTADOS DEL SIGUIENTE:

EXAMEN DE DROGA DE PRE-EMPLOYMENT

CHECAR EL ARCHIVO DE MANEJAR DEL CONDUCTOR Y EXIGENCIAS DE LICENCIA

CRIMINAL Y EL CONTRO DE FONDO DE COMPENSACION DEL TRABAJADOR

EL COSTODEL EXAMEN DE DROGA SERÁ DEDUCIDO DEL CHEQUE DEL EMPLEADO SI EL EMPLEADO FALLA EN LA PRUEBA DE LA DROGA.

Esto certifica que este uso fue firmado por mi y que todas las reglas y la información son verdaderas y completas al mejor de mi conocimiento

Autorizo JL Steel Reinforcing, LLC para hacer tales investigaciones e investigaciones de mi personal, empleo, historial financiero o médico y otras materias relacionadas como puede ser necesario en llegar una decisión del empleo. Libero por este medio a patrones, las escuelas, los abastecedores de los médicos, estado y las agencias federales y otras personas de toda la responsabilidad en responder a las investigaciones y libero la información con respecto a este uso.

En caso del empleo, entiendo que la información falsa o engañosa dada en mi uso o entrevistas puede dar lugar a descarga. También entiendo que todas las reglas y regulaciones me requiero habitar de JL Steel Reinforcing, LLC.

_Uhvaldo    Soto_    _05/13/09_
FIRMA DEL APLICANTE                    FECHA

# Form W-4 (2008)

**Purpose.** Complete Form W-4 so that your employer can withhold the correct federal income tax from your pay. Consider completing a new Form W-4 each year and when your personal or financial situation changes.

**Exemption from withholding.** If you are exempt, complete only lines 1, 2, 3, 4, and 7 and sign the form to validate it. Your exemption for 2008 expires February 16, 2009. See Pub. 505, Tax Withholding and Estimated Tax.

**Note.** You cannot claim exemption from withholding if (a) your income exceeds $900 and includes more than $300 of unearned income (for example, interest and dividends) and (b) another person can claim you as a dependent on their tax return.

**Basic instructions.** If you are not exempt, complete the Personal Allowances Worksheet below. The worksheets on page 2 adjust your withholding allowances based on itemized deductions, certain credits,

adjustments to income, or two-earner/multiple job situations. Complete all worksheets that apply. However, you may claim fewer (or zero) allowances.

**Head of household.** Generally, you may claim head of household filing status on your tax return only if you are unmarried and pay more than 50% of the costs of keeping up a home for yourself and your dependent(s) or other qualifying individuals. See Pub. 501, Exemptions, Standard Deduction, and Filing Information, for information.

**Tax credits.** You can take projected tax credits into account in figuring your allowable number of withholding allowances. Credits for child or dependent care expenses and the child tax credit may be claimed using the Personal Allowances Worksheet below. See Pub. 919, How Do I Adjust My Tax Withholding, for information on converting your other credits into withholding allowances.

**Nonwage income.** If you have a large amount of nonwage income, such as interest or dividends, consider making estimated tax

payments using Form 1040-ES, Estimated Tax for Individuals. Otherwise, you may owe additional tax. If you have pension or annuity income, see Pub. 919 to find out if you should adjust your withholding on Form W-4 or W-4P.

**Two earners or multiple jobs.** If you have a working spouse or more than one job, figure the total number of allowances you are entitled to claim on all jobs using worksheets from only one Form W-4. Your withholding usually will be most accurate when all allowances are claimed on the Form W-4 for the highest paying job and zero allowances are claimed on the others. See Pub. 919 for details.

**Nonresident alien.** If you are a nonresident alien, see the Instructions for Form 8233 before completing this Form W-4.

**Check your withholding.** After your Form W-4 takes effect, use Pub. 919 to see how the dollar amount you are having withheld compares to your projected total tax for 2008. See Pub. 919, especially if your earnings exceed $130,000 (Single) or $180,000 (Married).

---

## Personal Allowances Worksheet (Keep for your records.)

A  Enter "1" for yourself if no one else can claim you as a dependent . . . . . . . . . . . . . A ___

B  Enter "1" if:
  - You are single and have only one job; or
  - You are married, have only one job, and your spouse does not work; or   } . . . . B ___
  - Your wages from a second job or your spouse's wages (or the total of both) are $1,500 or less.

C  Enter "1" for your spouse. But, you may choose to enter "-0-" if you are married and have either a working spouse or more than one job. (Entering "-0-" may help you avoid having too little tax withheld.) . . . . . . . C ___

D  Enter number of dependents (other than your spouse or yourself) you will claim on your tax return . . . . D ___

E  Enter "1" if you will file as head of household on your tax return (see conditions under Head of household above) . E ___

F  Enter "1" if you have at least $1,500 of child or dependent care expenses for which you plan to claim a credit . F ___
  (Note. Do not include child support payments. See Pub. 503, Child and Dependent Care Expenses, for details.)

G  Child Tax Credit (including additional child tax credit). See Pub. 972, Child Tax Credit, for more information.
  - If your total income will be less than $58,000 ($86,000 if married), enter "2" for each eligible child
  - If your total income will be between $58,000 and $84,000 ($86,000 and $119,000 if married), enter "1" for each eligible child plus "1" additional if you have 4 or more eligible children. . . . . . . . G ___

H  Add lines A through G and enter total here. **Note.** This may be different from the number of exemptions you claim on your tax return.) ▶ H ___

For accuracy, complete all worksheets that apply.
  - If you plan to itemize or claim adjustments to income and want to reduce your withholding, see the Deductions and Adjustments Worksheet on page 2.
  - If you have more than one job or are married and you and your spouse both work and the combined earnings from all jobs exceed $40,000 ($25,000 if married), see the Two-Earners/Multiple Jobs Worksheet on page 2 to avoid having too little tax withheld.
  - If neither of the above situations applies, stop here and enter the number from line H on line 5 of Form W-4 below.

