| | | |
|---|---|---|
| GUADALUPE ARENAS VARGAS, Individually and As Representative of the Estate of MARTIN ANASTACIO REYES OSUNA, Deceased, and As Next Friend of ZAID MARTIN REYES ARENAS; JUANA SYLVIA OZUNA GARCIA; and MARTIN REYES ADAME | § § § § § § § § | C.A. NO. 4:09-CV-02521 |
| V. | § § | |
| KIEWIT LOUISIANA CO., MASSMAN CONSTRUCTION CO., and TRAYLOR BROS., INC., a Joint Venture d/b/a KIEWIT MASSMAN TRAYLOR CONSTRUCTORS; KIEWIT LOUISIANA CO.; MASSMAN CONSTRUCTION CO.; TRAYLOR BROS., INC; KIEWIT ENGINEERING CO., and MODJESKI AND MASTERS, INC. | § § § § § § § § § § | JURY TRIAL DEMANDED |

## PLAINTIFFS' RESPONSE TO DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT BASED ON APPLICATION OF LOUISIANA LAW

TO THIS HONORABLE COURT:

Plaintiffs file this Response to Defendants' Motion for Partial Summary Judgment Based on Application of Louisiana Law (Doc #48), and respectfully shows this Court as follows:

### I.
### Summary of Response

1.  In their motion, Defendants contend that Louisiana law should determine what compensatory damages are recoverable in this wrongful death and survival action. If this Court agrees with Defendants' argument that Louisiana law rather than Texas law governs this question, then the parents of Mr. Reyes, whose unnecessary and tragic death is described below, will not have standing to recover the damages caused by the death of their son. Defendants' motion should be denied for the following reasons:

(1) The choice of law question presented in this case concerns the recovery of compensatory damages, not liability; accordingly, the occurrence of this incident in Louisiana is not as significant as it would be in the liability context.

(2) It is still unclear where much of the conduct involving the engineering and design that gave rise to this incident occurred; accordingly, this factor does not support the application of Louisiana law.

(3) As between Texas and Louisiana, only Texas can claim a connection to the parties' residences or places of business.

(4) There was no relationship between Plaintiffs and Defendants to support the application of Louisiana law.

## II.
## Background

2. On June 12, 2009, Mr. Martin Reyes was working as part of a construction crew on a project to widen the Huey P. Long Bridge in Bridge City, Louisiana. He was employed by JL Steel Reinforcing, LLC. ("JL Steel"). The bridge project was a joint venture amongst Defendants Kiewit Massman Traylor Constructors ("KMTC JV") and the individual joint venture partners. On this date, employees of KMTC JV were using a crane to place a sixty foot tall steel rebar cage in position on top of a concrete pier, which was approximately seventy feet high. Kiewit Engineering Company ("KECo") designed the rebar cage and the guying plan for the cage. Modjeski and Masters, Inc. ("M&M") was the engineering firm on the bridge project, and reviewed and approved the design of the rebar cage and guying system for the cage.

3. Mr. Reyes, along with two other JL Steel employees, Uvaldo Soto and Sammy Vasquez, was working on top of the pier. After the crane placed the rebar cage on top of the pier, Messrs. Reyes, Soto, and Vasquez tied the rebar of the cage to the rebar on the top of the pier. At this point, the JL Steel employees were instructed to climb up on to the rebar cage to release the crane from the cage. Mr. Vasquez climbed back down to the top of the concrete pier after being

advised that he wasn't needed to help release the crane. A few minutes later, the entire rebar cage crashed to the ground, killing Mr. Reyes and Mr. Soto.

4. Tragically, Mr. Reyes was not killed instantly; rather, he suffered tremendously with a rebar rod sticking through his back. Mr. Reyes begged another JL Steel employee, Cesar Corona, who arrived on the scene to try to help him, to pull the steel rod out of his back. After writhing in misery for some time, Mr. Reyes finally succumbed to his injuries.

5. Mr. Reyes is survived by his wife, Guadalupe Arenas Vargas, his son, Zaid Martin Reyes Arenas, his mother, Juana Sylvia Ozuna Garcia, and his father, Martin Reyes Adame.

6. On August 6, 2009, this case was removed from the 281st District Court of Harris County, Texas to this Court. On December 21, 2010, Plaintiffs filed their First Amended Complaint so that they could have a federal complaint on file. The First Amended Complaint also dropped six entities that were defendants in the state court action, and clarified the nature of Plaintiffs' allegations. On March 22, 2011, Plaintiffs filed their Second Amended Complaint, adding KECo as a defendant. On May 24, 2011, Plaintiffs filed their Third Amended Complaint, adding M&M as a defendant. This case is set for jury trial on October 31, 2011.

