IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| GUADALUPE ARENAS VARGAS, et al., § | CIVIL ACTION NO. 4:09-CV-02521 |
| Plaintiffs, § | |
| § | |
| v. § | JUDGE KEITH P. ELLISON |
| § | |
| KIEWIT LOUISIANA CO., et al., § | |
| Defendants. § | JURY |

**MOTION FOR SUMMARY JUDGMENT BY KMTC
AND JOINT VENTURERS AS STATUTORY EMPLOYERS**

**NOW INTO COURT**, through undersigned counsel, comes Defendants, Kiewit Louisiana Co., Massman Construction Co. and Traylor Bros., Inc., a Joint Venture d/b/a Kiewit Massman Traylor Constructors ("KMTC JV"), and the individual joint venturers of KMTC JV, Kiewit Louisiana Co. ("Kiewit"), Massman Construction Co. ("Massman"), and Traylor Bros., Inc. ("Traylor") (collectively, "Defendants"), who move this Honorable Court to grant summary judgment in favor of Defendants and against the plaintiffs, Guadalupe Arenas Vargas, individually and as representative of the Estate of Martin Anastacio Reyes Osuna, deceased and as next friend of Zaid Martin Reyes Arenas; and, Sylvia Ozuna Garcia and Martin Reyes Adame, parents of the deceased Martin Anastacio Reyes Osuna (collectively, "Plaintiffs"), dismissing, with prejudice, all claims of the Plaintiffs against (1) KMTC JV, as it is, under applicable Louisiana law, the statutory employer of the decedent, Martin Anastacio Reyes Osuna ("Decedent" or "Reyes"), and, thus, liable only for workers' compensation benefits and immune from tort liability; and against (2) Kiewit, Massman and Traylor (collectively, "Joint Venturers") since, as the individual joint venturers of KMTC JV, they are, under applicable Louisiana law,

1

likewise exclusively liable for workers' compensation benefits and are immune from tort liability.

I. BACKGROUND

### A. Plaintiffs Allege Tort Claims in Negligence against KMTC JV and the Joint Venturers

The Plaintiffs have claimed that, among other listed defendants, KMTC JV and the Joint Venturers are liable to Plaintiffs as a result of the accident leading to the death of Reyes. Plaintiffs' Third Amended Complaint, Rec.Doc. 51 ("3rd Complaint"), ¶¶2-5, 14-19 and 21.

The Plaintiffs admit that, at the time of the accident at issue, occurring on June 12, 2009, Reyes was an employee of JL Steel Reinforcing, LLC ("JL Steel" or Subcontractor"), a steel construction company that was a subcontractor at the Huey P. Long Bridge Widening Project in Louisiana. 3rd Complaint, ¶¶9. The Plaintiffs further admit that Reyes was acting in the course and scope of his employment with JL Steel in the events leading up to and during the accident at issue. *Id.*, ¶¶9-10. Plaintiffs are asserting tort claims against Defendants, based on alleged negligence. *Id.*, ¶¶14-19. Plaintiffs have alleged no intentional acts on the part of Defendants. *See Id.*

### B. JL Steel Dismissed as Employer of Decedent Liable for Workers' Compensation Under Louisiana Law and Immune From Tort Liability

Plaintiffs originally included JL Steel -- Reyes' direct employer -- as a defendant in this matter. However, JL Steel was dismissed from this case as a result of its Motion to Dismiss (Rec.Doc. 17), which was unopposed by the Plaintiffs and granted by this Court, which dismissed JL Steel from the matter, with prejudice, via the signed Unopposed Order (Rec.Doc. 19), dated March 4, 2010, with agreement from the Plaintiffs. JL Steel asserted in its Motion to Dismiss that Louisiana law applied here with respect to the issue of tort suit immunity due to

workers' compensation coverage per the Restatement (Second) of Conflicts of Laws §184, as applied by the Texas Supreme Court in *Hughes Wood Products v. Wagner*, 18 S.W.3d 202, 205-206 (Tex. 2000), and that, accordingly, JL Steel should be dismissed from the case as Reyes' direct employer and immune from tort claims per LSA-R.S. 23:1032. As Plaintiffs had no defense or opposition to JL Steel's Motion to Dismiss, said Motion was granted by this Court.

