# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| GUADALUPE ARENAS VARGAS, Individually and As Representative of the Estate of MARTIN ANASTACIO REYES OSUNA, Deceased, and As Next Friend of ZAID MARTIN REYES ARENAS; JUANA SYLVIA OZUNA GARCIA; and MARTIN REYES ADAME<br><br>V.<br><br>KIEWIT LOUISIANA CO., MASSMAN CONSTRUCTION CO., and TRAYLOR BROS., INC., a Joint Venture d/b/a KIEWIT MASSMAN TRAYLOR CONSTRUCTORS; KIEWIT LOUISIANA CO.; MASSMAN CONSTRUCTION CO.; TRAYLOR BROS., INC; KIEWIT ENGINEERING CO., and MODJESKI AND MASTERS, INC. | § § § § § § § § § § § § § § § § § § § | C.A. NO. 4:09-CV-02521<br><br><br><br>**JURY TRIAL DEMANDED** |

## PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

TO THIS HONORABLE COURT:

Plaintiffs file this Response to Defendants' Motion for Summary Judgment (Doc #55), and respectfully shows this Court the following:

## I.
## Summary of Response

1. In their motion, Defendants contend that Defendant Kiewit Massman Traylor Constructors ("KMTC") was Mr. Reyes' statutory "employer" under Louisiana law, and is therefore immune from tort liability. Defendants' argument fails for the following reasons:

> (1) There are genuine and material fact issues regarding whether Plaintiffs' tort claims are governed by Texas or Louisiana law which preclude summary judgment; and

(2)    Even assuming Louisiana tort law was applicable to Plaintiffs' claims, Defendants' motion still fails because there are genuine and material fact issues regarding whether KMTC contractually abrogated its direct, immediate, and unconditional duty to pay Mr. Reyes workers' compensation benefits.

## II.
## Background

2.    On June 12, 2009, Mr. Martin Reyes was working as part of a construction crew on a project to widen the Huey P. Long Bridge in Bridge City, Louisiana. He was employed by JL Steel Reinforcing, LLC. ("JL Steel"). The bridge project was a joint venture amongst KMTC and the individual joint venture partners. On this date, employees of KMTC were using a crane to place a sixty foot tall steel rebar cage in position on top of a concrete column, which was approximately seventy feet high. Kiewit Engineering Company ("KECo") designed and engineered the rebar cage and the guying system for the cage. Modjeski and Masters, Inc. ("M&M") was the engineering firm on the bridge project, and was also involved in the design and engineering of the rebar cage and guying system for the cage.

3.    Mr. Reyes, along with two other JL Steel employees, Uvaldo Soto and Sammy Vasquez, was working on top of the bridge column. After the crane placed the rebar cage on top of the column, Messrs. Reyes, Soto, and Vasquez tied the rebar on the cage off to the rebar dowels on the top of the column. At this point, the JL Steel employees were instructed to climb up on to the rebar cage to release the crane from the cage. Mr. Vasquez climbed back down off the rebar cage after being advised that he wasn't needed to help release the crane. Shortly thereafter, the entire rebar cage crashed to the ground, killing Mr. Reyes and Mr. Soto.

4.    Tragically, Mr. Reyes was not killed instantly; rather, he suffered tremendously with a rebar rod sticking through his back. Mr. Reyes begged another JL Steel employee, Cesar

Corona, who arrived on the scene to try to help him, to pull the steel rod out of his back. After writhing in misery for some time, Mr. Reyes finally succumbed to his injuries.

5.       Mr. Reyes is survived by his wife, Guadalupe Arenas Vargas, his son, Zaid Martin Reyes Arenas, his mother, Juana Sylvia Ozuna Garcia, and his father, Martin Reyes Adame.

