UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| GUADALUPE ARENAS VARGAS, et al., | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-09-2521 |
| | § | |
| KIEWIT LOUISIANA CO., et al., | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND ORDER

Pending before the Court are the Motion for Partial Summary Judgment (Doc. No. 48) and Motion for Summary Judgment (Doc. No. 55) filed by Defendants Kiewit Massman Traylor Constructors ("KMTC"), Kiewit Louisiana Co. ("Kiewit"), Massman Construction Co. ("Massman"), and Traylor Bros., Inc. ("Traylor") (collectively, "Defendants"). After considering the parties' arguments and the applicable law, the Court grants the Motion for Summary Judgment and dismisses Plaintiffs' claims against Defendants.[1]

I. **BACKGROUND**

This case arises from the June 12, 2009 death of Martin Anastacio Reyes Osuna ("Reyes"). Reyes died while working on a construction project on the Huey P. Long bridge in Bridge City, Louisiana. At the time, Reyes was an employee of Defendant JL Steel Reinforcing, LLC ("JL Steel").

---

[1] Plaintiffs named an additional Defendant, Modjeski and Masters, Inc., in the Third Amended Complaint. (Doc. No. 51.) Modjeski and Masters executed a Waiver of Service on June 26, 2011 and filed a Motion to Dismiss under Rule 12(b)(6) on August 8, 2011, but did not join the instant motions. Accordingly, the order does not dismiss Plaintiffs' claims against Modjeski and Masters.

1

The construction project was a joint venture of Kiewit, Massman, and Traylor, along with a company they had jointly formed for purposes of the bridge project, KMTC. On April 24, 2008, KMTC contracted with the Louisiana Department of Transportation and Development ("LADOTD") to widen the bridge, and on June 18, 2008, KMTC subcontracted with JL Steel to perform a portion of the contract. At the time of his death, Reyes was a citizen of Mexico. He was temporarily living in Louisiana during the construction project, but Plaintiffs contend that he was domiciled in Texas.

Plaintiff Guadalupe Arenas Vargas ("Arenas Vargas") brings suit individually as Reyes's wife, as representative of Reyes, and as next friend of Zaid Martin Reyes Arenas ("Reyes Arenas"), Reyes's son. Plaintiffs Juana Sylvia Ozuna Garcia ("Ozuna Garcia") and Martin Reyes Adame ("Reyes Adame") bring suit as Reyes's parents. Plaintiffs are all citizens of Mexico. They allege that Defendants are liable for Reyes's death on the basis of negligence and the doctrine of res ipsa loquitor.

Defendants move for summary judgment on the grounds that KMTC and the individual joint venturers (Kiewit, Massman, and Traylor) are immune from liability under Louisiana workers' compensation law because they are statutory employers. (Doc. No. 55.) They also move for partial summary judgment dismissing Ozuna Garcia and Reyes Adame's claim on the basis that parents do not have standing to sue under Louisiana law if there is a surviving spouse or child.

## II. LEGAL STANDARD FOR SUMMARY JUDGMENT

A motion for summary judgment requires the Court to determine whether the moving party is entitled to judgment as a matter of law based on the evidence thus far presented. Fed. R. Civ. P. 56(c). Summary judgment is proper "if the pleadings,

2

depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Kee v. City of Rowlett*, 247 F.3d 206, 210 (5th Cir. 2001) (quotations omitted). A genuine issue of material fact exists if a reasonable jury could enter a verdict for the non-moving party. *Crawford v. Formosa Plastics Corp.*, 234 F.3d 899, 902 (5th Cir. 2000). The Court views all evidence in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Id.*; *see also Harvill v. Westward Communications, L.L.C.*, 433 F.3d 428, 436 (5th Cir. 2005) (court may not make credibility determinations or weigh the evidence at the summary judgment stage). Hearsay, conclusory allegations, unsubstantiated assertions, and unsupported speculation are not competent summary judgment evidence. Fed. R. Civ. P. 56(e)(1); *see, e.g., Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996); *McIntosh v. Partridge*, 540 F.3d 315, 322 (5th Cir. 2008); *see also Little v. Liquid Air Corp.*, 37 F.3d 1069, 1975 (5th Cir. 1994) (noting that a non-movant's burden is "not satisfied with 'some metaphysical doubt as to the material facts'") (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).