Cut here and give Form W-4 to your employer. Keep the top part for your records.

---

Form **W-4**
Department of the Treasury
Internal Revenue Service

## Employee's Withholding Allowance Certificate

1  Whether you are entitled to claim a certain number of allowances or exemption from withholding is subject to review by the IRS. Your employer may be required to send a copy of this form to the IRS.

OMB No. 1545-0074

**2008**

1  Type or print your first name and middle initial   Last name
**NUVALDO**   **SOTO**   **MARTINEZ**

2  Your social security number
**354·70·8970**

Home address (number and street or rural route)
**3737 E. LOYOLA DR.**

3  ☐ Single  ☒ Married  ☐ Married, but withhold at higher Single rate.
Note. If married, but legally separated, or spouse is a nonresident alien, check the "Single" box.

City or town, state, and ZIP code
**KENNER, LA  70065**

4  If your last name differs from that shown on your social security card, check here. You must call 1-800-772-1213 for a replacement card. ▶ ☐

5  Total number of allowances you are claiming (from line H above or from the applicable worksheet on page 2)  **5** | **4**

6  Additional amount, if any, you want withheld from each paycheck  **6** | $

7  I claim exemption from withholding for 2008, and I certify that I meet both of the following conditions for exemption.
  - Last year I had a right to a refund of all federal income tax withheld because I had no tax liability and
  - This year I expect a refund of all federal income tax withheld because I expect to have no tax liability.
  If you meet both conditions, write "Exempt" here  . . . . ▶ **7** |

Under penalties of perjury, I declare that I have examined this certificate and to the best of my knowledge and belief, it is true, correct, and complete.

Employee's signature
(Form is not valid unless you sign it.) ▶ X **Uhvaldo Soto**   Date ▶ **05/13/07**

8  Employer's name and address (Employer: Complete lines 8 and 10 only if sending to the IRS.)   9 Office code (optional)   10 Employer identification number (EIN)

For Privacy Act and Paperwork Reduction Act Notice, see page 2.   Cat. No. 10220Q   Form **W-4** (2008)



## AUTORIZACION PARA SOLICITAR

## Y OBTERNER INFORMACION

Yo  $\underline{\text{Osvaldo Soto Martinez}}$ , autorizo a

JL Steel Reinforcing, LLC que obtenga un reporte conteniendo
información de accidentes relacionados de trabajo anteriores,
reclamos, demandas, historia de manejo y historia criminal en conexión
para evaluarme por empleo, promoción, reasignación o de retención
como empleado

 $\underline{\text{x Osvaldo Soto}}$          $\underline{\text{05/13/09}}$

Firma                    Fecha

Department of Homeland Security
U.S. Citizenship and Immigration Services

OMB No 1615-0047; Expires 06/30/08
Form I-9, Employment
Eligibility Verification

Please read instructions carefully before completing this form. The instructions must be available during completion of this form.

ANTI-DISCRIMINATION NOTICE: It is illegal to discriminate against work eligible individuals. Employers CANNOT specify which document(s) they will accept from an employee. The refusal to hire an individual because the documents have a future expiration date may also constitute illegal discrimination.

**Section 1. Employee Information and Verification.** To be completed and signed by employee at the time employment begins.

| Print Name Last | First | Middle Initial | Maiden Name |
|---|---|---|---|
| Soto | Nevaldo | N. | |

| Address (Street Name and Number) | | Apt # | Date of Birth (month/day/year) |
|---|---|---|---|
| 3757 E. Loyola DR. | | | 10/19/1976 |

| City | State | Zip Code | Social Security # |
|---|---|---|---|
| KENNER | L.A | 70065 | 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 |

I am aware that federal law provides for imprisonment and/or fines for false statements or use of false documents in connection with the completion of this form.

I attest, under penalty of perjury, that I am (check one of the following):
☐ A citizen or national of the United States
☑ A lawful permanent resident (Alien #) A  090-441-762
☐ An alien authorized to work until _____
(Alien # or Admission #)

| Employee's Signature | Date (month/day/year) |
|---|---|
| X Ohvolndo Soto | 05/13/09 |

**Preparer and/or Translator Certification.** (To be completed and signed if Section 1 is prepared by a person other than the employee.) I attest, under penalty of perjury, that I have assisted in the completion of this form and that to the best of my knowledge the information is true and correct

| Preparer's/Translator's Signature | Print Name |
|---|---|
| | |

| Address (Street Name and Number, City, State, Zip Code) | Date (month/day/year) |
|---|---|
| | |

**Section 2. Employer Review and Verification.** To be completed and signed by employer. Examine one document from List A OR examine one document from List B and one from List C, as listed on the reverse of this form, and record the title, number and expiration date, if any, of the document(s).

| List A | OR | List B | AND | List C |
|---|---|---|---|---|
| Document title Permanent Resident Card | | | | |
| Issuing authority USA | | | | |
| Document # 090-441-762 | | | | |
| Expiration Date (if any) | | | | |
| Document # | | | | |
| Expiration Date (if any) | | | | |

CERTIFICATION - I attest, under penalty of perjury, that I have examined the document(s) presented by the above-named employee, that the above-listed document(s) appear to be genuine and to relate to the employee named, that the employee began employment on (month/day/year) _____ and that to the best of my knowledge the employee is eligible to work in the United States. (State employment agencies may omit the date the employer began employment.)

| Signature of Employer or Authorized Representative | Print Name | Title |
|---|---|---|
| Megan Padmila | Megan LaPointe | Office Mgr |

| Business or Organization Name and Address (Street Name and Number, City, State, Zip Code) | | Date (month/day/year) |
|---|---|---|
| JL Steel Reinforcing | | 5-13-09 |

**Section 3. Updating and Reverification.** To be completed and signed by employer.

| A. New Name (if applicable) | B. Date of Rehire (month/day/year) (if applicable) |
|---|---|
| | |