7. Although he was temporarily living in Louisiana while working on the construction project, Mr. Reyes was domiciled in Austin, Texas at the time he was killed.[1] Mr. Reyes' employer, JL Steel, is located in Fort Worth, Texas.[2] The contracts for the bridge project, which are attached as exhibits to Defendants' motion, show that Defendant KMTC JV is also located in

---

[1] *See* Plaintiff Guadalupe Arenas Vargas', as Representative of the Estate of Martin Reyes, Answer to Interrogatory No. 1, and excerpts from Mr. Reyes' employment file at JL Steel, collectively attached to this response as Exhibit "A."

[2] *See* Exhibit "E" to Defendants' motion, which is the contract between JL Steel ("Subcontractor") and KMTC JV ("Contractor") for the bridge project. *See also* the deposition testimony of Michael LaPointe, the President of JL Steel, at p. 9, attached to this response as Exhibit "B."

3

Fort Worth, Texas.[3] The member/partners of KMTC JV are Defendants Kiewit Louisiana Company, which is located at the same address as KMTC JV in Fort Worth,[4] Massman Construction Company, which is located in Kansas City, Missouri,[5] and Traylor Bros., Inc., which is located in Evansville, Indiana.[6]

## III.
## Argument & Authorities

**A.  Standard of review.**

8.  The Fifth Circuit will review the granting or denial of a summary judgment motion *de novo*. *CQ Inc. v. TXU Min. Co., L.P.*, 565 F.3d 268, 273 (5th Cir. 2009).

9.  Although summary judgment is proper in a case where there is no genuine issue of material fact, this is not such a case. Rule 56(c), FED. R. CIV. P.; *Celotex Corp. v. Catreet*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986). In deciding whether a genuine and material fact issue has been created, the facts and the inferences to be drawn from them must be reviewed in the light most favorable to the non-moving party. *Reaves Brokerage Co. v. Sunbelt Fruit & Vegetable Co.*, 336 F.3d 410, 412 (5th Cir. 2003). In determining whether summary judgment is appropriate, this Court "must review all the evidence in the record, but make no credibility determinations, or weigh any evidence." *Roberts v. Cardinal Svcs., Inc.*, 266 F.3d 368, 373 (5th Cir. 2001). This Court should also disregard all evidence favorable to the moving party that is contradicted, and must assume as true all evidence favoring the nonmoving party. *Id.*

**B.  The prior dismissal of JL Steel as a party defendant is irrelevant to the issues raised in this motion.**

---

[3] *See* Exhibit "A" to Defendants' motion at pp. 1, 5, and Exhibit "E" to Defendants' motion at p. 1.

[4] *See* Exhibit "C" attached to this response.

[5] *See* Exhibit "D" attached to this response.

[6] *See* Exhibit "E" attached to this response.

10. As a threshold matter, Plaintiffs must clarify the circumstances of JL Steel's prior unopposed dismissal from this case. In their motion, Defendants claim that "[t]his Court applied Louisiana substantive law to [sic] issue of workers' compensation tort-suit immunity," and found that "Louisiana law governed and provided JL Steel employer immunity from suit . . . .."[7] This is nonsense; this Court has not applied Louisiana law to anything in this case. Rather, Plaintiffs did not oppose JL Steel's motion for summary judgment because it was right on the law. A careful reading of JL Steel's motion reveals that it was specifically focused on Section 184 of the Restatement, which addresses employer immunity from a tort suit by an employee/plaintiff who is covered by workers compensation insurance.[8] The test for whether Louisiana workers compensation law applied to Plaintiffs' prior claims against JL Steel under Restatement Section 184 is totally distinct from the factors this Court must analyze when determining if Louisiana law has the most significant relationship to Plaintiffs' recovery of compensatory damages against the non-employer Defendants, which are set forth under Restatement Section 145 as discussed below.

C. **There are genuine, indeed, glaring fact issues regarding the applicability of Louisiana versus Texas law to Plaintiffs' recovery of compensatory damages in this case which preclude summary judgment.**

11. As Defendants discussed in their brief, Texas courts decide choice of law issues by applying the "most significant relationship" test found in the Restatement (Second) of Conflict of Laws. *Torrington Co. v. Stutzman*, 46 S.W.3d 829, 848 (Tex. 2000); *Hughes Wood Prods., Inc. v. Wagner*, 18 S.W.3d 202, 205 (Tex. 2000). In this regard, the Restatement "requires the court to consider which state's law has the most significant relationship to the particular substantive issue to be resolved." *Wagner*, 18 S.W.3d at 205 (emphasis in original). Section 145 of the

---

[7] Defendants' motion at p. 4.