In Plaintiffs' Response to Defendant's Motion for Partial Summary Judgment Based on Application of Louisiana Law (Rec.Doc. 54), Plaintiffs admit that JL Steel's analysis concluding that Louisiana law applied with respect to the issue of tort suit immunity due to workers' compensation coverage was correct. Rec.Doc. 54, p. 5, ¶10. Plaintiffs admit the application in this case of Restatement (Second) of Conflicts of Laws §184, which addresses employer immunity from a tort suit by an employee/plaintiff who is covered by workers' compensation insurance, and, pursuant to which, Louisiana law applies to the determination of whether Defendants are immune from tort suit by Plaintiffs under Louisiana's workers' compensation regime. *See Id.*

**II. SUMMARY**

The law is clear, and the Plaintiffs concede, that Louisiana law applies in this case, pursuant to Restatement (Second) of Conflicts of Laws §184, as applied by Texas courts, for the determination of whether Defendants are immune from the tort claims asserted by the Plaintiffs when an employee – here, the Decedent, Reyes – is covered by worker's compensation insurance. Thus, under Louisiana law, summary judgment, dismissing the claims against the Defendants, with prejudice, is appropriate in this case since KMTC JV is a statutory employer of the Decedent under applicable Louisiana law pursuant to the "two contract" theory of defense under LSA–R.S. 23:1061(A)(2), and, accordingly, is liable only for workers' compensation and

is immune from tort liability. KMTC JV falls under the "two contract" theory of defense because (1) KMTC JV entered into a contract with a third party, *i.e.*, the DOTD; (2) pursuant to the Prime Contract, work had to be performed; and, (3) in order for KMTC JV, as principal, to fulfill its contractual obligation to the DOTD to perform the Prime Contract scope of work, KMTC JV entered into a Subcontract with JL Steel for part of the work to be performed. This qualifies KMTC JV as a statutory employer of the Decedent, an employee of JL Steel, under LSA–R.S. 23:1061(A)(2). Moreover, the Joint Venturers, effectively partners of KMTC JV under LSA-R.S. 23:1032(A)(1)(a) for the purposes of liability under Louisiana's workers' compensation statute, are likewise immune from tort liability and should be dismissed from this case, with prejudice.

**III. FACTS**

**A. Prime Contract Between KMTC JV and DOTD**

On April 24, 2008, KMTC JV, as Contractor, and the State of Louisiana, Department of Transportation and Development ("DOTD," "Department" or "Owner") entered into the Contract for State Project Nos. 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, 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, 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, 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, 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, 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, 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, Huey P. Long Bridge Widening (Westbank and Eastbank Approaches and Main Bridge Deck Widening), Route US 90, Jefferson Parish ("Prime Contract"). The Notice to Proceed, Notice of Contract Execution and Agreement portion of the Prime Contract are attached, *in globo*, as Exhibit A, which is hereinafter included in the reference to "Prime Contract."[1] The project described above and governed by the Prime Contract is hereafter referred to as the "HPL Bridge Project."

In the Prime Contract, KMTC JV agreed "to provide all materials, equipment and labor and perform the work required to complete the project in a thorough and workmanlike manner,

---

[1] The attached Exhibit A was produced in discovery and is Bates-labeled KMTC JV-00001-00082.

to the satisfaction of the appropriate official of the Department." Prime Contract, Intent of Contract, p. 3 of 70.

KMTC JV's bid submission is evidenced by a copy of the "Vendor's Bid Information Sheet," which is incorporated into the Prime Contract as part of the Contract Documents. Included in the Vendor's Bid Information Sheet and construction proposal is the "Schedule of Items," which likewise forms part of the Contract Documents, listing contractual scopes of work and dollar values. Among the Item Numbers listed in the Schedule of Items in the Prime Contract between KMTC JV and the DOTD are:

- 806-01 – Deformed Reinforcing Steel (page 42 of 70);
- 814-01-J – Drilled Shaft (page 43 of 70)

Prime Contract, Schedule of Items, pp. 42 and 43 of 70.