6.       On August 6, 2009, this case was removed from the 281st District Court of Harris County, Texas to this Court. On December 21, 2010, Plaintiffs filed their First Amended Complaint so that they could have a federal complaint on file. The First Amended Complaint also dropped six entities that were defendants in the state court action, and clarified the nature of Plaintiffs' allegations. On March 22, 2011, Plaintiffs filed their Second Amended Complaint, adding KECo as a defendant. On May 24, 2011, Plaintiffs filed their Third Amended Complaint, adding M&M as a defendant. This case is set for jury trial on October 31, 2011.

## III.
## Argument & Authorities

### A.     Standard of review.

7.       The Fifth Circuit will review the granting or denial of a summary judgment motion *de novo*. *CQ Inc. v. TXU Min. Co., L.P.*, 565 F.3d 268, 273 (5th Cir. 2009).

8.       Although summary judgment is proper in a case where there is no genuine issue of material fact, this is not such a case. Rule 56(c), FED. R. CIV. P.; *Celotex Corp. v. Catreet*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986). In deciding whether a genuine and material fact issue has been created, the facts and the inferences to be drawn from them must be reviewed in the light most favorable to the non-moving party. *Reaves Brokerage Co. v. Sunbelt Fruit & Vegetable Co.*, 336 F.3d 410, 412 (5th Cir. 2003). In determining whether summary judgment is appropriate, this Court "must review all the evidence in the record, but make no credibility determinations, or weigh any evidence." *Roberts v. Cardinal Svcs., Inc.*, 266 F.3d 368, 373 (5th

Cir. 2001). This Court should also disregard all evidence favorable to the moving party that is contradicted, and must assume as true all evidence favoring the nonmoving party. *Id.*

**B.     Defendants' motion fails because there are genuine and material fact issues regarding whether Plaintiffs' claims are governed by Texas or Louisiana tort law.**

9.     As set forth in Plaintiffs' previously-filed Response to Defendants' Motion for Partial Summary Judgment Based on Application of Louisiana Law (Doc # 54), Texas tort law, not Louisiana tort law, governs Plaintiffs' claims in this case. In this regard, Mr. Reyes was domiciled in Texas at the time of the incident, Mr. Reyes' employer is located in Texas, Defendant KMTC is located in Texas, and Defendant Kiewit Louisiana Company, the Managing Party of KMTC, is located in Texas.[1] Furthermore, the other Defendants in this case are based out of Missouri (Massman Construction Company), Indiana (Traylor Bros., Inc.), Pennsylvania (Modjeski and Masters, Inc.), and Nebraska (Kiewit Engineering Co.). Accordingly, none of the parties in this case were either domiciled or maintained their principal place of business in Louisiana. Therefore, as discussed in Plaintiffs' previously filed summary judgment response, there are, at minimum, genuine and material fact issues regarding the application of Louisiana versus Texas tort law in this case.[2]

**C.     Even assuming Louisiana tort law was applicable to Plaintiffs' claims, Defendants' motion still fails because there are genuine and material fact issues regarding whether KMTC contractually abrogated its direct, immediate, and unconditional duty to pay Mr. Reyes workers' compensation benefits.**

---

[1] *See* Plaintiffs' Response at pp. 3-4, 7-8.

[2] Defendants' incessant references to JL Steel's previously filed Motion to Dismiss have no bearing on the instant issue. Plaintiffs have never disputed that JL Steel was Mr. Reyes' employer, under Texas or Louisiana law. The only issue in JL Steel's motion was whether it could be a gross negligence defendant under Louisiana law, which it obviously could not because Plaintiffs did not allege any intentional acts against JL Steel. That is irrelevant to the question of whether KMTC could be considered Mr. Reyes' statutory employer under the Louisiana's workers' compensation scheme.

10.     Defendants' argument hinges on their assertion that KMTC was Mr. Reyes' statutory "employer" under Louisiana law, and is therefore immune from tort liability. The fatal flaw in Defendants' argument is that they want to have it both ways; *i.e.*, tort immunity as a workers' compensation statutory "employer," with no reciprocal obligation to pay workers compensation benefits to Mr. Reyes or any other JL Steel employee on the project.