### III. ANALYSIS

#### A. Choice of Law

To address the merits of the summary judgment motions, the Court must first determine which state's law to apply.

##### 1. Legal Standard

District courts sitting in diversity apply the choice-of-law rules of the state in which they sit. *Klaxon v. Stentor Elec. Mfg., Inc.*, 313 U.S. 487, 496 (1941); *Mayo v.*

*Hartford Life Ins. Co.*, 354 F.3d 400, 403 (5th Cir. 2004); *Smith v. EMC Corp.*, 393 F.3d 590, 597 (5th Cir. 2004). Under Texas law, when presented with a choice of law question, the court must first determine whether there is a conflict between the laws of the jurisdictions whose law potentially controls, and only when such a conflict is present should the Court conduct a choice of law analysis. *See Duncan v. Cessna Aircraft Co.*, 665 S.W.2d 414, 419 (Tex. 1984); *Tobin v. AMR Corp.*, 637 F. Supp. 2d 406, 412 (N.D. Tex. 2009).

When there is a conflict, Texas courts determine the appropriate choice of law by determining which state, with respect to the issues, has the most significant relationship to the occurrence and the parties. In doing so, they apply the "most significant relationship" test provided by Sections 6 and 145 of the Restatement (Second) of Conflict of Laws (1971) (hereinafter "Restatement"). *Torrington Co. v. Stutzman*, 46 S.W.3d 829, 848 (Tex. 2000); *Gutierrez v. Collins*, 583 S.W.2d 312, 318 (Tex. 1979). For tort cases, the Restatement instructs courts to consider the following contacts in determining which state possesses the most significant relationship:

> (a) the place where the injury occurred,
> (b) the place where the conduct causing the injury occurred,
> (c) the domicile, residence, nationality, place of incorporation and place of business of the parties, and,
> (d) the place where the relationship, if any, between the parties is centered.

Restatement § 145. These contacts are to be evaluated according to their relative importance with respect *"to the particular substantive issue to be resolved." Hughes Wood Products, Inc. v. Wagner*, 18 S.W.3d 202, 205 (Tex. 2000) (citing Restatement § 145(1)) (emphasis in original). The number of contacts is less important than the qualitative nature of those contacts as affected by the policy factors of Section 6 of the

4

Restatement. *See Gutierrez*, 583 S.W.2d at 319. Indeed, Section 6 directs courts to consider the contacts involved in the case in light of the following general principles:

> (a) the needs of the interstate and international systems,
> (b) the relevant policies of the forum,
> (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,
> (d) the protection of justified expectations,
> (e) the basic policies underlying the particular field of law,
> (f) certainty, predictability and uniformity of result, and
> (g) ease in the determination and application of the law to be applied.

Restatement § 6.

> In addition, Section 184 of the Restatement provides:
>
> Recovery for tort or wrongful death will not be permitted in any state if the defendant is declared immune from such liability by the workmen's compensation statute of a state under which the defendant is required to provide insurance against the particular risk and under which
> (a) the plaintiff has obtained an award for the injury, or
> (b) the plaintiff could obtain an award for the injury, if this is the state (1) where the injury occurred . . . .

Immunity under Section 184 applies if Defendants show "(1) that they would be immune from this suit under Louisiana workers' compensation law, and (2) that plaintiff has obtained or could obtain an award for his injury in Louisiana." *Hughes*, 18 S.W.3d at 207.