C. If employee's previous grant of work authorization has expired, provide the information below for the document that establishes current employment eligibility.

| Document Title | Document # | Expiration Date (if any) |
|---|---|---|
| | | |

I attest, under penalty of perjury, that to the best of my knowledge, this employee is eligible to work in the United States, and if the employee presented document(s), the document(s) I have examined appear to be genuine and to relate to the individual.

| Signature of Employer or Authorized Representative | Date (month/day/year) |
|---|---|
| | |

Form I-9 (Rev. 06/05/07) N



## AUTORICACION DE

## DEDUCTION DE PAGO

Yo, _Nlvaido Soto_, autorizo a **JL Steel Reinforcing, LLC** que descuente de mi cheque una deducción semanal para el reembolso de cualquier préstamo, salarios anticipados, contribuciones de seguro, contribuciones del retiro, notas de la unión de crédito, herramientas, llantas, gasolina, y/o reparaciones, a los daños resultando de mi negligencia. Estoy de acuerdo en caso de mi resignación o despido, la suma entera debida se descontara de mi cheque final.

Entiendo que la cheque regularmente se entrega el Viernes de cada semana, en caso de mi terminación, sin importar la razón; no se me entrega mi cheque final hasta el día de pago.

Firma: ᵪUkvaldo Soto

Testigo:

Fecha: 05/13/2009







## COMUNICACIÓN DEL PELIGRO

Yo, _Ulvaido Soto_ , certifico que he recibido las
Comunicaciones del Peligro, y entiendo que JL Steel Reinforcing, LLC tiene el
programa de comunicación del peligro en el trabajo. También entiendo que el
MSDS cubre en los materiales usados por J.L. Steel, L.P., esta disponible para mi
revisión en la oficina situada en 2409 Minnis Drive Fort Worth, TX 76117.

También estoy enterado que los productos químicos peligrosos usados por J.L.
Steel, L.P. a través del área de los sitios de trabajo y de shop.


FIRMA:  x _Ulvaldo Soto_

FECHA:  _05/13/09_

## Workers' Compensation Network Acknowledgment Form

I have received information that tells me how to get healthcare under workers' compensation insurance.

If I am hurt on the job and live in the service area described in this information, I understand that:

1. I must choose a treating doctor from the list of doctors in the network. Or, I may ask my HMO primary care physician to agree to serve as my treating doctor.
2. I must go to my treating doctor for all healthcare for my injury. If I need a specialist, my treating doctor will refer me. If I need emergency care, I may go anywhere.
3. The insurance carrier will pay the treating doctor and other network providers.
4. I might have to pay the bill if I get healthcare from someone other than a network doctor without network approval.

x _Ulvaldo Soto_  _05/13/09_
(Signature)                          (Date)

_Ulvaldo Soto Martinez_
(Printed Name)

I live at _3757 E. Loyola Dr._
(Street Address)

_Kenner_                          _L.A_     _70065_
(City)                          (State)   (Zip Code)

Name of Employer: _____

Name of Network: The Hartford's Texas Workers' Compensation Health Care Network

The Hartford FWC-Ch (Rev 12-31-2007) Page 15 of 31 [illegible]

THE
HARTFORD



## DRUG SCREEN AND SOBRIETY
## EXAMINATION CONSENT FORM

I, _Ʌᴸᵁᴬᴵᴰᴼ  Soᴛᵁ_ voluntarily agree to provide breath, and /
urine for drug or alcohol testing. I authorize JL Steel Reinforcing, LLC to use such
specimens in any manner it deems appropriate.

I further understand that failure to submit to the testing, or testing positive will
disqualify me for employment. I release JL Steel Reinforcing, LLC and it employees
and officers from any claims of liability related to the enforcement of its
employment policies.

Signature: x Ulvaldo Soto

Date: _05/13/09_

Acuse de recibo de la red de compensación laboral

He recibido información que me notifica la manera de obtener atencion medica de acuerdo con lo estipulado en el seguro de compensacion laboral.

Si sufro alguna lesion en el trabajo y vivo en el area de servicio descrito en esta informacion, entiendo que:

1. Debo escoger a un medico tratante dentro de la lista de medicos de la red, o puedo pedirle a mi medico de atencion primaria (PCP) de la HMO que acepte ser mi medico tratante.
2. Debo acudir a mi medico tratante para recibir toda la atencion medica relacionada con mi lesion. Si necesito un especialista, mi medico tratante me remitira a el. Si necesito atencion de emergencia, puedo acudir a cualquier parte.
3. La empresa prestadora del servicio del seguro le pagara al medico tratante y a los demas proveedores de la red.
4. Puedo tener que pagan la factura si obtengo atencion medica de parte de una persona que no es un medico de la red y sin aprobacion de la red.

x *Uhualdo Soto*            05/13/09
(Firma)                              (Fecha)

*Uualdo Soto*
(Hombre en l e a  de molde)

Vivo en  *3757  E.  Loyola  DR.*
           (Hombre de la calle)

*Kenner*                          *LA       70065*
(Ciudad)                      (Estado)   (codigo Postal )



**JL STEEL**
**REINFORCING, LLC**
P.O. Box 14308 | Fort Worth, Texas | office: 817.806.4478 | fax: 817.806.4479

---

## RETURN TO WORK POLICY STATEMENT

J.L. Steel, L.P. is committed to providing a safe workplace for our employees. Preventing work-related injuries or illnesses is our primary goal. Our return to work program provides opportunities for an employee who is injured on the job to return to work at full duty. If the employee is not physically capable of returning to full duty, our return to work program provides opportunities, when available to perform a temporary work assignment. An employee's regular assignment may be modified to accommodate the employee's physical capabilities, or alternate work assigned whenever possible.

Post accident drug testing will be required of all JL Steel Reinforcing, LLC employees hired and residing in the State of Louisiana pursuant to Title 40 Labor and Employment Part I Workers Compensation Administration, Chapter 15 Drug testing programs in job related accident cases.