[8] Doc #17 at pp. 2-4.

5

Restatement provides specific considerations relevant when applying the general conflict of law principles to a tort case:

    (a)    the place where the injury occurred;

    (b)    the place where the conduct causing the injury occurred;

    (c)    the domicile, residence, nationality, place of incorporation, and place of business of the parties; and

    (d)    the place where the relationship, if any, between the parties is centered.

*Stutzman*, 46 S.W.3d at 848 (citing Restatement (Second) of Conflict of Laws § 145(2) (1971)); *see also Wagner*, 18 S.W.3d at 205 & n. 1.

    1.    <u>The choice of law question presented in this case concerns the recovery of compensatory damages, not liability; accordingly, the occurrence of this incident in Louisiana is not as significant as it would be in the liability context.</u>

12.    In analyzing choice of law in the context of compensatory damages, the Texas Supreme Court in *Stutzman* made the following observation:

> Considering the purpose of compensatory damages, contacts such as the site of the injury or where the tortious behavior occurred, which are important in determining which state's laws govern liability, are less important. Rather, the most important contacts in determining which state's law governs compensatory damages will usually be the "ones with the most direct interest in the plaintiff's monetary recovery and/or the most direct in protecting the defendant against financial hardship."

*Id.* at 848-49 (internal citations omitted). Indeed, Texas no longer uses the common law doctrine of *lex loci delicti*, under which the place of injury determined the choice of law. *See Gutierrez v. Collins*, 583 S.W. 312, 318 (Tex. 1979). Therefore, the place of injury is not determinative of the present choice of law issue.

13.    The crux of Defendants' argument is that Mr. Reyes' parents are not entitled to recover compensatory damages under Louisiana law, while they are entitled to recover such damages under Texas law. There is no issue as to which state's law governs liability; *i.e.*, Plaintiffs'

6

negligence claims, as the governing laws in both states are virtually identical. Accordingly, the occurrence of this incident in Louisiana is relatively less important in this context. *See Enterprise Prods. Partners, L.P. v. Mitchell*, 2011 WL 693700 (Tex. App.—Houston [1st Dist.] Feb. 10, 2011) (in holding that Texas vs. Mississippi law applied to the issue of compensatory damages, finding that even though the incident occurred in Mississippi, "Texas' compensatory damages law is at least equally capable of serving the interest of fairly compensating injured plaintiffs." (citing *Stutzman*, 46 S.W.3d at 848)).

2. It is still unclear where much of the conduct involving the engineering and design that gave rise to this incident occurred; accordingly, this factor does not support the application of Louisiana law.

14. The principal thrust of Plaintiffs' claims in this case is that the rebar cage and column guying system were not safely designed and engineered for their intended use. To date, it is still unclear which Defendants played what part in the design and engineering of the rebar cage and guying system. While several liability depositions have been taken, the depositions of the individuals with knowledge of which Defendants were most involved in the design and engineering issues and what part they played have yet to be taken. This is not Plaintiffs' fault, as their counsel has been asking for these depositions for months. Presumably, as the Managing Party of KMTC JV and the purported designer of the rebar cage and guying system, the Kiewit defendants were the entities primarily responsible for the engineering and design decisions regarding the rebar cage and guying system, and none of those entities are located in Louisiana.

3. As between Texas and Louisiana, only Texas can claim a connection to the parties' domiciles or places of business.

15. As discussed above, none of the parties in this case were either domiciled or maintained their principal places of business in Louisiana. Mr. Reyes, whose estate is represented in this case through his widow, had his domicile in Texas. Defendants KMTC JV and Kiewit Louisiana

7

Co. (also the "Managing Party" of KMTC JV[9]), are both located in Texas. As shown in the attached Exhibit "C" to this response, all of Kiewit Louisiana Co.'s officers and decision-makers are in Texas. *See Enterprise Prods. Partners, L.P.* at * 5 (in holding that Texas law should be applied to the issue of compensatory damages, finding that the defendants had their principal places of business in Texas, and the relevant decision-makers were in Texas). Therefore, this factor weighs in favor of applying Texas law.

    4.    <u>There was no relationship between Plaintiffs and Defendants to support the application of Louisiana law.</u>

16.    It is undisputed that there was no relationship between any of the Plaintiffs and any of the Defendants at the time of the incident. Therefore, this factor is irrelevant to this case.