### B. JL Steel Subcontract

On June 18, 2008, KMTC JV, as Contractor, and JL Steel Reinforcing, LLC, as Subcontractor, entered into a Subcontract No. 38339 for Job No. 22055 ("Subcontract") "to perform a portion of such Prime Contract" between KMTC JV and DOTD. *See* Subcontract, attached hereto as Exhibit B, p. 1.[2] In the Subcontract, JL Steel agreed "to furnish all supervision, labor, tools, equipment, materials and supplies necessary to perform, and to perform, the following described work ('Work') in accordance with the terms and conditions of the Prime Contract and this Subcontract: See attached Article 1 Schedule of Values." *Id.* The Schedule of Values in the Subcontract, which itemized the Work to be performed by JL Steel, lists the following portions of Bid Items, which were contained in full in the Prime Contract, as indicated above:

---

[2] The JL Steel Subcontract was produced in discovery and the version produced by JL Steel, attached as Exhibit B, is Bates-labeled JL Steel000004-000030.

- 806-01 – Install Bridge Reinforcing Steel;
- 814-01-J – Pre-Assemble and Pre-Tie Drilled Shaft Reinforcing Steel
- 806-01 – Install Mechanical Couplers; Supply all tie wire and cutting equipment to install per project plans; Performance & Payment Bonds.

Furthermore, JL Steel agreed that the "Prime Contract documents shall be considered part of this Subcontract by reference thereto. Subcontractor agrees to be bound to Contractor and Owner by the terms and provisions thereof so far as they apply to the Work . . . ." Subcontract, Section 1, Contract Documents. Moreover, as stated in the Subcontract, JL Steel specifically "understood and agreed that the Work provided for in this Subcontract constitutes . . . a part of the work being performed for Owner by Contractor and other subcontractors." Subcontract, Section 14, Other Contracts.

### C. Reyes was Working in Louisiana, His Accident Occurred In Louisiana and He is Covered Under the Louisiana Workers' Compensation Act

The accident resulting in Reyes' death occurred on June 12, 2009 in Bridge City, Louisiana, while Reyes was working for JL Steel on the HPL Bridge Widening Project. 3rd Complaint, ¶9; s*ee also* Rec.Doc. 17, p. 4 and Exhibits B and B-1 thereto (Affidavit of Megan LaPoint and Reyes' "Aplicacion Para Empleo" (Application for Employment) with JL Steel).

JL Steel, Reyes' direct employer, provided its employees with workers' compensation coverage in Louisiana under the Louisiana Workers' Compensation Act. *See* Rec.Doc. 17, pp. 2 and 4 and Exhibits A and A-1 thereto. Moreover, KMTC JV provided its employees, including statutory employees, workers' compensation coverage in Louisiana via a Workers Compensation and Employment Liability Insurance Policy from American Zurich Insurance Company, Policy Number WC 5966820 01, attached hereto as Exhibit C ("WC Policy"), which policy was in effect at the time of the June 12, 2009 accident at issue.

After the accident, JL Steel, as Reyes' direct employer, filed a report of Reyes' injury with its workers' compensation insurance carrier and submitted same to the office of workers' compensation administration in Baton Rouge, Louisiana as required by Louisiana law. *See* Rec.Doc. 17, p. 4 and Exhibits D and D-1 (Affidavit of Julie Justice and LDOL-WC-1007, "Employer Report of Injury/Illness").

## IV. SUMMARY JUDGMENT STANDARD

### A. Texas Federal Court Standard

A motion for summary judgment requires the Court to determine whether the moving party is entitled to judgment as a matter of law based on the evidence thus far presented. Fed. R. Civ. P. 56(c). Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Kee v. City of Rowlett*, 247 F.3d 206, 210 (5th Cir. 2001) (quotations omitted). A genuine issue of material fact exists if a reasonable jury could enter a verdict for the non-moving party. *Crawford v. Formosa Plastics Corp.*, 234 F.3d 899, 902 (5th Cir. 2000). The party moving for summary judgment must demonstrate the absence of a genuine issue of material fact, but need not negate the elements of the nonmovant's case. *Exxon Corp. v. Oxxford Clothes, Inc.*, 109 F.3d 1070, 1074 (5th Cir. 1997). If the movant meets this burden, then the nonmovant is required to go beyond its pleadings and designate, by competent summary judgment evidence, the specific facts showing that there is a genuine issue for trial. *Id.*

The Court views all evidence in the light most favorable to the nonmoving party and draws all reasonable inferences in that party's favor. *Id.* Hearsay, conclusory allegations, unsubstantiated assertions, and unsupported speculation are not competent summary judgment

7

evidence. F.R.C.P. 56(e)(1); *see, e.g.*, *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir.1996); *McIntosh v. Partridge*, 540 F.3d 315, 322 (5th Cir. 2008); *see also Little v. Liquid Air Corp.*, 37 F.3d 1069, 1975 (5th Cir. 1994) (noting that a non-movant's burden is "not satisfied with 'some metaphysical doubt as to the material facts'") (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)).