11.     A recent case out of the Fourth Circuit Court of Appeal of Louisiana is instructive on this point. *See Prejean v. Maintenance Enters., Inc., et al.*, 8 So.3d 766 (La. App. 4th Cir. 2009), writ denied. In *Prejean*, the plaintiff (Prejean) was an employee of Maintenance Enterprises, Inc. ("MEI"). He filed suit against Murphy Oil U.S.A., Inc. ("Murphy Oil") for injuries he suffered while working at Murphy Oil's refinery. As Defendants have done in this case, Murphy Oil filed a summary judgment motion claiming that it was Prejean's statutory employer under LSA-R.S. 23:1061, and therefore immune to Prejean's negligence claim. *Id.* at 768. Prejean responded that under its contract with MEI, Murphy Oil was only required to pay workers compensation if MEI was unable to do so; consequently, Murphy Oil was not entitled to tort immunity as a statutory employer. *Id.*

12.     In denying Murphy Oil's motion for summary judgment, the trial court observed that LSA-R.S. 23:1061 "grants both a benefit and a burden; a statutory employer is shielded from tort liability toward its statutory employee in return for providing workers compensation to them." *Id.* at 769. The trial court went on to find that because the contract between Murphy Oil and MEI required Murphy Oil to pay workers compensation to MEI's employees only if MEI was unable to do so, Murphy Oil had "deviated substantially from the statutory scheme by abrogating its responsibility to pay Mr. Prejean compensation." *Id.*

13.     On appeal, the appellate court framed the issue as follows: "whether the terms and conditions of the contract, which purports to confer the statutory <u>benefits</u> of being an 'employer', i.e., immunity from tort liability, may nonetheless disregard the statutory <u>obligations</u> of the employer." *Id.* at 773. (emphasis in original). The court observed that because "workers' compensation statutes are in derogation of the universal right to sue for damages . . . we must construe strictly and narrowly the benefit conferred by the status that insulates a statutory employer from paying tort damages to a victim of injurious negligence or dangerous items in the environment of the workplace who, but for his employment status would be free to sue for tort damages." *Id.* Therefore, "[t]he immunity provision of La. R.S. 23:1032 must be narrowly construed." *Id.* (citations omitted).

14.     The court found that while the contract between Murphy Oil and MEI explicitly stated that Murphy Oil would be considered the statutory employer of MEI's employees under LSA-R.S. 23:1031 and R.S. 23:1061, it also allowed Murphy Oil to pay workers comp benefits only if MEI was unable to pay, which the court characterized as "a significant escape hatch and evasion of solidary liability for Murphy Oil." *Id.* The court went on to find that "it is not sufficient to designate a party as a statutory employer in a contract if the terms of that contract allow the party to escape the liability inherent in such a designation." *Id.* The court observed that under the governing Louisiana statutes, the liability of a statutory employer and the direct employer "is solidary as to the injured worker." *Id*. at 774. It then turned to the contract between MEI and Murphy Oil, which "purports to confer tort immunity upon Murphy Oil while, simultaneously, relieving it of its solidary obligation to Mr. Prejean, if it is his statutory employer." *Id.*

15.     The court held that the provision in the contract which required Murphy Oil to pay workers compensation benefits only if MEI was unable to do so relieved Murphy Oil "of its

direct obligation to the injured worker." *Id.* at 774-75. The contract did not provide an injured worker with "an <u>unconditional</u> right to immediately prosecute a claim for workers' compensation benefits" against Murphy Oil. *Id.* at 775. (emphasis in original). Because Murphy Oil did not accept unconditionally the obligation of a statutory employer to pay workers' compensation benefits, it was not entitled to the benefit of statutory employer status; *i.e.*, tort immunity.