The Texas Supreme Court has adopted Section 184, and acknowledged that it "articulates and applies the principles of section 6 to the workers' compensation exclusive-remedy issue." *Id.* at 206-07; *see also id.* at 206 n.2 (noting that the Texas Supreme Court "has often applied more specific sections of the Restatement to address particular choice of law issues," and citing cases). Indeed, in *Hughes*, the Texas Supreme Court held that it was error for the lower court to "fail[] to consider section 184's

application to the exclusive-remedy issue." *Id.* at 202. Accordingly, the Court must look to Section 184 of the Restatement with respect to the exclusive-remedy issue.

## 2. Analysis

In this case, the parties agree that there is a conflict between Louisiana and Texas law as it relates to this case. Specifically, the states' laws differ with regard to: 1) when an entity is immune from tort liability under the workers' compensation law; and 2) when the parents of a deceased individual have standing to bring a survival or wrongful death action. With regard to the former, the Louisiana Workers' Compensation Act provides immunity to principals that are considered "statutory employers" under the "two contract" theory, when: "(1) the principal enters into a contract with a third party; (2) pursuant to that contract, work must be performed; and (3) in order for the principal to fulfill its contractual obligation to perform the work, the principal enters into a subcontract for all or part of the work performed." *Allen v. State ex rel. Ernest N. Morial-New Orleans Exhibition Hall Authority*, 842 So.2d 373, 379 (La. 2003). The parties have not pointed to any similar "two contract" immunity provision under Texas law. Accordingly, the Court must decide which state's law to apply.

Defendants contend that, under Section 184 of the Restatement, Louisiana law applies with regard to tort immunity; the Court agrees. First, KMTC is a "statutory employer" under the two contract theory, and is therefore immune from liability in this suit, because the Louisiana Workers' Compensation Act provides the exclusive remedy. This is discussed in detail in Section B below. Second, Plaintiffs could obtain an award for Reyes's injury in Louisiana. The accident occurred in Louisiana, and Defendants refer the Court to the workers' compensation insurance coverage maintained by JL Steel and

by KMTC. (Doc. No. 17, Ex. A; Doc. No. 55, Ex. C.) Defendants also refer the Court to the Employer Report of Injury/Illness that was provided by JL Steel to the Louisiana Office of Workers' Compensation after the accident. (Doc. No. 17, Ex. D1.) Plaintiffs do not provide any reason, or any evidence, suggesting that they could not obtain a workers' compensation award in Louisiana.

Notably, Plaintiffs do not make any argument with regard to why Louisiana law should not apply with respect to the specific substantive issue of immunity under the workers' compensation statute. Plaintiffs' arguments regarding choice of law focus solely on which state has the "most significant relationship" generally under Section 145 of the Restatement, and make no mention of Section 184. (*See* Doc. No. 54; Doc. No. 58, at 4 (incorporating Doc. No. 54).) The only argument Plaintiffs make contesting the immunity requirements of Section 184 is that KMTC is not a "statutory employer" under the Louisiana Workers' Compensation Act, and so is not entitled to immunity. For the reasons discussed in Section B, the Court disagrees with that argument. The Texas Supreme Court has made clear that the Court must apply Section 184 to the choice-of-law question with regard to the exclusive remedy issue. *Hughes*, 18 S.W.3d at 206. Accordingly, the Court finds, based on Section 184 of the Restatement, that Louisiana law applies with regard to tort immunity under the workers' compensation law.

### B. Whether KMTC is a Statutory Employer

Under the Louisiana Workers' Compensation Act, "an employee injured in an accident while in the course and scope of his employment is generally limited to the recovery of workers' compensation benefits as his exclusive remedy against his employer and, thus, may not sue his employer in tort." *Prejean v. Maintenance Enterprises, Inc.*, 8

So.3d 766, 769-70 (La. App. 4 Cir. 2009) (citing La. Rev. Stat. Ann. § 23:1021, *et seq.* (2010)). The act "applies both to a direct employer/employee relationship as well as to a statutory employer/employee relationship." *Id.*

The statutory employer doctrine is defined in Section 23:1061(A), which provides:

> (1) Subject to the provisions of Paragraphs (2) and (3) of this Subsection, when any "principal" as defined in R.S. 23:1032(A)(2), undertakes to execute any work, which is a part of his trade, business, or occupation and contracts with any person, in this Section referred to as the "contractor", for the execution by or under the contractor of the whole or any part of the work undertaken by the principal, the principal, as a statutory employer, shall be granted the exclusive remedy protections of R.S. 23:1032 and shall be liable to pay to any employee employed in the execution of the work or to his dependent, any compensation under this Chapter which he would have been liable to pay if the employee had been immediately employed by him; and where compensation is claimed from, or proceedings are taken against, the principal, then, in the application of this Chapter reference to the principal shall be substituted for reference to the employer, except that the amount of compensation shall be calculated with reference to the earnings of the employee under the employer by whom he is immediately employed. For purposes of this Section, work shall be considered part of the principal's trade, business, or occupation if it is an integral part of or essential to the ability of the principal to generate that individual principal's goods, products, or services.
>
> (2) A statutory employer relationship shall exist whenever the services or work provided by the immediate employer is contemplated by or included in a contract between the principal and any person or entity other than the employee's immediate employer.
>
> (3) Except in those instances covered by Paragraph (2) of this Subsection, a statutory employer relationship shall not exist between the principal and the contractor's employees, whether they are direct employees or statutory employees, unless there is a written contract between the principal and a contractor which is the employee's immediate employer or his statutory employer, which recognizes the principal as a statutory employer. When the contract recognizes a statutory employer relationship, there shall be a rebuttable presumption of a statutory employer relationship between the principal and the contractor's employees, whether direct or statutory employees. This presumption may be overcome only by showing that the

> work is not an integral part of or essential to the ability of the principal to generate that individual principal's goods, products, or services.

La. Rev. Stat. Ann. § 23:1061(A) (2010). Thus, "the statute provides two alternative defenses for tort liability: (1) when the principal undertakes work that is a part of his trade, occupation, or business by means of a contract with another, or (2) when the principal has contracted to perform work and subcontracts all or a portion of the work to another (the 'two-contract' theory of the statutory employer defense)." *Groover v. Scottsdale Ins. Co.*, 586 F.3d 1012, 1015 (5th Cir. 2009) (citing *Allen*, 842 So.2d at 378). "The 'two contract' defense applies when: (1) the principal enters into a contract with a third party; (2) pursuant to that contract, work must be performed; and (3) in order for the principal to fulfill its contractual obligation to perform the work, the principal enters into a subcontract for all or part of the work performed." *Allen*, 842 So.2d at 379. "The determination of statutory employer status is a question of law for the court to decide." *Prejean*, 8 So.2d at 769. In this case, Defendants argue that they are statutory employers under the two contract theory.

Defendants meet the three prongs for statutory employer status under the two contract theory. They entered into a contract with another party, the LADOTD. (Doc. No. 55, Ex. 1.) That contract provided that Defendants were to perform work—specifically, construction work to widen the Huey P. Long Bridge. (*Id.*) Finally, Defendants entered into a subcontract with JL Steel in order to fulfill their obligations under their contract with LADOTD. (Doc. No. 55, Ex. 2.)

Plaintiffs do not dispute that the three prongs are met.² Instead, they contend that the two contract defense does not apply because, under the terms of the subcontract between KMTC and JL Steel, KMTC has not unconditionally accepted the obligations of being a statutory employer, and so is not entitled to the benefits of statutory employer status. Specifically, the subcontract provides:

- that JL Steel "shall procure, and at all times thereafter maintain with insurers" a minimum amount of Workers' Compensation and Employer's Liability Coverage;
- that JL Steel's "insurance shall be primary and non-contributory to any other insurance maintained by Contractor (KMTC), Owner (LADOTD) and other parties as required in the Prime Contract (between KMTC and LADOTD)"³; and
- that JL Steel "shall cause its [Workers' Compensation] policy to contain a waiver of subrogation in favor of Contractor (KMTC), Owner (LADOTD) and other parties as required in the Prime Contract."