---

AN OFFER OF EMPLOYMENT IS CONDITIONAL BASED ON THE RESULTS OF THE FOLLOWING:

PRE-EMPLOYMENT DRUG SCREENING TEST

DRIVER'S RECORD CHECK & LICENSE REQUIREMENTS

CRIMINAL & WORKER'S COMPENSATION BACKGROUND CHECK

COST OF THE DRUG SCREEN WILL BE DEDUCTED FROM THE EMPLOYEES PAYCHECK IF THE EMPLOYEE FAILS THE DRUG TEST.

This certifies that this application was completed by me and that all entries on it and information in it are true and complete to the best of my knowledge

I authorize JL Steel Reinforcing, LLC to make such investigations and inquiries of my personal, employment, financial or medical history and other related matters as may be necessary in arriving at an employment decision.

I hereby release employers, schools, healthcare providers, State & Federal Agencies and other persons from all liability in responding to inquiries and releasing information in connection with this application.

In the event of employment, I understand that false or misleading information given in my application or interview(s) may result in discharge. I also understand that I am required to abide by all rules and regulations of JL Steel Reinforcing, LLC.

x _Olivaldo Soto_                                      05/13/09

APPLICANT'S SIGNATURE                                 DATE



## HAZARD COMMUNICATION

I, _Nevaldo Soto_, certify that I have received the Hazard Communication, and I understand that JL Steel Reinforcing, LLC has Hazard communication Program in place. I also understand that the MSDS sheets on materials used by JL Steel Reinforcing, LLC are available for my review at the office located at 2409 Minnis Drive, Fort Worth, TX 76117.

I am also aware of the hazardous chemicals used by JL Steel Reinforcing, LLC throughout their Jobs sites and shop area.

Signature: x Uhvaldo Soto

Date: _05/13/09_



## AUTHORIZATION TO REQUEST

## AND OBTAIN INFORMATION

I __Jevs/oo    Soto__ , authorize **JL Steel**
**Reinforcing, LLC** to obtain a report containing information regarding my
prior work related injuries, claims and lawsuits, driving history and
criminal history in connection with evaluating me for employment,
promotion, reassignment or retention as an employee

x _Uhvaldo Soto_ _05/13/09_

Signature                         Date

19TH JUDICIAL DISTRICT COURT

STATE OF LOUISIANA

NO.: C582129                                                    DIVISION "D"

MARIA CRUZ MALDONADO, Individually and as representative of the ESTATE OF ULVALDO SOTO MARTINEZ, DECEASED, and as Next Friend and Natural Guardian of JUSTIN SOTO-MALDONADO AND USVALDO JESUS SOTO-MALDONADO, MINORS, AND GILBERTO SOTO MARTINEZ

VERSUS

KIEWIT LOUISIANA CO., MASSMAN CONSTRUCTION CO, TRAYLOR BROS., INC., A JOINT VENTURE D/B/A KIEWIT MASSMAN TRAYLOR CONSTRUCTORS A/K/A KMTC JV; GEC LOUISIANA TIMED MANAGERS, A JOINT VENTURE PARTNERSHIP, PB AMERICAS, INC. F/K/A/ PARSONS, BRINCKERHOFF, QUADE & DOUGLAS, INC. AS PARTNER OF GEC LOUISIANA TIMED MANAGERS, A JOINT VENTURE PARTNERSHIP, LPA GROUP INCORPORATED AS PARTNER OF GEC LOUISIANA TIMED MANAGERS, A JOINT VENTURE PARTNERSHIP, G.E.C. INC. AS PARTNER OF GEC LOUISIANA TIMED MANAGERS, A JOINT VENTURE PARTNERSHIP; ZURICH AMERICAN INSURANCE COMPANY; THE STATE OF LOUISIANA THROUGH THE DEPARTMENT OF TRANSPORTATION AND DEVELOPMENT; JL STEEL REINFORCING, LLC.; AND MODJESKI AND MASTERS, INC.

FILED: _____

_____
DEPUTY CLERK

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

SECOND SUPPLEMENTAL AND AMENDING PETITION FOR DAMAGES

AND JURY DEMAND

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

NOW INTO COURT, COMES MARIA CRUZ MALDONADO, of full age of majority and domiciled in Dallas, Texas, for herself and on behalf of the Estate of ULVALDO SOTO MARTINEZ, Deceased, and on behalf of their minor children, JUSTIN SOTO-MALDONADO and USVALDO JESUS SOTO MALDONADO[1], and GILBERTO SOTO MARTINEZ, the brother of Ulvaldo Soto Martinez, all of whom seek monetary damages arising out of the fatal injuries suffered by ULVALDO SOTO MARTINEZ at a construction project on June 12th, 2009, and shows as follows:

I.

---

[1] MARIA CRUZ MALDONADO is the widow of the deceased ULVALDO SOTO MARTINEZ and the biological mother of his only children, JUSTIN SOTO-MALDONADO and USVALDO JESUS SOTO MALDONADO; and pursuant to the Code of Civ Pro Art. 4061.1, notwithstanding Article 4061, MARIA CRUZ MALDONADO as the natural tutor of the minors is hereby filing this action for damages based on a delictual obligation without the necessity of qualifying as tutor pursuant to Article 4061 and without the necessity of filing a petition pursuant to Article 4031 because MARIA CRUZ MALDONADO is the surviving parent of the minor children.