### III.
### Conclusion

17.    Because there are genuine issues of material fact on the relevant choice of law issues raised by Defendants, Plaintiffs respectfully ask this Court to deny Defendants' motion in its entirety.

Respectfully submitted,

By: */s/ Christopher K. Johns*
ANTHONY G. BUZBEE
SBOT No. 24001820
SD ID No. 22679
JP Morgan Chase Tower
600 Travis Street, Suite 7300
Houston, Texas 77002
Telephone: 713.223.5393
Facsimile: 713.223.5909

OF COUNSEL:
**THE BUZBEE LAW FIRM**
Christopher K. Johns
SBOT No. 24002353

---

[9] *See* Exhibit "F" to Defendant's motion at p. 8.

8

SD ID No. 21630
cjohns@txattorneys.com

**SOLIS & SMITH, P.C.**
Carlos Solis
SBOT No. 24002972
Paul Smith
SBOT No. 24015025
1925 North New Braunfels
San Antonio, TX 78208
Telephone: 210.223.5000
Facsimile: 210.223.5007

**THE LAW OFFICE OF
GARCIA & KARAM, L.L.P.**
Ricardo Garcia
SBOT No. 07643200
Aizar Karam
SBOT No. 00796860
820 South Main
McAllen, Texas 78501
Telephone: 956.630.2882
Facsimile: 956.630.5393

ATTORNEYS FOR PLAINTIFFS

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of this document will be served or has been served on all interested parties in accordance with the Federal Rules of Civil Procedure on the *1st day of June, 2011*. Service on E-Filing Users will be automatically accomplished through the Notice of Electronic Filing; non-Filing Users will be served by certified mail, return receipt requested and/or via facsimile.

/s/ *Christopher K. Johns*
Christopher K. Johns

Westlaw.

--- S.W.3d ----, 2011 WL 693700 (Tex.App.-Hous. (1 Dist.))
(Cite as: 2011 WL 693700 (Tex.App.-Hous. (1 Dist.)))

**H**
Only the Westlaw citation is currently available.

NOTICE: THIS OPINION HAS NOT BEEN RELEASED FOR PUBLICATION IN THE PERMANENT LAW REPORTS. UNTIL RELEASED, IT IS SUBJECT TO REVISION OR WITHDRAWAL.

Court of Appeals of Texas,
Houston (1st Dist.).
ENTERPRISE PRODUCTS PARTNERS, L.P. and Dixie Pipeline Company, Appellants
v.
Catherine MITCHELL, Individually and as Administratrix to the Estate of Mattie L. Mitchell, Deceased, and as Administratrix to the Estate of Nacquandrea Mitchell, Deceased, O'Neal Pacley, Linda Mitchell, Johnny Jones, Carolyn Pacley, Samida Mitchell, Frank Pacley, Jim Pacley, Calvin Bettis, Lulu Bloxson, Ollie Mae Bonner, Johnny Pacley, James L. Pacley, Sanita Johnson, Sharon Willis, and Rochelle Nabores, Appellees.

No. 01–09–00653–CV.
Feb. 10, 2011.

**Background:** Beneficiaries of decedents killed in explosion caused by rupture of liquid propone pipeline, those who suffered injuries in explosion, as well as others who suffered property damage filed wrongful death and personal injury suit against pipeline operator and its managing partner. Operator and its managing partner filed motion seeking application of Mississippi law to issue of amount of recoverable compensatory damages. The 55th District Court, Harris County, denied motion and certified its order for interlocutory appeal. Operator and its managing partner appealed.

**Holding:** On rehearing, the Court of Appeals, Evelyn V. Keyes, J., held that Texas law applied to issue of compensatory damages.

Affirmed.

West Headnotes

**[1] Action 13 ⚛17**

13 Action
   13II Nature and Form
      13k17 k. What law governs. Most Cited Cases
Which state's law governs an issue is a question of law for the court to decide.

**[2] Action 13 ⚛17**

13 Action
   13II Nature and Form
      13k17 k. What law governs. Most Cited Cases
General factors relevant to a choice-of-law question include: needs of the interstate and international systems, relevant policies of the forum, the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue, protection of justified expectations, basic policies underlying the particular field of law, certainty, predictability and uniformity of result, and ease in the determination and application of the law to be applied. Restatement (Second) of Conflict of Laws § 6(2).

**[3] Torts 379 ⚛103**

379 Torts
   379I In General
      379k103 k. What law governs. Most Cited Cases
Specific considerations relevant when applying general conflict of laws principles to a tort case are: place where the injury occurred, place where the conduct causing the injury occurred, domicile, residence, nationality, place of incorporation and place of business of the parties, and place where the relationship, if any, between the parties is centered. Restatement (Second) of Conflict of Laws § 145(2).