### B. Summary Judgment Dismissing Tort Claims Against Statutory Employer is Appropriate

Under Louisiana law, as a matter of guidance, summary judgment dismissing tort claims against a statutory employer has been found to be appropriate. *See, e.g.*, *Dugan v. Waste Management, Inc.*, 41 So.3d 1263, 1266-1268 (La.App. 2 Cir. 6/23/10); *Young v. City of Plaquemine*, 2001-0063, 818 So.2d 892, 894-895 (La.App. 1 Cir. 05/10/02) (granting summary judgment in favor of contractor under the "two contract" theory of defense and dismissing the tort claims of the injured statutory employee).

## V. LEGAL ANALYSIS

### A. Per Restatement §184, the Exclusive-Remedy Provision of Louisiana's Workers' Compensation Law Applies to Provide Defendants with Tort Immunity from the Claims of the Plaintiffs

A federal district court sitting in diversity applies its forum state's choice-of-law rules. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). Thus, this Court should look to Texas choice-of-law rules to determine what law to apply. The question as to which state's law governs is a question of law for the court to decide. *Hughes Wood Prods., Inc. v. Wagner*, 18 S.W.3d 202, 204 (Tex. 2000) (citing *Duncan v. Cessna Aircraft Co.*, 665 S.W.2d 414, 421 (Tex. 1984)).

In general, Texas courts follow the "most significant relationship test" when deciding what law to apply in a case. *Id.* at 205 (citing Restatement (Second) of Conflicts of Laws

8

(hereinafter, "Restatement"), §§6, 145 (1971)); *Duncan*, 665 S.W.2d at 420-421; *Gutierrez v. Collins*, 583 S.W.2d 312, 318 (Tex. 1979)). However, the courts must consider which state's law has the most significant relationship "*to the particular substantive issue to be resolved.*" *Id.* (emphasis in the original) (citing Restatement §145(1)). Accordingly, with respect to the determination of whether an exclusive-remedy provision of a state's workers' compensation law applies and whether there is immunity from a tort suit when an employee is covered by workers' compensation insurance, Texas courts follow the Restatement §184. *Id.*

> Section 184 of the Restatement states as follows:
>
> Recovery for tort or wrongful death will not be permitted in any state if the defendant is declared immune from such liability by the workmen's compensation statute of a state under which the defendant is required to provide insurance against the particular risk and under which
>
> > (a) the plaintiff has obtained an award for the injury, or
> >
> > (b) the plaintiff could obtain an award for the injury, if this is the state (1) where the injury occurred, or (2) where employment is principally located, or (3) where the employer supervised the employee's activities from a place of business in the state, or (4) whose local law governs the contract of employment under the rules of §§ 187-188 and 196.

Section 184 of the Restatement articulates and applies the principles of Section 6 to the workers' compensation exclusive-remedy issue. *Wagner*, 18 S.W.3d at 206. Its application protects the parties' justified expectations because "[i]t is thought unfair that a person who is required to provide insurance against a risk under the workmen's compensation statute of one state which gives him immunity from liability for tort or wrongful death should not enjoy that immunity in a suit brought in other states." *Id.* (quoting Restatement §184 cmt. b (1971)) and citing Restatement §6(2)(d)). Restatement, Section 184 also recognizes the relative interests of other states in providing an exclusive workers' compensation remedy, because "to deny a person the immunity granted him by a workmen's compensation statute of a given state would frustrate

9

the efforts of that state to restrict the costs of industrial accidents." *Id.* (quoting Restatement §184 cmt. b (1971); citing Restatement §6(2)(c)).