16.     Similarly, the contract provisions Defendants rely on for their immunity theory in this case give KMTC the benefit of tort immunity, while relieving it of its obligation to <u>directly</u>, <u>immediately</u>, and <u>unconditionally</u> pay workers' compensation benefits to JL Steel's employees, like Mr. Reyes.[3] Section 10 of the KMTC/JL Steel contract states that JL Steel "shall procure, and at all times thereafter maintain with insurers . . . the following minimum insurance:

> (a)   Workers' Compensation ("WC") coverage to statutory limits required where the work is being performed and Employer's Liability ("EL") coverage of not less than $1,000,000 each accident."

Section 10 goes on to state that "Subcontractor's (JL Steel's) insurance shall be primary and non-contributory to any other insurance maintained by Contractor (KMTC), Owner (LADOTD) and other parties as required in the Prime Contract (between KMTC and LADOTD)." It also states that "Subcontractor (JL Steel) shall cause its WC policy to contain a waiver of subrogation in favor of Contractor (KMTC), Owner (LADOTD) and other parties as required in the Prime Contract."[4]

17.     Therefore, under the explicit language of the contract between KMTC and JL Steel, JL Steel's workers' compensation insurance is not only <u>primary</u>; *i.e.*, JL Steel has to pay any workers' compensation claims first, it is also <u>non-contributory</u>; *i.e.*, KMTC is not required to

---

[3] *See* the Subcontract between KMTC and JL Steel, attached to Defendants' motion as Exhibit "B."

[4] This waiver of subrogation is contained in Article 3, Section P of the KMTC/JL Steel contract.

share in paying any workers' compensation claims with JL Steel, and JL Steel cannot seek contribution from KMTC's workers' compensation policy. Moreover, JL Steel's workers' compensation specifically waives subrogation in favor of KMTC.

18.     So, just like Murphy Oil in the *Prejean* case, KMTC has contractually relieved itself of its <u>direct</u> obligation to pay workers' compensation benefits to JL Steel's employees, as well as its obligation to provide employees of JL Steel with an <u>unconditional</u> right to <u>immediately</u> prosecute a claim for workers' compensation benefits against KMTC. *See Prejean*, 8 So.3d at 774-75. And just like Murphy Oil, because KMTC did not accept unconditionally the obligation of a statutory employer to pay workers' compensation benefits, it is not entitled to the benefit of statutory employer status; *i.e.*, tort immunity.

**IV.**
**Conclusion**

19.     Because there are genuine issues of material fact regarding Defendants' tort immunity defense under LSA-R.S. 23:1032 and R.S. 23:1061, Plaintiffs respectfully ask this Court to deny Defendants' motion in its entirety.

Respectfully submitted,

By: */s/ Christopher K. Johns*
ANTHONY G. BUZBEE
SBOT No. 24001820
SD ID No. 22679
JP Morgan Chase Tower
600 Travis Street, Suite 7300
Houston, Texas 77002
Telephone: 713.223.5393
Facsimile: 713.223.5909

OF COUNSEL:
**THE BUZBEE LAW FIRM**
Christopher K. Johns
SBOT No. 24002353
SD ID No. 21630

cjohns@txattorneys.com

**SOLIS & SMITH, P.C.**
Carlos Solis
SBOT No. 24002972
Paul Smith
SBOT No.  24015025
1925 North New Braunfels
San Antonio, TX  78208
Telephone:  210.223.5000
Facsimile:  210.223.5007

**THE LAW OFFICE OF**
**GARCIA & KARAM, L.L.P.**
Ricardo Garcia
SBOT No. 07643200
Aizar Karam
SBOT No. 00796860
820 South Main
McAllen, Texas 78501
Telephone:  956.630.2882
Facsimile:   956.630.5393

ATTORNEYS FOR PLAINTIFFS

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of this document will be served or has been served on all interested parties in accordance with the Federal Rules of Civil Procedure on the *1st day of July, 2011*.  Service on E-Filing Users will be automatically accomplished through the Notice of Electronic Filing; non-Filing Users will be served by certified mail, return receipt requested and/or via facsimile.

*/s/ Christopher K. Johns*
Christopher K. Johns