Based on those provisions, Plaintiffs contend that "JL's Steel's workers' compensation insurance is not only <u>primary</u>; *i.e.*, JL Steel has to pay any workers' compensation claims first" but that "it is also <u>non-contributory</u>; *i.e.*, KMTC is not required to share in paying any workers' compensation claims with JL Steel, and JL Steel cannot seek contribution from KMTC's workers' compensation policy," and "JL Steel's workers' compensation specifically waives subrogation in favor of KMTC." (Doc. No. 58, at 7-8 (emphasis in original).) Thus, Plaintiffs argue, KMTC has "contractually relieved itself of its <u>direct</u> obligation to pay workers' compensation benefits to JL Steel's employees, as well as its obligation to provide employees of JL Steel with an <u>unconditional</u> right to <u>immediately</u>

---

²Nor do Plaintiffs dispute that the individual joint venturers, Kiewit, Massman, and Traylor, are entitled to immunity to the same extent as KMTC, as "partners" under the meaning of La. Rev. Stat. Ann. § 23:1032. *See Peterson v. BE & K Inc. of Alabama*, 652 So.2d 617, 627-28 (La. App. 1 Cir. 1995) (holding that a joint venture and its members are covered by exclusive remedy provision of Section 23:1032), *overruled on other grounds by Allen*, 842 So.2d 373.

³ The clarifying parentheticals were provided by Plaintiffs, and are not disputed.

prosecute a claim for workers' compensation benefits against KMTC." (*Id.* at 8 (emphasis in original).)

In support of their argument, Plaintiffs rely on *Prejean*, a recent case in which a Louisiana Court of Appeals held that the defendant, Murphy Oil, could not be considered a "statutory employer" under Section 23:1061(A)(3) if it had contracted to receive the benefits of such designation (i.e. immunity) but not to bear the obligations (i.e. paying the workers' compensation benefits). 8 So.3d 766. In *Prejean*, the contract at issue "recited that Murphy Oil was to be a statutory employer in accordance with [Sections] 23:1031, 1032, or 1061, but would be liable to pay workers' compensation only if the immediate employer, contractor or subcontractor is unable to meet its obligation to workers." Id. at 768-69. The court noted that "[w]orkers' compensation statutes are in derogation of the universal right to sue for damages provided in La. C.C. art. 2315, et seq." and so courts "must construe strictly and narrowly the benefit conferred by the status that insulates a statutory employer from paying tort damages to a victim of injurious negligence or dangerous items in the environment of the workplace who, but for his employment status, would be free to sue for tort damages." Id. at 773. Applying that narrow construction, the court concluded that the "[b]ecause Murphy Oil did not accept unconditionally, implicitly or explicitly, the obligation of a statutory employer, it cannot obtain the benefit of a statutory employer, which is tort immunity," and so that provision of the contract was invalid. Id. at 776.

Assuming for the sake of argument that the language of the subcontract indicates that Defendants do not *unconditionally* accept the obligations arising from statutory employer status, the Court still finds that Defendants are statutory employers under

11

Section 23:1061(A)(2). *Prejean* concerned the applicability of Section 23:1061(A)(3), which explicitly requires "a written contract between the principal and a contractor . . . which recognizes the principal as a statutory employer" in order to create statutory employer status. Under Section 23:1061(A)(2), by contrast, statutory employer status under the two contract theory exists whether or not a contract recognizes the principal as a statutory employer. Plaintiffs' arguments, like the arguments in *Prejean*, essentially contend that there has not been an adequate recognition of the principal as a statutory employer because the principal has not fully accepted the responsibilities and burdens that come with that distinction. Because it is not necessary that there be a recognition in the contract that the principal is a statutory employer in order for statutory employer status to apply under the *two contract theory*, Plaintiffs' arguments fail.