PLAINTIFFS' SECOND SUPPLEMENTAL AND AMENDING
PETITION FOR DAMAGES AND JURY DEMAND                    Page 1 of 10


EXHIBIT
C

The following parties are made defendants herein and are joint, several and in so lido obligors, who are liable unto Maria Cruz Maldonado (hereinafter referred to as "Mrs. Maldonado"), individually and on behalf of her two minor children, Justin Soto-Maldonado, Usvaldo Jesus Soto-Maldonado, and Gilberto Soto Martinez, for the reasons stated herein:

A)  KIEWIT LOUISIANA CO., MASSMAN CONSTRUCTION CO., TRAYLOR BROS., INC., A JOINT VENTURE D/B/A KIEWIT MASSMAN TRAYLOR CONSTRUCTORS A/K/A KMTC JV, A Partnership chartered in Louisiana, domiciled in Delaware with its principal place of business in Nebraska is hereinafter referred to as "KMTC JV". KMTC JV has been duly served and has filed an appearance in this cause;

B)  GEC LOUISIANA TIMED MANAGERS, A JOINT VENTURE PARTNERSHIP, licensed and doing business in the State of Louisiana; hereinafter referred to as "GEC JV" has been duly served and has filed an appearance in this cause;

C)  PB AMERICAS, INC. F/K/A/ PARSONS, BRINCKERHOFF, QUADE & DOUGLAS, INC. AS PARTNER OF GEC LOUISIANA TIMED MANAGERS JV, a licensed corporation in the State of New York and doing business in the State of Louisiana hereinafter referred to as "GEC JV" has been duly served and has filed an appearance in this cause;

D)  LPA GROUP INCORPORATED AS PARTNER OF GEC LOUISIANA TIMED MANAGERS JV, a corporation licensed in the State of South Carolina and doing business in the State of Louisiana hereinafter referred to as "GEC JV" has been duly served and has filed an appearance in this cause;

E)  G.E.C. INC. AS PARTNER OF GEC LOUISIANA TIMED MANAGERS JV, a licensed corporation and doing business in the State of Louisiana; hereinafter referred to as "GEC JV" has been duly served and has filed an appearance in this cause;

PLAINTIFFS' SECOND SUPPLEMENTAL AND AMENDING
PETITION FOR DAMAGES AND JURY DEMAND                    Page 2 of 10

F)   ZURICH AMERICAN INSURANCE COMPANY, a foreign insurance company; hereinafter referred to as "Zurich" has been duly served and has not filed an appearance in this cause;

G)   THE STATE OF LOUISIANA THROUGH THE DEPARTMENT OF TRANSPORTATION AND DEVELOPMENT; hereinafter referred to as "LDOTD" has been duly served and has filed an appearance in this cause;

H)   JL STEEL REINFORCING, LLC, a Limited Liability Company, licensed to do and doing business in the State of Louisiana, hereinafter referred to as "JL STEEL" has been duly served and has filed an appearance in this cause;

I)   MODJESKI AND MASTERS, INC.; hereinafter referred to as "MODJESKI" is a duly authorized corporation in the state of Louisiana and may be served through its registered agent, Donald F. Sorgenfrei at 1055 St. Charles Avenue, New Orleans, La. 70130;

2.

Plaintiff Ulvaldo, Sammy Vasquez and Martin Reyes, were co workers and employees of JL STEEL defendant which is a steel erection company out of Fort Worth Texas.

3.

On or about the 12th day of June 2009, Plaintiff Ulvaldo was working with co-workers Vasquez and Reyes on top of a pier. The job site was the location of the fourth phase of the Huey P. Long Bridge Widening Project located at 3225 River Road in Bridge City, LA. on the west bank of the Mississippi River.

4.

On the date of the incident, a crane was being used by employees from Defendant KMTC JV to place a 60 foot rebar cage in position on top of the concrete pier the JL STEEL workers were on. As the JL STEEL employees were in place on top of the pier the KMTC JV employee on the crane raised up the rebar cage. The rebar cage was placed on top of a concrete pier standing approximately 70 feet in the air. The KMTC JV employee drove the crane up to the pier and the rebar cage was set in place with the assistance of the three JL STEEL employees. After the rebar cage was placed down in the holes on the top of the pier the JL STEEL employees tied the rebar of the cage

PLAINTIFFS' SECOND SUPPLEMENTAL AND AMENDING
PETITION FOR DAMAGES AND JURY DEMAND                          Page 3 of 10

together with the rebar coming up from the pier.

5.

Upon completing the tie in, the three JL STEEL employees sat down at the wooden framing on top of the concrete pier and waited for instructions on when to move forward with the job. The KMTC JV employees and the GEC JV defendant employees made the decisions of when and how the job was to be completed.

6.

Angel Rodriquez who while in the course and scope of his employment for Defendant JL STEEL was the individual who managed and supervised all of the employees of JL STEEL at this location. Angel was standing on the ground next to Gilberto Soto, who is Ulvaldo's brother. Gilberto is also a co worker at JL STEEL. In the minutes before this tragic accident Gilberto heard Angel getting directions from someone on his cellular telephone. Gilberto then heard Angel call Reyes' cellular telephone and tell him and the others to go climb up the rebar cage to release the crane. JL Steel and its employee, Angel, knew that the resulting death or serious injury was certain to follow by ordering the men to the top of the cage to disengage the crane prematurely. JL Steel and its employee, Angel, knew the consequences that were reasonably certain to follow when they ordered Plaintiff to climb the cage and prematurely disengage the crane. JL Steel and its employee, Angel, believed that the resulting death or serious injury was substantially certain to follow by ordering plaintiff to the top of the cage to disengage the crane prematurely. JL Steel and its employee, Angel, knew that the resulting death or serious injury were certain or substantially certain to follow by their actions of ordering the men to the top of the cage to prematurely disengage the crane.

7.

Once the three workers had completed their climb to the top of the pier Angel made another call to Reyes' cellular telephone and advised the workers it was only a two man job so one of the employees needs to go back down to the top of the pier and the other two needed to release the cable attached to the crane. Ulvaldo and Reyes told Sammy Vasquez to go back down to the top of the pier and they would take care of releasing the crane that Angel had told them to do.

8.