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- S.W.3d ----, 2011 WL 693700 (Tex.App.-Hous. (1 Dist.))
(Cite as: 2011 WL 693700 (Tex.App.-Hous. (1 Dist.)))

**[4] Action 13 🔑17**

13 Action
    13II Nature and Form
        13k17 k. What law governs. Most Cited Cases
    In a choice of law analysis, the number of contacts with a state is not determinative; rather, court must evaluate the contacts in light of the state policies underlying the particular substantive issue.

**[5] Damages 115 🔑2**

115 Damages
    115I Nature and Grounds in General
        115k2 k. What law governs. Most Cited Cases

**Death 117 🔑8**

117 Death
    117III Actions for Causing Death
        117III(A) Right of Action and Defenses
            117k8 k. What law governs. Most Cited Cases
    Texas law, rather than Mississippi law, applied to issue of compensatory damages in wrongful death and personal injury action arising from explosion caused by rupture of liquid propane pipeline, even though explosion occurred in Mississippi and plaintiffs were residents and domiciliaries of Mississippi at time of explosion; pipeline could have exploded at any point along its 1,300 mile span, both defendants were corporations with their principal place of business in Texas, decisions regarding maintenance and operation of pipeline occurred in Texas, Texas's compensatory damages law was at least equally capable of serving the interest of fairly compensating injured plaintiffs, and the unique background of the Mississippi damages cap was not implicated by facts of case. West's A.M.C. § 11–1–60; Restatement (Second) of Conflict of Laws §§ 6(2), 145(1).

On Appeal from the 55th District Court, Harris County, Texas, Trial Court Case No. 0835840.Chad Flores, David M. Gunn, Fields Alexander, John S. Adcock, Murray Fogler, Beck, Redden & Secrest, L.L.P., Houston, TX, for Appellants.

Richard P. Hogan Jr., Hogan & Hogan, L.L.P., Houston, TX, for Appellees.

Panel consists of Chief Justice RADACK and Justices KEYES and HIGLEY.

**OPINION ON REHEARING**
EVELYN V. KEYES, Justice.
    *1 Appellants, Enterprise Products Partners, L.P. ("Enterprise") and Dixie Pipeline Company ("Dixie"), filed a motion for en banc reconsideration of our August 19, 2010 opinion. We treat the motion for en banc consideration as a motion for rehearing, grant rehearing, and withdraw our August 19, 2010 opinion and judgment and issue this opinion and judgment in their place. The disposition of the case remains unchanged.

Enterprise and Dixie challenge the trial court's June 29, 2009 interlocutory order ruling that Texas law should govern the issue of recoverable compensatory damages with regard to all wrongful death and personal injury claims arising from a pipeline explosion. In one issue, Enterprise and Dixie argue that Mississippi law, rather than Texas law, should govern recoverable compensatory damages.

We affirm.

**Background**
On the morning of November 1, 2007, a liquid propane pipeline operated by Dixie ruptured in a rural area near Carmichael, Mississippi. Upon its release into the air, the liquid propane changed to gas and formed a cloud that rose over a nearby neighborhood and ignited into a large fireball that could be seen and heard for miles around. The resulting fire killed two people, injured seven others, and resulted in the evacuation of approximately 60 families from their homes. Four homes were des-

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Page 4 of 8

--- S.W.3d ----, 2011 WL 693700 (Tex.App.-Hous. (1 Dist.))
(Cite as: 2011 WL 693700 (Tex.App.-Hous. (1 Dist.)))

Page 3

troyed, several others were damaged, and more than 70 acres of the woods and grassland surrounding the site of the explosion were burned. The National Transportation Safety Board (NTSB) reported that approximately 10,253 barrels, or 430,000 gallons, of propane were released.

Appellees, Catherine Mitchell, O'Neal Pacley, Linda Mitchell, and Johnny Jones, as wrongful death beneficiaries of the two decedents, Mattie L. Mitchell and Nacquandrea Mitchell, along with Catherine Mitchell, Catherine Pacley, and Samida Mitchell as personal injury claimants and other plaintiffs who suffered property damage (collectively, plaintiffs) sued Dixie and Enterprise, Dixie's managing partner,[FN1] in Harris County, Texas. Dixie and Enterprise moved the trial court to apply Mississippi law to the issue of the amount of recoverable compensatory damages, arguing that the Restatement (Second) of Conflicts of Law's balancing test favors application of Mississippi's $1 million cap on noneconomic damages in civil actions.[FN2] Dixie and Enterprise argued that, as the domiciliary state of the plaintiffs, Mississippi has the greatest interest in determining the amount of compensation to be awarded to its residents and in protecting defendants doing business in its state. The plaintiffs argued that Texas law should apply because both Enterprise and Dixie have their principal place of business in Texas, the pipeline was manufactured in Texas, and Enterprise and Dixie control the pipeline's multi-state operation from Texas.