Under Section 184 of the Restatement, Louisiana law will govern the tort immunity of the Defendants in this case if (1) Defendants would be immune from this suit under Louisiana workers' compensation law, and (2) plaintiffs have obtained or could obtain an award for the injury in Louisiana. *Wagner*, 18 S.W.3d at 207 (citing Restatement §184). As shown below, KMTC JV and the Joint Venturers as KMTC JV's individual members, are immune from this tort suit as statutory employers of Reyes, and the Plaintiffs could obtain an award for injury in Louisiana.[3] Accordingly, Louisiana law applies to these tort claims of Plaintiffs against Defendants, which claims should be dismissed, with prejudice.

### B. Defendants are Immune from this Suit under Louisiana Workers' Compensation Law

#### 1. Workers' Compensation is Exclusive Remedy for Work-Related Injuries/Death

Except for intentional acts, workers' compensation is the exclusive remedy for work-related injuries and illnesses. LSA–R.S. 23:1032; *see, e.g.*, *Kelly v. CAN Ins. Co.*, 98–0454 (La. 03/12/99), 729 So.2d 1033.[4] The exclusive remedy provision of the workers' compensation statute precludes an employee from filing a lawsuit for damages "against his employer, or any *principal* or any officer, director, stockholder, *partner*, or employee of such employer or principal." LSA–R.S. 23:1032(A)(1)(a); *Deshotel v. Guichard Operating Company, Inc.*, 2003–

---

[3] Under the Louisiana Workers' Compensation Act, the parent of Reyes could obtain a workers' compensation award under LSA RS 23:1231 if legal dependants of Reyes per LSA RS 23:1232(7). However, the parents of Reyes do not have standing to bring a tort claim under Louisiana's survival action statute (LSA Civil Code Art. 2315.1) or wrongful death action (LSA Civil code Art. 2315.2) against Defendants. *See* Defendants' Motion for Partial Summary Judgment Based on Application of Louisiana Law, Rec.Doc. 48, p.1, n.1-2, pp. 14-15. Reference to Reyes' parents when referring to "Plaintiffs" herein is subject to this note.

[4] The Louisiana Workers' Compensation Act, La.R.S. 23:1021, *et seq.*, provides that an employee injured in an accident while in the course and scope of his employment is generally limited to the recovery of workers' compensation benefits as his exclusive remedy against his employer and, thus, may not sue his employer in tort. *See, e.g.*, *Griffin v. Wickes Lumber Co.*, 02–0294, (La.App. 1 Cir. 12/02/02), 840 So.2d 591, 594.

3511, (La. 12/17/04), 916 So.2d 72, 76–79; *Dugan*, 41 So.3d at 1266; *St. Angelo v. United Scaffolding, Inc. / X-Serv., Inc.*, 2009-1420, 40 So.2d 365, 368 (La.App. 4 Cir. 5/19/10); *Naiman v. Goldsberry Operating Company, Inc.*, 43,266 (La.App. 2 Cir. 6/11/08), 987 So.2d 326, 329. As indicated below, KMTC JV is a principal and the Joint Venturers constitute partners of KMTC JV; accordingly, these Defendants are immune from tort suit.

### 2. KMTC JV is a Principal under LSA–R.S. 23:1032(A)(2)

The term "principal" is defined by LSA–R.S. 23:1032(A)(2) as "any person who undertakes to execute any work which is a part of his trade, business, or occupation in which he was engaged at the time of the injury, or which he had contracted to perform and contracts with any person for the execution thereof." The definition of "principal" has been given a broad view. *See St. Angelo*, 40 So.2d at 373-374 (citing *Lopez v. U.S. Sprint Communications Company*, 2007-0052 (La.App. 4 Cir. 12/05/07), 973 So.2d 819 and *Ramos v. Tulane Univ. of La.*, 2006–0487, (La.App. 4 Cir. 1/31/07), 951 So.2d 1267).

It is clear from the Prime Contract, the Subcontract and the allegations of the Plaintiffs that KMTC JV had undertaken, via the Prime Contract with the DOTD, to execute bridge construction work which is part of KMTC JV's business and that KMTC JV had subcontracted with JL Steel to perform part of that work, all of which work was being performed at the time of Reyes's accident.