This is in line with the holding in *Dean v. Baker Hughes, Inc.*, 2010 WL 5463422 (W.D.La. Dec. 29, 2010), in which the Court distinguished *Prejean* from cases concerning the two contract theory, explaining:

> In *Prejean*, a principal sought tort immunity pursuant to § 23:1061(A)(3). In this case, [Defendants] seek tort immunity pursuant to § 23:1061(A)(2) which does not require language in a contract that recognizes the principal as a statutory employer. Regardless whether the Court invalidated the provisions at issue in the contracts, Defendants would still be statutory employers pursuant to § 23:1061(A)(2) and, thus, immune from tort liability in this case.

*Id.* at *6.[4] Because Defendants are "statutory employers" under Louisiana law, they are immune from tort liability pursuant to the exclusive remedy provision of the Louisiana

---

[4] *Dean* also noted that, to the extent *Prejean* was not distinguishable, "the Court is not bound by decisions from Louisiana appellate courts." *Id.* at *6 n.3 (citing *Chevron USA, Inc. v. Vermilion Parish Sch. Bd.*, 377 F.3d 459, 462 (5th Cir. 2004) and *Lake Charles Diesel, Inc. v. Gen. Motors Corp.*, 328 F.3d 192, 197 (5th Cir. 2003)).

Workers' Compensation Act. La. Rev. Stat. Ann. § 23:1032 (2010); *see Dugan v. Waste Management, Inc.*, 41 So.3d 1263, 1266 (La. App. 2 Cir. 2010).

This outcome will not, as Plaintiffs argue, allow Defendants to receive the benefits without incurring the responsibilities of statutory employer status. As Reyes's statutory employers, Defendants may be liable to pay his workers' compensation benefits. *See* La. Rev. Stat. Ann. § 23:1061(A)(1) (2010). A separate provision of the Louisiana Workers' Compensation Act provides that "[n]o contract, rule, regulation or device whatsoever shall operate to relieve the employer, in whole or in part, from any liability created by this Chapter except as herein provided." La. Rev. Stat. Ann. § 23:1033 (2010). Thus, to the extent the terms of the subcontract conflict with the liability of a statutory employer under the workers' compensation statute, they will be unenforceable. *See Berthelot v. Murphy Oil, Inc.*, 2010 WL 103871, at *8 (E.D.La. Jan. 7, 2010) (in context of Section 23:1061(A)(3), enforcing sentence stating that defendant is "a statutory employer," but noting that, to the extent other provisions are inconsistent with a statutory employer's obligations, they are unenforceable *vis-à-vis* [the plaintiff"); *McClain v. Motiva Enterprises, L.L.C.*, 2010 WL 3614310, at *3 (E.D.La. Sept. 8, 2010) (in dicta, noting agreement with *Berthelot* approach).

It is beyond dispute that the events underlying this case are tragic. However, in Louisiana, as in Texas, workers' compensation legislation "reflects a compromise between the competing interests of employers and employees: the employer gives up the defense it would otherwise enjoy in cases where it is not at fault, while the employee surrenders his or her right to full damages, accepting instead a more modest claim for essentials, payable regardless of fault and with a minimum of delay." *Allen*, 842 So.2d at

377; *see also Hughes*, 18 S.W.3d at 206-07. Thus, the fact that Defendants are immune from tort liability does not mean that the Plaintiffs are left without a remedy for the death of their close relative; it merely reflects the legislative decision that workers compensation should be the exclusive remedy. Accordingly, Plaintiffs' claims against Defendants must be dismissed.[5]

IV. **Conclusion**

For the reasons discussed in this order, Defendants' Motion for Summary Judgment (Doc. No. 55) is **GRANTED**. Defendants' Motion for Partial Summary Judgment (Doc. No. 48) is **DENIED AS MOOT**. The trial date is **VACATED**, and a new scheduling order will be entered if and when the Court denies Defendant Modjeski and Masters's Motion to Dismiss (Doc. No. 63).

**IT IS SO ORDERED.**

SIGNED this 11th day of August, 2011.

_____
KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE

---

[5] Because the Court finds all remaining Defendants immune from liability, it need not address the issues raised in Defendants' Motion for Partial Summary Judgment (Doc. No. 48).