Sammy Vasquez climbed back down off the rebar cage to the top of the pier and he was standing on the wooden platform when this tragic event took place. Sammy had been on the top of the pier for only a few minutes when the entire rebar cage came crashing down to the ground. Ulvaldo and Reyes suffered massive traumatic fatal crush

PLAINTIFFS' SECOND SUPPLEMENTAL AND AMENDING
PETITION FOR DAMAGES AND JURY DEMAND                    Page 4 of 10

injuries as a result of Defendants' gross negligence. Ulvaldo was in fear for his life immediately prior to hitting the ground and dying an excruciating death.

9.

Immediately following the accident, Gilberto rushed to his brother's side as he laid bleeding from the mouth and in severe pain. Gilberto held his brother in his arms as he suffered for several minutes and until the last signs of life escaped his body.

10.

Gilberto Soto Martinez was the brother of Ulvaldo Martinez. Gilberto Soto Martinez experienced agonizing mental anguish and pain and suffering from the time that he saw his beloved brother Ulvaldo Martinez fall to his death. Gilbert Soto Martinez held his beloved brother in his arms as Ulvaldo was taking his last breaths. Upon information and belief, Gilberto Soto Martinez has suffered and will suffer mental anguish in the future for witnessing his brother's horrific death and will require future psychiatric medical treatment. Gilberto Soto Martinez is seeking emotional damages for his mental anguish from his brother's tragic death pursuant to Article 2315.6 (3) of the Louisiana Code of Civil Procedure, which is commonly known as a "LeJeune Claim" pursuant to the case of *LeJeune v. Rayne Memorial Hospital, 556 So. 2d 559 (La. 1990).*

11.

Prior to the accident, Ulvaldo was a family man who worked hard every day for his wife and his two sons. He had dreams of improving life for his family and loved his precious time with them. As a result of the accident, his widow and his sons have no husband and no father. The goal of improving life for the family has faded away into the horror of a widow and two sons with no means of financial support and no husband or father to depend upon or to enjoy their life. Consequently, Mrs. Maldonado, individually and as the wife of the decedent, Ulvaldo Soto Martinez, and Justin Soto Martinez and Usvaldo Soto Maldonado as the minor sons of the decedent, all are in accordance with La. Civil Code Articles 2315.1 and 2315.2, are asserting this survival and wrongful death action against the named defendants.

12.

The above described accident and death was caused by the negligence of KMTC IV, GEC IV, the STATE OF LOUISIANA DEPARTMENT OF TRANSPORTATION AND DEVELOPMENT and MODJESKI AND MASTERS, INC. by allowing the incident to take place which caused the death of ULVALDO SOTO MARTINEZ.

13.

PLAINTIFFS' SECOND SUPPLEMENTAL AND AMENDING
PETITION FOR DAMAGES AND JURY DEMAND                    Page 5 of 10

The above-described accident was caused by the negligence of KMTC JV, GEC JV, JL. STEEL, the STATE OF LOUISIANA DEPARTMENT OF TRANSPORTATION AND DEVELOPMENT and MODJESKI AND MASTERS, INC. in the following non-exclusive ways:

a.     Failing to use and supervise the use of equipment for KMTC JV and GEC JV in a reasonably safe manner as a person of ordinary prudence would have done under the same or similar circumstance;

b.     Failing to give adequate training in the operation and use of the crane that is the basis of this lawsuit;

c.     Failing to adequately train its employees in the operation of company equipment including the use of cranes on heavy equipment to prevent the rebar cage from losing its center of gravity and falling to the ground;

d.     Failing to install, adopt or employ adequate safety measures in its work place to prevent accidents such as the one that injured Plaintiff and is the subject of this lawsuit.

e     Failing to use safely designed and manufactured equipment in the work place that contains adequate warning signs regarding known hazards;

f.     Failing to safely design, engineer and use the crane that is the subject of this suit;

g.     Failing to use ordinary care in lifting heavy objects with a piece of equipment;

h.     Failing to properly use and secure rebar cages during lifting that was involved in the incident that is the basis of this suit;

i.     Failing to design and implement safe and prudent methods of erecting columns, rebar cages and material in the construction project at issue;

j.     Failing to add diagonal rebars on each side of the steel cage;

k.     Failed to maintain the lift crane connected in position while installing the forms;

l.     Failing to ensure each of the guy wires were controlling equal forces;

m.     Making the rebar cage too long;

n.     Failing to ensure all guy wires were appropriately modeled and analyzed;

o.     Making the overlapping length between the steel cage and the projecting bars on the footing too short;

p.     Not using adequate connection splices for the rebars;

q.    JL STEEL knew the death of plaintiff was substantially certain to follow by allowing the foregoing commissions and omissions to occur, yet proceeded with the acts and omissions regardless of the risk.

14.

At the time of the accident, defendant, Zurich American Insurance Company, issued a comprehensive general liability policy of insurance, to defendant KMTC JV, which said policy was in full force and effect, insuring KMTC JV from the above referenced acts of negligence and damages.

15.

It is alleged upon information and belief that at all times pertinent herein, that Defendant the State of Louisiana through the Department of Transportation and Development was the owner and custodian and had legal "grade" of the subject bridge. It is also alleged that the State had actual and/or constructive knowledge of the dangerous and defective conditions of the subject construction site and failed to take corrective actions within a reasonable period of time. It is also alleged that the engineering firm of Modjeski & Maters, Inc. was the entity responsible for reviewing and approving engineering plans for the project and in doing so failed to recognize defects in the project plans.

16.

As a result of this accident, ULVALDO SOTO MARTINEZ, thirty three years of age, sustained a horrible death. Plaintiff herein, MARIA CRUZ MALDONADO, his wife, individually and as his representative, and as parent and natural guardian and on behalf of their two minor children JUSTIN SOTO-MALDONADO AND USVALDO JESUS SOTO-MALDONADO, have all suffered catastrophic damages and itemizes these damages suffered as a result of this accident to be all reasonable damages applicable under Louisiana law and reasonable in the premises. Likewise, the minor children have suffered this enormous loss and bring forth this action to recover damages for said loss. Such damages would include loss of wages, loss of earning capacity, loss of comfort and society, loss of inheritance, survival action, and pre-impact fear of death, emotional suffering and mental anguish (past, present and future) loss of enjoyment of

life (past, present and future), loss of household services (past, present and future)
medical expenses, funeral expenses and other damages to be enumerated and proven at
the trial of this matter.