The trial court issued an order ruling that "the issue of recoverable compensatory damages with regard to all wrongful death and personal injury claims is to be governed by Texas law" and certifying the order for interlocutory appeal pursuant to Texas Civil Practice and Remedies Code section 51.014(d). This interlocutory appeal was filed.[FN3] Neither party disputes the application of Texas law to the remaining issues.

*2 It is undisputed that Dixie and Enterprise are both Delaware corporations whose principal place of business is Houston, Texas. All of the wrongful death and personal injury plaintiffs are Mississippi residents and domiciliaries.[FN4] It is likewise undisputed that the failed segment of pipeline was manufactured in 1961 in Texas, that it was subsequently installed in Mississippi, and that the explosion occurred in the state of Mississippi. Furthermore, the portion of the pipeline that exploded was part of a 1,300 mile pipeline in a 35,000 mile pipeline system and spanned from Texas through Louisiana, Mississippi, Alabama, Georgia, South Carolina, and North Carolina.

Decisions about Enterprise and Dixie's operations were made in Texas. Dixie's corporate representative indicated that its policies, procedures, and manuals all come from the Houston, Texas office, that the pressure, flow, and operation of valves and pumps are monitored and conducted from Houston via a computer system whose control system is likewise in Houston, and that the Houston employees are generally responsible for the operation of the pipeline. Furthermore, key employees such as the manager of pipeline integrity, the pipeline integrity engineer for this particular pipeline, and the pipeline controller responsible for monitoring this pipeline on the day of the explosion are all located in Houston, Texas. None of the pump stations or other facilities along the pipeline's route through Mississippi are manned on a routine basis, although Dixie does have about five employees who work in Mississippi.

Choice of Law

[1] Which state's law governs an issue is a question of law for the court to decide. *Torrington Co. v. Stutzman,* 46 S.W.3d 829, 848 (Tex.2000). Therefore, we review the trial court's decision to apply Texas law de novo. *See Minnesota Mining & Mfg. Co. v. Nishika Ltd.,* 955 S.W.2d 853, 856 (Tex.1996).

[2] We decide **choice** of law issues by applying the "most **significant relationship**" test found in the Restatement (Second) of Conflict of Laws. *Torrington Co.,* 46 S.W.3d at 848; *Hughes Wood*

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Page 5 of 8

--- S.W.3d ----, 2011 WL 693700 (Tex.App.-Hous. (1 Dist.))
(Cite as: 2011 WL 693700 (Tex.App.-Hous. (1 Dist.)))

Page 4

*Prods., Inc. v. Wagner,* 18 S.W.3d 202, 205 (Tex.2000). Section 6 of the Restatement sets out general factors relevant to the **choice** of **law**:

(a) the needs of the interstate and international systems,

(b) the relevant policies of the forum,

(c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,

(d) the protection of justified expectations,

(e) the basic policies underlying the particular field of law,

(f) certainty, predictability and uniformity of result, and

(g) ease in the determination and application of the law to be applied.

*Torrington Co.,* 46 S.W.3d at 848 (quoting RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 6(2) (1971)); *see also Hughes Wood Prods.,* 18 S.W.3d at 205.

[3] Section 145 of the Restatement provides specific considerations relevant when applying the general conflict of laws principles to a tort case:

*3 (a) the place where the injury occurred,

(b) the place where the conduct causing the injury occurred,

(c) the domicile, residence, nationality, place of incorporation and place of business of the parties, and

(d) the place where the relationship, if any, between the parties is centered.

*Torrington Co.,* 46 S.W.3d at 848 (citing RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 145(2) (1971)); *see also Hughes Wood Prods.,* 18 S.W.3d at 205 & n. 1.

Section 145 also provides, "The rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties under the principles stated in [section] 6." RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 145(1) (1971); *see also Hughes Wood Prods.,* 18 S.W.3d at 205 (quoting section 145(1) of Restatement and holding that court of appeals erred by concluding that Texas law had most significant relationship to case and thus Texas law should apply to all issues rather than considering which state had most significant relationship to exclusive remedy issue, which was specific issue to be resolved). The Restatement's "most significant relationship test" includes a presumption in favor of applying the law of the place of the injury. Section 146, governing personal injuries, and section 175, governing wrongful death, create a presumption that

> the law of the state where the injury occurred determines the rights and liabilities of the parties, unless, with respect to the particular issue, some other state has a more significant relationship under the principles stated in section 6 to the occurrence and the parties, in which event the local law of the other state will be applied.