### 3. KMTC JV is the Statutory Employer of Reyes

In some instances, an employer may be deemed the statutory employer of a worker that it does not directly employ. When a principal is liable as a statutory employer to pay workers' compensation to an employee of a contractor whom the principal engages, workers' compensation is the employee's exclusive remedy, and, thus, the principal is immune from tort

liability. *St. Angelo*, 40 So.2d at 369; *see also Groover v. Scottsdale Insurance Company*, 586 F.3d 1012, 1014 (5th Cir. 2009).

The determination of statutory employer status is a question of law for the court to decide. *St. Angelo*, 40 So.2d at 368; *Prejean v. Maintenance Enterprises, Inc.*, 2008-0364, (La.App. 4 Cir. 03/25/09), 8 So.3d 766, 769; *Fleming v. JE Merit Constructors, Inc.*, 2007-0926 (La.App. 1 Cir. 04/19/08), 985 So.2d 141, 146; *Ramos*, 951 So.2d at 1269; *Trent v. PPG Indus., Inc.*, 03-1068, (La.App. 3 Cir. 02/04/04), 865 So.2d 1041, 1047. Louisiana has adopted a broad version of the statutory employer doctrine. *Willis v. Redfish Renovations, LLC*, 2004-0968 (La.App. 4 Cir. 12/15/04), 891 So.2d 748, 750 (citing *Allen v. State ex rel Ernest N. Morial–New Orleans Exhibition Hall*, 2002–1072 (La. 04/09/03), 842 So.2d 373, 378).

Statutory employer status of a principal is governed by LSA–R.S. 23:1061(A), which provides as follows:

> (1) Subject to the provisions of Paragraphs (2) and (3) of this Subsection, when any *"principal"* as defined in R.S. 23:1032(A)(2), undertakes to execute any work, which is a part of his trade, business, or occupation and *contracts with* any person, in this Section referred to as the *"contractor," for the execution by or under the contractor of the whole or any part of the work undertaken by the principal, the principal, as a statutory employer, shall be granted the exclusive remedy protections of R.S. 23:1032[.]*
>
> *(2) A statutory employer relationship shall exist whenever the services or work provided by the immediate employer is contemplated by or included in a contract between the principal and any person or entity other than the employee's immediate employer.*
>
> (3) Except in those instances covered by Paragraph (2) of this Subsection, a statutory employer relationship shall not exist between the principal and the contractor's employees, whether they are direct employees or statutory employees, unless there is a written contract between the principal and a contractor which is the employee's immediate employer or his statutory employer, which

12

> recognizes the principal as a statutory employer. When the contract recognizes a statutory employer relationship, there shall be a rebuttable presumption of a statutory employer relationship between the principal and the contractor's employees, whether direct or statutory employees. This presumption may be overcome only by showing that the work is not an integral part of or essential to the ability of the principal to generate that individual principal's goods, products, or services.

(Emphases added).

In sum, there are two bases for finding statutory employment: (1) being a principal in the middle of two contracts, referred to as the "two contract theory," or, (2) the existence of a written contract recognizing the principal as the statutory employer. *See* LSA–R.S. 23:1061(A)[5]; *see also Groover*, 586 F.3d at 1015; *Dugan*, 41 So.3d at 1266-67; *Daigle v. McGee Backhoe and Dozer Service*, 2008–1183 (La.App. 5th Cir. 4/28/09), 16 So.3d 4, 7, writ denied, 2009–1372 (La. 10/2/09), 18 So.3d 113. Clearly, KMTC JV was a principal in the middle of two contracts – the first contract being KMTC JV's Prime Contract with the DOTD and the second being KMTC JV's Subcontract with JL Steel for it to perform part of the Prime Contract scope of work.

The "two contract" basis for statutory employer status applies when: (1) the principal enters into a contract with a third party; (2) pursuant to that contract, work must be performed; and (3) in order for the principal to fulfill its contractual obligation to perform the work, the principal enters into a subcontract for all or part of the work performed. *Allen v. State ex rel Ernest N. Morial–New Orleans Exhibition Hall*, 2002–1072 (La.4/9/03), 842 So.2d 373, 379 (citation omitted); *see also Groover*, 586 F.3d at 1015, n.9; *Dugan*, 41 So.3d at 1267; *Daigle*, 16 So.3d at 7-8; *Prejean*, 8 So.3d at 771; *Naiman*, 987 So.2d at 329; *Willis*, 891 So.2d at 751. Thus,