17.

As a result of the wrongful death of Ulvaldo Soto Martinez, Maria Maldonado-
Soto, widow, and Justin Soto-Maldonado and Usvaldo Jesus Soto-Maldonado, Natural
Children of deceased, have all suffered loss of consortium with the damages related to his
death, which include, but are not limited to:

a) Loss of enjoyment of life, past, present and future;

b) Mental pain and suffering, past, present and future;

c) Loss of love and affection, past, present and future;

d) Loss of comfort and solace, past, present and future; and

e) Loss of society and companionship, past, present and future.

18.

Zurich American Insurance Company is a foreign or alien insurer. Consequently,
pursuant to Article 42 (7) of the Louisiana Code of Civil Procedure, this action is
properly before this Honorable Court.

19.

The damages of Mrs. Maldonado, Justin Soto-Maldonado, Usvaldo Jesus Soto-
Maldonado, and Gilberto Soto Martinez and the Estate of Ulvaldo Soto Martinez all
vastly exceed $50,000.00, exclusive of interest and costs. Consequently, plaintiffs
demand and are entitled to a trial by jury pursuant to Article 1732 (1) of the Louisiana
Code of Civil Procedure.

**WHEREFORE,** petitioners prays that after due delays and proceedings had,
there be judgment herein in favor of petitioners, **MARIA CRUZ MALDONADO,**
Individually and on behalf of and as representative of the **ESTATE OF ULVALDO
SOTO MARTINEZ, DECEASED,** and on behalf of and as Next Friend and Natural
Guardian of **JUSTIN SOTO-MALDONADO AND USVALDO JESUS SOTO-
MALDONADO, MINORS, AND GILBERTO SOTO MARTINEZ,** and against

defendants, KIEWIT LOUISIANA CO., MASSMAN CONSTRUCTION CO., TRAYLOR BROS., INC., A JOINT VENTURE D/B/A KIEWIT MASSMAN TRAYLOR CONSTRUCTORS A/K/A KMTC JV, GEC LOUISIANA TIMED MANAGERS, A JOINT VENTURE PARTNERSHIP, PB AMERICAS, INC. F/K/A/ PARSONS, BRINCKERHOFF, QUADE & DOUGLAS, INC. AS PARTNER OF GEC LOUISIANA TIMED MANAGERS, A JOINT VENTURE PARTNERSHIP, LPA GROUP INCORPORATED AS PARTNER OF GEC LOUISIANA TIMED MANAGERS, A JOINT VENTURE PARTNERSHIP, G.E.C. INC. AS PARTNER OF GEC LOUISIANA TIMED MANAGERS, A JOINT VENTURE PARTNERSHIP, ZURICH AMERICAN INSURANCE COMPANY, THE STATE OF LOUISIANA THROUGH THE DEPARTMENT OF TRANSPORTATION AND DEVELOPMENT AND JL STEEL REINFORCING, LLC. AND MODJESKI AND MASTERS, INC. for all damages which are reasonable in the premises, expert witness fees together with legal interest thereon from the date of judicial demand until paid, and all costs of these proceedings and all equitable and just relief as this Court may deem appropriate. Plaintiffs also demand a trial by jury.

Respectfully submitted,

Juan C. Hernandez
Texas Bar Number 24002270
8111 LBJ Freeway, Suite 1065
Dallas, Texas 75251
(972) 235-4444
(972) 235-4454 Facsimile

STEVE M. SIKICH (#18026)
The Sikich Law Firm
309 E. Salter Street, Suite B * 70601
Post Office Box 1432 * 70602
Lake Charles, Louisiana
PH: (337) 721-8008
FX: (337) 721-8006
*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on June 11, 2010, a true and correct copy of the foregoing document was sent to all attorneys of record via fax and e-mail.

Juan C. Hernendez

08/27/2010  10:11    2818773980          HARTFORD SMWCCC              PAGE  02/03

NINETEENTH JUDICIAL DISTRICT COURT

PARISH OF EAST BATON ROUGE

STATE OF LOUISIANA

MARIA CRUZ MALDONADO, ET AL     §     SUIT NUMBER 582,129

V.                             §

KIEWITT LOUISIANA CO. d/b/a KIEWITT   §
MASSMAN TRAYLOR CONSTRUCTORS   §
a/k/a KMTC, ET AL               §     DIVISION "D"

## BUSINESS RECORD AFFIDAVIT

Before me, the undersigned notary, on this day personally appeared Julie Justice,

the affiant, a person whose identity is known to me. After I administered an oath to affiant,

affiant testified:

"My name is Julie Justice. I am over 18 years of age, of sound mind,
and capable of making this affidavit. The facts stated in this affidavit are
within my personal knowledge and are true and correct.

I am a claims adjuster for The Hartford.

Attached to this affidavit are two (2) pages of records from The
Hartford.

These records are kept by The Hartford in the regular course of
business, and it was the regular course of business of The Hartford for an
employee or representative of The Hartford, with knowledge of the act, event,
condition, opinion, or diagnosis that was recorded, to make this record or to
transmit the information to be included in this record. The record was made
at or near the time or reasonably soon after the act, event, condition, opinion,
or diagnosis that was recorded. The records attached to this affidavit are the
originals or exact duplicates of the originals."

Julie Justice

SWORN TO AND SUBSCRIBED before me on this $\underline{27}$ day of $\underline{August}$
2010.