RESTATEMENT (SECOND) OF CONFLICT OF LAWS §§ 146, 175.

[4] Using this presumption in favor of the law of the state where the injury occurred as the starting point for our analysis, we consider the various factors listed in the Restatement to determine if Texas has a greater interest in the determination of the particular issue than Mississippi, the state where the injury occurred. *See id.* § 175 cmt. d. (also providing that courts should examine "the purpose sought to be achieved by their relevant local law rules and the particular issue involved"). The number of contacts with a state is not determinative; rather, we evaluate the contacts in light of the state

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Page 6 of 8

Page 5

--- S.W.3d ----, 2011 WL 693700 (Tex.App.-Hous. (1 Dist.))
(Cite as: 2011 WL 693700 (Tex.App.-Hous. (1 Dist.)))

policies underlying the particular substantive issue. *Torrington Co.,* 46 S.W.3d at 848.

In analyzing choice of law in the context of compensatory damages, the Texas Supreme Court has stated:

> The primary purpose of awarding compensatory damages in civil actions is not to punish the defendant, but to fairly compensate the injured plaintiff. A state's compensatory damages law balances the need to compensate the plaintiff against the goal of protecting resident defendants from undue liability and excessive litigation.

*4 Considering the purpose of compensatory damages, contacts such as the site of the injury or where the tortious behavior occurred, which are important in determining which state's laws govern liability, are less important. Rather, the most important contacts in determining which state's law governs compensatory damages will usually be the "ones with the most direct interest in the plaintiff's monetary recovery and/or the most direct in protecting the defendant against financial hardship."

*Id.* at 848–89 (internal citations omitted).

In *Torrington,* the supreme court analyzed which state's law should apply to compensatory damages in a helicopter crash that killed two marines. *Id.* at 833. The marines were North Carolina residents whose domiciles were in Nebraska and Michigan, and at least two of the defendant corporations, Bell and Textron, had their principal place of business in Texas. *Id.* at 849. In holding that the trial court correctly applied Texas law, the court stated,

> We have noted that a plaintiffs domiciliary state usually has a strong interest in seeing its compensatory damages law applied. But Texas, as the forum state, also has a significant interest in protecting resident defendants, such as Bell and Textron. And other *estatement* factors weigh in favor of applying Texas law. For example, much of the conduct that allegedly caused the injury occurred in Texas. The helicopter that was involved in the crash was manufactured and delivered in Texas, several communications about the bearing failure ... were issued from Texas, and Torrington sent communications about the investigation to Bell in Texas. Moreover, Texas is the forum state and the parties acquiesced to the trial court's application of Texas law to the liability issue. "Ease in the determination and application of the law to be applied" is one of the factors to be considered in resolving choice-of-law questions under the *estatement.*

*Id.* at 850 (internal citations omitted).

[5] Here, Mississippi's contact with the tort arises from the fact that all of the wrongful death and personal injury plaintiffs were residents and domiciliaries of Mississippi at the time of the explosion. Mississippi has an interest in ensuring that its citizens receive adequate compensation so that the costs of injured residents are not borne by the public, but Mississippi's damages cap does not further that interest. Moreover, while the explosion and its resulting injuries occurred in Mississippi, we note that the pipeline could have exploded at any point along its 1,300 mile span. *See id.* at 849; *uncan v. Cessna ircraft Co.,* 665 S.W.2d 414, 421 (Tex.1984) (rejecting using location of incident alone as method for determining which state's law should govern).

The policy behind Mississippi's Tort Reform Act of 2004, including the compensatory damages cap, was essentially "to end the state's 'hell-hole' reputation and attract more business and insurers to Mississippi." *See generall* MISS.CODE ANN. § 11–1–60 (2004) (providing limit of $1 million in awarding non-economic damages against any civil defendant other than health care liability defendant, providing limit of $500,000 in awarding non-economic damages in medical liability actions, and defining noneconomic damages as "subjective, non-pecuniary damages" arising from an injury); H.B.

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- S.W.3d ----, 2011 WL 693700 (Tex.App.-Hous. (1 Dist.))
(Cite as: 2011 WL 693700 (Tex.App.-Hous. (1 Dist.)))