---

[5] La. R.S. 23:1061 was amended by Acts 1997, No. 315, §§ 1 and 2, dealing specifically with the "written contract" basis for recognizing the principal as a statutory employer. In addition to the substantive changes in the statute, the legislature specifically noted its intention to legislatively overrule the statutory employer tests stated in the Louisiana Supreme Court decisions in *Berry v. Holston Well Serv., Inc.*, 488 So.2d 934, 937 (La.1986) and *Kirkland v. Riverwood Int'l USA, Inc.*, 95–1830, (La.9/13/96), 681 So.2d 329, 333. *See Prejean v. Maintenance Enterprises, Inc.*, 8 So.3d 766, 771.

the "two contract" statutory employer defense contemplates relationships among at least three entities: a general contractor who has been hired by a third party to perform a specific task, a subcontractor hired by that general contractor, and an employee of the subcontractor. *Dugan*, 41 So.3d at 1267; *Naiman*, 987 So.2d at 330. There is no temporal requirement with respect to the "two contract" theory of defense – *i.e.*, it does not matter whether the principal contracted with a third party for the performance of the specified work before or after entering into a subcontract for the performance of all or part of that work in order to avail itself of the statutory employer defense. *Allen*, 842 So.2d at 381. Moreover, it is irrelevant under the "two contract" theory whether the subcontractor's work is part of the work ordinarily performed by the principal. *Allen*, 842 So.2d at 378-379. Under the two contract theory governing the contractor/subcontractor relationship, whether the work is within the trade, business or occupation of the general and subcontractor is assumed and not at issue. *See Jackson v. St. Paul Insurance Company*, 2004-0026 (La.App. 1 Cir. 12/17/04), 897 So.2d 684, 688, n. 2.

Again, KMTC JV is clearly a principal entitled to avail itself of the statutory employer defense relative to the tort claims of the Plaintiffs. First, KMTC JV entered into a contract with a third party – here, the DOTD. Second, pursuant to the Prime Contract, work had to be performed. Third, in order for KMTC JV, as principal, to fulfill its contractual obligation to the DOTD to perform the Prime Contract scope of work, KMTC JV entered into a Subcontract with JL Steel for part of the work to be performed. Accordingly, KMTC JV is entitled to the "two contract" statutory employer defense as set forth in LSA–R.S. 23:1061(A) and as applied by the Louisiana Supreme Court in its decision in *Allen*, 842 So.2d at 378-381.

The "two contract" statutory employer defense was recently applied by the Second Circuit in *Dugan*, 41 So.3d at 1266-1268, where the principal, Waste Management, LLC, entered

into a contract with the Police Jury; pursuant to that contract, work had to be performed, *i.e.*, the collection and disposal of residential waste; in order for Waste Management, LLC to fulfill its contractual obligation, it entered into a subcontract with CPST, who furnished personnel to perform the work. The decedent garbage truck driver was a direct employee of the CPST and was killed while performing the subject work. As the decedent worked for the subcontractor, CPST, the Second Circuit found that Waste Management, LLC, by submitting to the court its prime contract with the Police Jury and its subcontract with CPST, had met its burden of proving that it was a statutory employer, was protected by the "two contract" statutory employer defense, and was (along with its insurer – ACE American Insurance Company) entitled to summary judgment in its favor as it was immune from tort liability. *Id.* The scenario in the *Dugan* matter is analogous to the undisputed facts of this above-captioned matter and clearly illustrates that summary judgment should be granted in this case in favor of KMTC JV.

### 4. The Joint Venturers Are Immune from Tort Liability to the Same Extent as KMTC JV

The individual Joint Venturers in this case, Kiewit, Massman and Traylor – to the same extent as KMTC JV – are solely liable under workers' compensation and are immune from tort liability. Under LSA–R.S. 23:1032(A)(1)(a), the Joint Venturers, as individual members of KMTC JV, fall under the definition of "partners" for the purposes of the Louisiana Workers' Compensation Act and are covered by the exclusive remedy provision of LSA-R.S. 23:1032. *Peterson v. BE & K Inc. of Alabama*, 94-0005 (La.App. 1 Cir. 03/03/95), 652 So. 2d 617, 627-628[6] (citing *Buckbee, Individually and as Administratrix of Succession of Buckbee v. AWECO,*

---

[6] Writ denied, 95-0818 La. 5/12/95, 654 So.2d 350; writ denied sub nom. *Peterson v. BE&K Inc. of Alabama*, 95-0831 La. 5/12/95, 654 So.2d 350; overruled on other grounds by *Allen v. State ex rel. Ernest N. Morial-New Orleans Exhibition Hall Auth.*, 2002-1072 (La. 04/09/03), 842 So. 2d 373.