ANICETA ENRIQUEZ
Notary Public, State of Texas
My Commission Expires
November 29, 2013

_Anicta Enriquez_
Notary Public in and for the State of Texas

-2-

MAIL TO:
OFFICE OF WORKERS' COMPENSATION
POST OFFICE BOX 94040
BATON ROUGE, LA. 70804-9040
(225) 342-7555

TOLL FREE (800) 201-3457

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
Employee Social Security Number

Employer UI Account Number
262601354
Employer Federal ID Number

**EMPLOYER REPORT**
**OF**
**INJURY/ILLNESS**

This report is completed by the Employer for each injury/illness identified by them or their employee as occupational. A copy is to be provided to the employee and the insurer immediately.

PURPOSE OF REPORT: (Check all that apply)
☐ More than 7 days of disability    ☐ Possible dispute    ☐ Medical only
☒ Injury resulted in death    ☐ Lump Sum Compromise/Settlement    (DO NOT mail copy to OWCA)
☐ Amputation or disfigurement    ☐ Other

| 1. Date of Report MM/DD/YY August 5, 2009 | 2. Date / time of Injury MM/DD/YY Time 5:30 Pm ☐AM ☒PM | 3. Normal Starting Time Day of Accident ☐AM ☐PM | 4. If Back to Work- Give date MM/DD/YY ☐AM ☐PM | 5. At same wage? ☐Yes ☐No | DO NOT WRITE IN THIS COLUMN |
|---|---|---|---|---|---|
| | 6/12/2009 | | | | |
| 6. If Fatal Injury, Give Date of Death MM/DD/YY | 7. Date Employer Knew of Injury MM/DD/YY 6/12/2009 | | 8. Date Disability began MM/DD/YY | 9. Last Full Day Paid MM/DD/YY 6/12/2009 | Date Received |
| 10. Employee Name First Middle Ulvaldo Martinez Soto | | Last | 11. ☐ Male ☐ Female | 12. Employee Phone # | Rates: |
| 13. Address and Zip Code 3757 East Loyola Drive, Kenner, Louisiana 70065 | | | | 14. Parish of Injury Jefferson | SLI/Se-Parish |
| 15. Date of Hire 5/13/2009 | 16. Date of Birth 10/19/1976 | 17. Occupation Reinforcing Steel Se | | 18. Dept/Division Employed | Occupation |
| 19. Place of Injury – Employer's Premises ? ☐ Yes ☒ No | 20. If No, Indicate Location – Street, City, Parish and State Huey P Long Bridge, New Orleans, LA | | | | Nature |
| 21. What work activity was the employee doing when the injury occurred? (Give weight, size and shape of materials or equipment involved). Explain what employee was doing with them. Indicate if correct procedures were followed. | | | | | Part of Body |
| Bridge construction | | | | | Source |
| | | | | | Event |
| | | | | | NCCI |
| 22. What caused injury to happen? (Describe fully the events which resulted in injury or disease. Explain what happened and how it happened. Name any objects or substances involved and explain how they were involved. Give full details on all factors which led to or contributed to that injury or illness.) The framing that claimant was attached to collapsed, resulting in his death. | | | | | |
| 23. Part of Body Injured and Nature of Injury or Illness (ex. left leg; multiple fractures) Fatality | | | | | 24. If Occ. Disease – Give Date Diagnosed |
| 25. Physician and Address | | | | 26. If Hospitalized, give name & address of facility | |
| 27. Employer's Name JI Steel Reinforcing Llc | | | | 28. Person Completing This Report - Please print Julie Justice, The Hartford | |
| 29. Employer's Address and Zip Code Po Box 14709 Fort Worth, Tx 76117 | | | | 30. Employer's Telephone Number | |
| 31. Employer's Mailing Address – If Different From Above | | | | 32. Nature of Business – Type of Mfg., Trade, Construction, Service, etc. | |
| 33. Wage Information (optional) Employee was paid ☐ Daily ☐ Weekly ☐ Monthly ☐ Other: The average weekly wage was $ _____ per week. | | | | | |

LDOL-WC-1007
REV-08/06

Insurer Name:    The Hartford
Phone:    (877) 889-9222
Address:    P O Box 4628 Houston, Tx 77210-4628

Insurer's Administrator or Representative:    Julie Justice
Phone:    (877) 889-9222
Address:    P O Box 4628 Houston, Tx 77210-4628



## EMPLOYER CERTIFICATE OF COMPLIANCE

You must submit this Certification to your workers' compensation insurer. Failure to submit this Certification as required may result in your being penalized by a fine of $500, payable to your insurer.

You must secure workers' compensation for your employees through insurance or by becoming an authorized self-insured. If you fail to provide security for workers' compensation, you must pay an additional 50% in weekly benefits to your injured workers.

If you willfully fail to provide security for workers' compensation, then you are subject to a fine of up to $10,000, imprisonment with or without hard labor for not more than 1 year, or both. If you have been previously fined and again fail to provide security for workers' compensation, then you are subject to additional penalties, including a court order to cease and desist from continuing further business operations.

You must not collect, demand, request, or accept any amount from any employee to pay or reimburse for the workers' compensation insurance premium. If you violate this provision, you may be punished with a fine of not more than $500, or imprisoned with or without hard labor for not more than one year, or both.

It is unlawful for you to willfully make, or to assist or counsel someone else to make, a false statement or representation in order to obtain or to defeat workers' compensation benefits. If you violate this provision, you may be fined up to $10,000, imprisoned with or without hard labor for up to 10 years, or both depending on the amount of benefits unlawfully obtained or defeated. In addition to these criminal penalties, you may be assessed a civil penalty of up to $5,000.

## EMPLOYER CERTIFICATION

I certify that I have read this entire document and understand its contents, and that I understand I am held responsible for this information. I certify my compliance with the Louisiana Workers' Compensation Act.

| | | | |
|---|---|---|---|
| Preparer Name | (PRINT) | Signature | Date |

Company Name              Company Address

(    )
Phone Number            Insurance Policy Number

Ulvaldo Martinez Soto         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
Employee Name           Employee Social Security Number

LDOL-WC-1025.ER
REV. 1/02