Page 6

13, 2004 Leg., 2d Ex.Sess. (Miss.2004) (amending section 11–1–60 and others); Mark Behrens & Cary Silverman, *No en for usiness The Transform ation of Mississi is Legal* Climate, 24 MISS. C.L.REV. 393, 415–16 (2005) (discussing "comprehensive civil justice reform bill, H.B. 13" that, among other provisions, amended section 11–1–60 to limit non-economic damages). Those policy concerns are not implicated here. Mississippi's interest in applying its damages cap to lawsuits in that state has little applicability to a lawsuit brought in a different state against defendants domiciled in that different state where the tortious conduct also occurred in that other state. When the incident occurred, Enterprise and Dixie had only limited business activity in the state of Mississippi, and the pipeline, which was built through the state of Mississippi in the 1960s, was not built in reliance on this reform, as the Tort Reform Act was passed in 2004.

*5 Texas, however, is the forum state with a significant interest in protecting resident defendants, and the parties have acquiesced to the trial court's application of Texas law to all other issues in this case. Both of the defendants, Enterprise and Dixie, are corporations with their principal place of business in Texas, and the decisions regarding maintenance and operation of the pipeline—i .e., the conduct causing the injury—occurred in Texas. Additionally, Texas's compensatory damages law is at least equally capable of serving the interest of fairly compensating injured plaintiffs. *See Torring ton Co.,* 46 S.W.3d at 848 (holding that "we must evaluate the contacts in light of the state policies underlying the particular substantive issue" and that "[t]he primary purpose of awarding compensatory damages in civil actions is ... to fairly compensate the injured plaintiff"). Thus, here, just as in *Tor rington,* all of these factors weigh in favor of applying Texas law. *See id.* at 848.

Enterprise and Dixie argue in their brief that *Torrington* is distinguishable from the present case because *Torrington* involved "the unique setting of an aviation crash" while this case does not, because "the unique background of the Mississippi legislation limiting compensatory damages" creates a stronger policy interest in favor of applying Mississippi law than was present in *Torrington,* and because all of the plaintiffs here are residents and domiciliaries of Mississippi, unlike the claimants in *Torrington,* whose residences and domiciles implicated three different states. We disagree. As we have already discussed, the "unique background" of the Mississippi damages cap is not implicated by these facts, as neither Enterprise nor Dixie maintained any significant business presence in Mississippi. *See id.* at 849; *uncan,* 665 S.W.2d at 421. Furthermore, even considering that all of the wrongful death and personal injury plaintiffs in this case share the same state residence and domicile, that one factor does not overwhelm the other considerations. *See Torrington Co.,* 46 S.W.3d at 84849; *Hughes Woods Prods.,* 18 S.W.3d at 205; RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 145(1).

We conclude that Texas law should be applied to the issue of compensatory damages available to the wrongful death and personal injury plaintiffs in this case. Thus, the trial court's interlocutory order was proper.

We overrule Enterprise and Dixie's sole issue.

### Conclusion

We affirm the interlocutory order of the trial court.

> FN1. Enterprise was the managing partner of Dixie at the time of the explosion and had been Dixie's managing partner since July 1, 2005.
>
> FN2. *See* MISS.CODE ANN. § 11–1–60 (2004) (providing limit of $ 1 million in awarding non-economic damages against any civil defendant other than health care liability defendant, providing limit of $500,000 in awarding non-economic dam-

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- S.W.3d ----, 2011 WL 693700 (Tex.App.-Hous. (1 Dist.))
(Cite as: 2011 WL 693700 (Tex.App.-Hous. (1 Dist.)))

ages in medical liability actions, and defining noneconomic damages as "subjective, nonpecuniary damages" arising from an injury).

FN3. Section 51.014(d) of the Civil Practice and Remedies Code allows interlocutory appeal of otherwise unappealable orders if:

(1) the parties agree that the order involves a controlling question of law as to which there is substantial ground for difference of opinion;

(2) an immediate appeal from the order may materially advance the ultimate termination of the litigation; and

(3) the parties agree to the order.

TEX. CIV. PRAC. & REM.CODE ANN. § 51.014(d) (Vernon 2008).

FN4. Some of the plaintiffs claiming property damage are residents or domiciliaries of other states, but, by its plain language, the trial court's order does not affect the measure of damages on the claims of property damage, and neither party argues for the application of law from a jurisdiction other than Texas or Mississippi.

Tex.App.-Houston [1 Dist.],2011.
Enterprise Products Partners, L.P. v. Mitchell
--- S.W.3d ----, 2011 WL 693700 (Tex.App.-Hous. (1 Dist.))

END OF DOCUMENT

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.