*Inc.*, 418 So.2d 698, 702 (La.App. 3 Cir. 1983)); *see also Vincent v. Lake Charles Refining Co.*, 434 So.2d 170 (La.App. 3 Cir. 1983).

### 5. Defendants are Immune from this Suit under Louisiana's Workers' Compensation Law

Since it is clearly demonstrated above that both KMTC JV and the Joint Venturers are immune from this suit under Louisiana workers' compensation law, the first element of Section 184 of the Restatement is met with respect to the application of Louisiana law to the tort immunity of the Defendants in this case. *See also Wagner*, 18 S.W.3d at 207.

### C. Plaintiffs Could Obtain an Award in Louisiana

The second element of Section 184 of the Restatement – that the Plaintiffs have obtained or could obtain an award for Reyes' death in Louisiana – likewise is met in this case, such that Louisiana law should be applied to the determination of the tort immunity of the Defendants. *See also Wagner*, 18 S.W.3d at 207. It is undisputed that the accident occurred in Louisiana. Both JL Steel, as Reyes' direct employer, and KMTC JV, as Reyes' statutory employer, maintained workers' compensation insurance coverage under the Louisiana Act. *See* Rec.Doc. 17, Exhibit A; and, Exhibit C attached hereto. An Employer Report of Injury/Illness, LDOL-WC-1007, for the accident was filed with the Louisiana Office of Workers' Compensation. *See* Rec.Doc. 17, Exhibit D-1. Accordingly, since Plaintiffs could obtain an award in Louisiana, per Restatement §184, Louisiana law applies to the determination of whether Defendants are immune from tort suit in this case. Since KMTC is a statutory employer of Reyes and since the Joint Venturers are considered KMTC JV's partners, Louisiana's workers' compensation act provides the Plaintiffs their sole and exclusive remedy.

## VI. CONCLUSION

For the reasons set forth above, Defendants, as they are entitled to avail themselves of the "two contract" statutory employer defense pursuant to LSA–R.S. 23:1061(A)(2), are, thus, immune from the tort liability asserted against them by the Plaintiffs in this case under Louisiana's workers' compensation law. Moreover, the Plaintiffs could obtain an award for their injuries in Louisiana. Accordingly, Louisiana law applies and summary judgment should be granted in Defendants' favor, dismissing them from this case, with prejudice.

By: /s/ *David S. Bland*
David S. Bland
Attorney-in-Charge
Texas Bar No. 00789021
So. Dist. of Texas Bar No. 32550
LeBlanc Bland P.L.L.C.
1717 St. James Place, Suite 360
Houston, Texas 77056
Telephone: (713) 627-7100
Facsimile: (713) 627-7148

OF COUNSEL:
Beau E. LeBlanc
Texas Bar No. 24052964
Charles G. Clayton, IV
LA Bar No. 25368
LeBlanc Bland P.L.L.C.
909 Poydras Street, Suite 1860
New Orleans, LA 70112
Telephone: (504) 528-3088
Facsimile: (504) 586-3419
and
C. Lee Winkelman
Texas Bar No. 24042176
So. Dist. Of Texas Bar No. 584631
LeBlanc Bland P.L.L.C.
1717 St. James Place, Suite 360
Houston, Texas 77056
Telephone: (713) 627-7100
Facsimile: (713) 627-7148

**Attorneys for Defendants, Kiewit Louisiana Co., Massman Construction Co., and Traylor Bros., Inc., a Joint Venture, d/b/a Kiewit Massman Traylor Constructors; Kiewit Louisiana Co., Massman Construction Co., and Traylor Brothers, Inc.**

## **CERTIFICATE OF SERVICE**

I certify that on May 11, 2011, a true and correct copy of this document was served on all counsel of record by U.S. Mail, electronic mail or the Court's electronic filing system.

    /s/ *David S. Bland*