**IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| **GUADALUPE ARENAS VARGAS, et al.,** | § | **CIVIL ACTION NO. 4:09-CV-02521** |
| **Plaintiffs,** | § | |
| | § | |
| **v.** | § | **JUDGE KEITH P. ELLISON** |
| | § | |
| **KIEWIT LOUISIANA CO., et al.,** | § | |
| **Defendants.** | § | **JURY** |

**MEMORANDUM IN SUPPORT OF
MOTION FOR PARTIAL SUMMARY JUDGMENT
BY KECO ON WRONGFUL DEATH, SURVIVAL,
AND PUNITIVE DAMAGES CLAIMS**

 **NOW INTO COURT**, through undersigned counsel, comes Defendant, Kiewit Engineering Company ("KECO" or "Defendant"), who submits this memorandum in support of its motion for partial summary judgment in favor of KECO and against the plaintiffs, Guadalupe Arenas Vargas, individually ("Wife" or "Vargas") and as representative of the Estate of Martin Anastacio Reyes Osuna, deceased ("Estate") and as next friend of Zaid Martin Reyes Arenas ("Child"); and, Sylvia Ozuna Garcia and Martin Reyes Adame, parents of the deceased Martin Anastacio Reyes Osuna ("Parents") (collectively, "Plaintiffs"), seeking (i) a declaration that Louisiana law, rather than Texas law, applies to the Plaintiffs' claims for wrongful death, survival, and punitive damages, (ii) the dismissal of all claims of the Parents and the Estate, (iii) the dismissal of the Parents and the Estate as parties to this action, and (iv) the dismissal of all claims of the Plaintiffs for punitive damages.

## TABLE OF CONTENTS

I.      SUMMARY .................................................................................................... 5

II.     STATEMENT OF THE ISSUES TO BE DECIDED BY THE COURT ............................ 6

III.    STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDING ................... 7

IV.     BACKGROUND/FACTS ................................................................................... 7

        A.     Summary of HPL Project and Role of Pertinent Parties........................ 7

        B.     Plaintiffs' Pending Allegations ........................................................ 8

        C.     Only KECO and M&M Remain as Defendants in this Case as KMTC JV, its Joint
               Venturers, and JL Steel Have Been Dismissed........................................ 9

        D.     Citizenship of Plaintiffs and Decedent ................................................ 10

V.      SUMMARY JUDGMENT STANDARD ............................................................... 11

        A.     Texas Federal Court Standard .......................................................... 11

VI.     LEGAL ANALYSIS ......................................................................................... 12

        A.     There is a Conflict between Louisiana Law and Texas Law ................... 12

        B.     Plaintiffs Concede that Louisiana Law Applies.................................... 13

        C.     The Law of the State with the Most Significant Relationship to the Accident and
               the Parties Applies ........................................................................ 13

               (i)      The Injury Occurred in Louisiana.......................................... 16

               (ii)     The Conduct Causing the Injury Occurred in Louisiana ......................... 17

               (iii)    Decedent Resided in Louisiana............................................... 18

               (iv)     The Relationship of the Parties is Centered in Louisiana ........................ 19

        D.     Restatement Section 6 Favors an Application of Louisiana Law ........................ 19

        E.     Louisiana has the Most Significant Relationship to Plaintiffs' Wrongful Death and
               Survival Claims........................................................................... 21

        F.     Louisiana Law Applies to Plaintiffs' Wrongful Death and Survival Claims ....... 22

        G.     The Parents and the Estate have No Standing to Assert Wrongful Death or
               Survival Claims under Louisiana Substantive Law ................................ 23

        H.     Plaintiffs' Claims for Punitive Damages are Barred............................... 25

VII.    CONCLUSION ................................................................................................. 26

# TABLE OF AUTHORITIES

## Cases

*Alexander v. Wilson*, 640 So.2d 687 (La. App. 3 Cir. 6/1/94) ...................................................... 24

*Allen v. Burrow,* 505 So.2d 880 (La.App. 2 Cir. 4/1/87), *writ denied,* 507 So.2d 229 (La. 6/5/87) ................................................................................................................................................ 23

*Black v. Toys R US-Delaware, Inc.*, No. 08-3315, slip op. 2010 WL 4702344, *7 (S.D. Tex. Nov. 10, 2010) ........................................................................................................................... 13, 15

*Craig v. Scandia, Inc.,* 634 So.2d 944 (La. App. 2 Cir. 3/30/94) ................................................ 23

*Crawford v. Formosa Plastics Corp.*, 234 F.3d 899 (5th Cir. 2000) .......................................... 11

*Duncan v. Cessna Aircraft Co.*, 665 S.W.2d 414 (Tex. 1984) ............................................. 13, 14

*Eason v. Thaler*, 73 F.3d 1322 (5th Cir. 1996) .......................................................................... 12

*Estate of Birch v. Hancock Holding Co.*, 39 So.3d 742(La. App. 1 Cir. 5/7/10) ............. 23, 24, 25

*Estate of Francis v. City of Rayne*, 966 So.2d 1105 (La. App. 3 Cir. 10/3/07) ........................... 25

*Exxon Corp. v. Oxxford Clothes, Inc.*, 109 F.3d 1074 (5th Cir. 1997) ....................................... 11

*Falcon v. Berwick*, 885 So.2d 1222(La. App. 1 Cir. 6/25/04) .................................................... 24

*Gauthier v. Union Pacific Railroad Co.*, 644 F.Supp.2d 824 (E.D. Tex. 2009) ............. 14, 20, 25

*Gutierrez v. Collins*, 583 S.W.2d 312, 318 (Tex. 1979) ........................................................ 14, 15

*Haddock v. Arnspiger,* 793 S.W.2d 948 (Tex.1990) .................................................................... 5

*Hartford Underwriters Ins. Co. v. Foundation Health Services, Inc.*, 524 F.3d 588 (5th Cir. 2008) .................................................................................................................................. 6

*Huddy v. Fruehauf Corp.*, 953 F.2d 955 (5th Cir. 1992) ...................................................... 17, 18

*Hughes Wood Prods., Inc. v. Wagner*, 18 S.W.3d 202 (Tex. 2000) ...................................... 13, 14

*Jenkins v. Mangano*, 774 So.2d 105 (La. 12/4/00) .................................................................... 24

*Karavokiros v. Indiana Motor Bus Co.*, 524 F.Supp. 385 (E.D. La. 1981) ................................ 26

*Kee v. City of Rowlett*, 247 F.3d 206 (5th Cir. 2001) ................................................................. 11

*Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477(1941) ......... 13

*Little v. Liquid Air Corp.*, 37 F.3d 1069 (5th Cir. 1994) ........................................................... 12

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d (1986) ................................................................................................................... 12

*McIntosh v. Partridge*, 540 F.3d 315 (5th Cir. 2008) ................................................................ 12

*McKee v. Brimmer*, 39 F.3d 94 (5th Cir. 1994) ........................................................................... 7

*Moreno v. Sterling Drug, Inc.*, 787 S.W.2d 348 (Tex. 1990) ...................................................... 5

*Perez v. Lockheed Corp. (In re Air Disaster at Ramstein Air Base)*, 81 F.3d 570 (5th Cir. 1996) ............................................................................................................................................ 14

*Roche v. Big Moose Oil Field Truck Service,* 381 So.2d 396 (La. 2/15/80) ................................ 23

*Ross v. Conoco, Inc.*, 828 So.2d 546 (La. 10/15/02) .................................................................. 26

*Ruffin v. Leevac Corp.,* 543 So.2d 626 (La.App. 1 Cir. 5/16/89), *writ denied,* 548 So.2d 330 (La. 1989) ................................................................................................................................. 23

*Tobin v. AMR Corp.*, F.Supp.2d 406 (N.D. Tex. 2009) .............................................................. 13

*Torrington Co. v. Stutzman*, 46 S.W.3d 829 (Tex. 2000) ........................................................... 14

*Total Oilfield Services, Inc. v. Garcia*, 711 S.W.2d 237 (Tex.1986) .......................................... 15

*Turner v. Busby*, 883 So.2d 412 (La. 9/9/04) ............................................................................ 25

*Walker v. Union Oil Mill, Inc.*, 369 So. 2d 1043 (La. 3/5/79) ............................................... 5, 23

*Whatley v. Dupuy*, 178 So.2d 438 (La.App. 7/1/65) ............................................................. 5, 22

**Statutes**

LA. CIV. CODE ANN. art. 2315.1 ................................................................ passim
LA. CIV. CODE ANN. art. 2315.2 ................................................................ passim
LA. CIV. CODE ANN. art. 2315.3 ................................................................ 12, 26
LA. CIV. CODE ANN. art. 2315.4 ................................................................ 12, 26
LA. CIV. CODE ANN. art. 2315.7 ................................................................ 12, 26
LA.CIV. CODE ANN. art. 2323 ................................................................... 12
Tex. CIV. PRAC. & REM. CODE §33.001 ...................................................... 12
Tex. CIV. PRAC. & REM. CODE §41.008(a) and (b) ...................................... 12
Tex. CIV. PRAC. & REM. CODE §71.004 ...................................................... 12
Tex. CIV. PRAC. & REM. CODE §71.021 ...................................................... 12
Tex. CIV. PRAC. & REM. CODE ANN. §71.031(a) ......................................... 15
Tex. CIV. PRAC. & REM. CODE ANN. §71.031(c) ......................................... 15

**Rules**

Fed. R. Civ. P. 56(c) ................................................................................ 11
Fed. R. Civ. P. 56(e)(1) ............................................................................ 12

**Other Authorities**

Restatement (Second) of Conflicts of Laws, §145 (1971) .......................... passim
Restatement (Second) of Conflicts of Laws, §146 (1971) .......................... 16, 17, 18
Restatement (Second) of Conflicts of Laws, §6 (1971) ............................... 14, 15, 19

## I.    SUMMARY

This is a wrongful death case.  In Plaintiffs' Third Amended Complaint (Rec.Doc. 51) ("3rd Complaint"), Plaintiffs characterize their causes of action as negligence and *res ipsa loquitor*.  *See* 3rd Complaint at ¶¶IV and V.    However, Plaintiffs' claims are based upon the death of Martin Anastacio Reyes Osuna ("Decedent") and are, therefore, wrongful death and survival claims under both Louisiana and Texas law. Under Louisiana law, wrongful death gives rise only to wrongful death and survival claims under Articles 2315.2 and 2315.1 of the Louisiana Civil Code.  *Whatley v. Dupuy*, 178 So.2d 438, 441 (La.App. 7/1/65).  Likewise, Texas does not recognize a common law cause of action for wrongful death.  *See Moreno v. Sterling Drug, Inc.*, 787 S.W.2d 348, 356 (Tex. 1990).    Further, *res ipsa loquitur* is an evidentiary principle and does not provide a cause of action.  *Walker v. Union Oil Mill, Inc.*, 369 So. 2d 1043, 1048 (La. 3/5/79); *Haddock v. Arnspiger,* 793 S.W.2d 948, 950 (Tex.1990). Therefore, whether Louisiana law or Texas law applies, Plaintiffs' negligence and *res ipsa loquitur* claims are actually claims for wrongful death and/or survival.

KECO moves for summary judgment seeking a declaration that Louisiana law applies to the Plaintiffs' wrongful death and survival claims in this case.  KECO further moves for dismissal of all claims of the Parents and the Estate and the claims for punitive damages by all Plaintiffs.  The Parents' and the Estate's claims for wrongful death and survival are barred under Louisiana law as are all of the Plaintiffs' claims for punitive damages.

Louisiana substantive law applies to Plaintiffs' claims under Texas choice of law rules. Those choice of law rules defer to the local law of the state in which the injury occurred unless another state has a more significant relationship to the occurrence and the parties.  Because Louisiana is the state in which Decedent's death occurred and no other state—including Texas—

has a more significant relationship to the construction accident underlying this litigation or to the parties, Louisiana law will determine the parties' rights and liabilities in this action.  This Court has previously recognized Louisiana's superior relationship to the claims in this case when applying Louisiana law to dismiss claims against two of KECO's co-defendants.  Further, as discussed *infra*, Plaintiffs concede that Louisiana substantive law applies to their claims herein.

Louisiana substantive law does not permit a deceased's estate to recover damages for wrongful death or survival.  Further, the parents of a decedent may not assert wrongful death or survival claims where, as in this case, the decedent left a surviving spouse or child.  Thus, the claims of the Estate, as well as of the Parents, Sylvia Ozuna Garcia and Martin Reyes Adame, must be dismissed as the Estate and Parents lack standing to bring such claims.  Likewise, Louisiana law does not provide for the recovery of punitive damages in wrongful death cases. Therefore, all claims herein for punitive damages must be dismissed as a matter of law. The dismissal of the Parents' and the Estate's wrongful death, survival, and punitive damages claims disposes of all the Parents' and the Estate's claims herein, warranting those parties' dismissal, with prejudice, from the case.

## II.    STATEMENT OF THE ISSUES TO BE DECIDED BY THE COURT

The issues before the Court are as follows: (1) whether Louisiana or Texas law applies to the Plaintiffs' wrongful death and survival claims, (2) whether the Estate and Parents are barred from asserting wrongful death and survival claims under Louisiana law, and (3) whether all of the Plaintiffs' punitive damages claims are barred by Louisiana law.  Questions of law, such as choice of law, are reviewed *de novo*.  *Hartford Underwriters Ins. Co. v. Foundation Health Services, Inc.*, 524 F.3d 588, 592 (5th Cir. 2008).  A district court's ruling on summary judgment

is also subject to a *de novo* standard of review.  *McKee v. Brimmer*, 39 F.3d 94, 96 (5th Cir. 1994).

## III.   STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDING

This is a wrongful death and survival case brought by theDecedent's Wife, Child, Parents and Estate .  KECO and Modjeski and Masters, Inc. are the only two remaining defendants since the Court granted KMTC JV's Motion for Summary Judgment (Rec. No. 71) and JL Steel Reinforcing LLC's Motion to Dismiss (Rec. No. 19).  There is no scheduling order in place and no trial date has been set.  Discovery is ongoing.

## IV.   BACKGROUND/FACTS

### A.   Summary of HPL Project and Role of Pertinent Parties

Plaintiffs' claims arise from a construction accident that occurred on June 12, 2009 in Bridge City, Louisiana.  On the date of the accident, Martin Anastacio Reyes Osuna, Decedent, was working for JL Steel Reinforcing, LLC ("JL Steel") on a portion of the Huey P. Long Bridge Widening Project ("HPL Project") being performed by Kiewit Louisiana Co., Massman Construction Co. and Traylor Bros., Inc., a Joint Venture d/b/a Kiewit Massman Traylor Constructors ("KMTC JV") as Contractor.

KMTC JV's work on the HPL Project was being performed pursuant to a contract with the State of Louisiana, Department of Transportation and Development ("DOTD" or "Owner").[1] KMTC JV was formed for the purpose of bidding and performing the work on the HPL Project. *See* KMTC JV Joint Venture Agreement, attached as **Exhibit B**.  The Joint Venture Agreement

---

[1] This contract, which is entitled "Contract for State Project Nos. 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, 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, 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, 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, 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, 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, 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, Huey P. Long Bridge Widening (Westbank and Eastbank Approaches and Main Bridge Deck Widening), Route US 90, Jefferson Parish" was entered into by KMTC JV and DOTD on April 24, 2008 ("Prime Contract").   The Notice to Proceed, Notice of Contract Execution and Agreement portion of the Prime Contract, Bates-labeled KMTC JV-00001-00082, are attached, *in globo*, as **Exhibit A**, which is hereinafter included in the reference to "Prime Contract."

indicates that KMTC JV's principal office is located at the HPL Project site.  The HPL Project site address for KMTC JV is 910 Pontchartrain Road, Suite T, Jefferson, Louisiana 70121.  *See* Deposition Excerpt of Cesar Velador Mojica, KMTC JV Craft Superintendent, attached as **Exhibit C**, at p. 13, ll. 9-19.

JL Steel executed a Subcontract with KMTC JV as the Contractor for the HPL Project on June 18, 2008, where JL Steel agreed to provide the labor necessary to pre-assemble, pre-tie and install all of the concrete reinforcing steel on the HPL Project.  *See* JL Steel Subcontract, attached as **Exhibit D** ("Subcontract").  Pursuant to the terms of the Prime Contract and Subcontract, JL Steel is performing work on the Project for five years, through 2013.  *See* Deposition Excerpt of Michael LaPointe, attached as **Exhibit E**, at pp. 277, l. 20 - p. 278, l.10.

KECO is an engineering firm that provided a limited scope of work on the HPL Project for KMTC JV, which work included providing rebar cage guying plans for wind loading purposes only for the Lift 2 of bridge columns EBB W2 and EBB W1.  *See* Deposition of David Sinsheimer, attached hereto as **Exhibit F**, at p. 87, ll. 16-25.  KECO maintains offices in Omaha, Nebraska and Vancouver, Washington.  *See* Kiewit website, Kiewit Engineering page, attached as **Exhibit G**.

Modjeski and Masters, Inc. ("M&M") was the engineering firm of record for the HPL Project.  M&M was retained by the DOTD to design and prepare preliminary and final construction plans and prepare specifications and construction cost estimates for the HPL Project.[2]

### B.    Plaintiffs' Pending Allegations

The Plaintiffs in this case are as follows:

---

[2] *See* State of Louisiana Department of Transportation and Development Contract for Engineering and Related Services Supplemental Agreement No. 28 to State Project No. 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 Huey P. Long Bridge (Mississippi River) Route LA US 90 Jefferson Parish, attached hereto as **Exhibit H**, at "Scope of Services."

- Decedent's Wife - Guadalupe Arenas Vargas;
- Decedent's Child– Zaid Martin Reyes Arenas (brought by wife as next friend);
- Decedent's Estate (represented by Decedent's wife); and,
- Decedent's Parents – Sylvia Ozuna Garcia and Martin Reyes Adame.

The most recent version of the Plaintiffs' allegations is contained in Plaintiffs' 3rd Complaint, which was filed on May 25, 2011.  At that time, there were six remaining defendants:

- KMTC JV;
- Kiewit Louisiana Co. (individual joint venturer of KMTC JV);
- Massman Construction Co. (individual joint venturer of KMTC JV);
- Traylor Bros., Inc. (individual joint venturer of KMTC JV);
- KECO; and
- M&M.

The Plaintiffs do not distinguish between the different defendants when setting forth their causes of action.  *See* 3rd Complaint at ¶¶13-19.  Furthermore, the Plaintiffs seek the same categories of damages against all of the listed defendants, namely, actual damages, exemplary or punitive damages, pre-judgment and post-judgment interest, court costs and any other relief to which Plaintiffs may be justly entitled.  *See id.* at ¶21.

### C.    Only KECO and M&M Remain as Defendants in this Case as KMTC JV, its Joint Venturers, and JL Steel Have Been Dismissed

On August 11, 2011, this Court dismissed KMTC JV and the individual joint venturers from this case with prejudice (Rec.Doc. 71) (hereafter, "Dismissal Order") on the grounds that those defendants are immune from tort suit as statutory employers of the Decedent under the applicable Louisiana workers' compensation regime.

JL Steel, Decedent's direct employer, was earlier dismissed with prejudice from this case.  JL Steel's Motion to Dismiss (Rec.Doc. 17), which was unopposed by the Plaintiffs, was granted by this Court on March 4, 2010 (Rec.Doc. 19).  Like KMTC JV and the individual joint venturers, JL Steel was dismissed as a result of the application of Louisiana law to the Plaintiffs' claims.  This Court has consistently applied Louisiana law to the Plaintiffs' claims in this matter.

Accordingly, only KECO and M&M remain as defendants in this case.  KECO, who is filing the instant Motion, is a Delaware corporation, with its principal place of business in Omaha, Nebraska, and has no agent for service of process in the State of Texas.  *See* 3rd Complaint, ¶6; *see also* Defendants' Answer to Plaintiffs' Third Amended Complaint (Rec.Doc. 60); KECO's corporate information page from Nebraska's Secretary of State website, attached as **Exhibit I**.  Neither KECO nor M&M is incorporated in Texas, is authorized or licensed to do business in Texas, or has an office in Texas.  *See id.* and Contact page from Modjeski and Masters website, attached hereto as **Exhibit J;** *see also* M&M's corporate information page from the Texas Secretary of State's website reflecting no records and page from Louisiana Secretary of State's website reflecting principal Louisiana office, attached hereto as **Exhibit K.**

**D.     Citizenship of Plaintiffs and Decedent**

It is undisputed that all of the Plaintiffs are Mexican citizens.  In their 3rd Complaint, Plaintiffs admit that "Plaintiffs are individuals who are citizens of Mexico."  3rd Complaint at ¶1. Moreover, the Plaintiffs have provided sworn responses to written discovery propounded by JL Steel in the instant matter that confirms that all of the Plaintiffs are citizens of Mexico and permanently reside in San Buenaventura, Coahuila, Mexico.[3]  Plaintiffs also provided copies of their birth certificates and marriage license from Mexico confirming their citizenship and family relationship to Decedent, which documents are attached hereto as **Exhibit M**.

With regard to Decedent, the evidence demonstrates that he was not a citizen of Texas or any other state because he was not admitted to the United States for permanent residence.  *See*

---

[3] *See* Plaintiff Guadalupe Arenas Vargas, Individually's Objections and Answers to Defendant, JL Steel Reinforcing, L.L.C.'s First Set of Interrogatories at No. 1; Guadalupe Arenas Vargas, As Representative of the Estate of Martin Anastacio Reyes Osuna's, Objections and Answers to Defendant, JL Steel Reinforcing, L.L.C.'s First Set of Interrogatories at Nos. 1, 4 and 5; Plaintiff, Guadalupe Arenas Vargas, As Next Friend of Zaid Martin Reyes Arenas's, Objections and Answers to Defendant JL Steel Reinforcing, L.L.C.'s First Set of Interrogatories at No. 1.  These selected excerpts to the aforementioned discovery responses are attached hereto as **Exhibit L**.

Consular Identification Card of Decedent, attached hereto as **Exhibit N**.  At the time of his death, Decedent was a citizen of Mexico, but was living in Louisiana.  *See* Excerpts from Deposition of Angel Felipe Corona Rodriguez, JL Steel Foreman, attached as **Exhibit O**, at pp. 54, ll. 22 – p. 55, l. 2.  Thus, Decedent was actually a resident of Louisiana at the time of the accident.

### V.  SUMMARY JUDGMENT STANDARD

#### A.  Texas Federal Court Standard

A motion for summary judgment requires the Court to determine whether the moving party is entitled to judgment as a matter of law based on the evidence thus far presented.  Fed. R. Civ. P. 56(c).  Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  *Kee v. City of Rowlett*, 247 F.3d 206, 210 (5th Cir. 2001) (internal quotations omitted).  A genuine issue of material fact exists if a reasonable jury could enter a verdict for the non-moving party.  *Crawford v. Formosa Plastics Corp.*, 234 F.3d 899, 902 (5th Cir. 2000).  The party moving for summary judgment must demonstrate the absence of a genuine issue of material fact, but need not negate the elements of the nonmovant's case.  *Exxon Corp. v. Oxxford Clothes, Inc.*, 109 F.3d 1070, 1074 (5th Cir. 1997).  If the movant meets this burden, then the nonmovant is required to go beyond its pleadings and designate, by competent summary judgment evidence, the specific facts showing that there is a genuine issue for trial.  *Id.*

The Court views all evidence in the light most favorable to the nonmoving party and draws all reasonable inferences in that party's favor.  *Id.*  Hearsay, conclusory allegations, unsubstantiated assertions, and unsupported speculation are not competent summary judgment

evidence. Fed. R. Civ. P. 56(e)(1); *see, e.g.*, *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996); *McIntosh v. Partridge*, 540 F.3d 315, 322 (5th Cir. 2008); *see also Little v. Liquid Air Corp.*, 37 F.3d 1069, 1975 (5th Cir. 1994) (noting that a non-movant's burden is "not satisfied with 'some metaphysical doubt' as to the material facts") (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)).

## VI.    LEGAL ANALYSIS

### A.    There is a Conflict between Louisiana Law and Texas Law

At issue in this Motion are the Plaintiffs' claims for wrongful death and survival damages. These claims are subject to different treatment under Louisiana and Texas law. For example, there are different classes of beneficiaries entitled to recover damages under Louisiana and Texas law. *See* LA. CIV. CODE ANN. art. 2315.1 and LA. CIV. CODE ANN. art. 2315.2; TEX. CIV. PRAC. & REM. CODE §71.004 and TEX. CIV. PRAC. & REM. CODE §71.021. Additionally, where Texas employs a comparative negligence standard that precludes recovery once the claimant is found to be 50% at fault, Louisiana law does not contain such a limitation. *See* TEX. CIV. PRAC. & REM. CODE §33.001; LA.CIV. CODE ANN. art. 2323. Further, Louisiana law does not allow the recovery of punitive damages except in cases involving underage pornography, drunk driving, and child molestation, none of which is alleged here. *See* LA. CIV. CODE ANN. art. 2315.3, LA. CIV. CODE ANN. art. 2315.4, and LA. CIV. CODE ANN. art. 2315.7, respectively. Texas law, by contrast, generally permits punitive damages in tort cases subject to a $200,000 cap. *See* Tex. CIV. PRAC. & REM. CODE §41.008(a) and (b).

This Court has previously found that conflicts between two state's laws regarding multiple critical issues in the case, such as these, constituted a sufficient conflict to warrant a choice of law analysis. *Black v. Toys R US-Delaware, Inc.*, No. 08-3315, slip op. 2010 WL

4702344, *7 (S.D. Tex. Nov. 10, 2010) (noting conflicts regarding contributory negligence bar, standards for establishing defective design, and limitations on recovery of punitive damages were sufficient to trigger choice of law analysis).[4]   The question as to which state's law governs is a question of law for the Court to decide.   *Hughes Wood Prods., Inc. v. Wagner*, 18 S.W.3d 202, 204 (Tex. 2000) (citing *Duncan v. Cessna Aircraft Co.*, 665 S.W.2d 414, 421 (Tex. 1984)).

### B.    Plaintiffs Concede that Louisiana Law Applies

In their response to M&M's Motion to Dismiss, Plaintiffs concede that Louisiana law applies to their claims.   *See* Plaintiffs' Response to Defendant's 12(b)(6) Motion to Dismiss (Rec. Doc. 73), p. ¶9.   Regardless, an analysis under Texas' choice of law rules directs the application of Louisiana law.

### C.    The Law of the State with the Most Significant Relationship to the Accident and the Parties Applies

(1)    *Texas Choice of Law Rules Apply*

A federal district court sitting in diversity applies its forum state's choice-of-law rules. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941); *see also* Dismissal Order at III (A)(1), p. 3. Thus, this Court should look to Texas choice-of-law rules to determine whether Louisiana or Texas law applies.

A choice of law analysis is not necessary unless there is a conflict between the laws of the jurisdictions whose law potentially controls.   *Duncan*, 665 S.W.2d at 414, 419; *see also Tobin v. AMR Corp.*, F.Supp.2d 406, 412 (N.D. Tex. 2009); Dismissal Order at II(A)(1), p.4.   As discussed, *supra*, a clear conflict exists between the law of Louisiana and the law of Texas as it pertains to the Plaintiffs' wrongful death and survival claims, thereby triggering Texas' choice of law rules.

---

[4] A copy of this case is attached hereto as **Exhibit P** for the Court's reference.

(2)     *Texas Utilizes the "Most Significant Relationship" Test*

When such a conflict of laws exists, Texas courts determine which state's law controls by applying the "most significant relationship test." *Hughes Wood Prods.,* 18 S.W.3d at 205 (citing Restatement (Second) of Conflicts of Laws (hereinafter, "Restatement"), §§6, 145 (1971); *Duncan*, 665 S.W.2d at 420-421; *Gutierrez v. Collins*, 583 S.W.2d 312 (Tex. 1979)); *see also* Dismissal Order at II(A)(1), p.4.  Specifically, in tort cases, Texas courts generally follow the analysis in Restatement Sections 6 and 145.  *See Torrington Co. v. Stutzman*, 46 S.W.3d 829, 848 (Tex. 2000).  "Section 6 of the Restatement contains the general principles involved in the conflicts analysis whereas Restatement Section 145  lists the factual matters to be considered when applying the Section 6 principles to a given case." *Gauthier v. Union Pacific Railroad Co.*, 644 F.Supp.2d 824, 839 (E.D. Tex. 2009) (citing *Perez v. Lockheed Corp. (In re Air Disaster at Ramstein Air Base)*, 81 F.3d 570, 577 (5th Cir. 1996)).  The factual matters in Section 145 are determinative of the most significant relationship issue. *See id.*

Restatement Section 6 directs a court to follow a statutory directive on choice of law of its own state.  *See* Restatement §6(1).  Where there is no such directive, Section 6(2) identifies the factors relevant to the choice of law analysis, which includes concerns regarding predictability, the policies of the forum and other interested states, and the needs of the interstate system, among other things.[5]     *See also Torrington*, 46 S.W.3d at 848 (citing Restatement (Second) of Conflict of Laws § 6(2) (1971); *Gutierrez,* 583 S.W.2d at 318-19)).  Restatement Section 145(2) sets forth four contacts to be taken into account when applying Section 6: (a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c)

---

[5] The specific considerations listed in Restatement Section 6 are: (a) the needs of the interstate and international systems, (b) the relevant policies of the forum, (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue, (d) the protection of justified expectations, (e) the basic policies underlying the particular field of law, (f) certainty, predictability and uniformity of result, and (g) ease in the determination and application of the law to be applied.

the domicile, residence, nationality, place of incorporation and place of business of the parties, and (d) the place where the relationship, if any, between the parties is centered.  *See also Torrington*, 46 S.W.3d at 848 (citing Restatement (Second) of Conflict of Laws § 145(2) (1971); *Black,* 2010 WL 4702344 at *8 (attached as Exhibit P).

The Texas legislature has enacted legislation to govern choice of law in specific circumstances.  Section 71.031(a) of the Texas Civil Practice and Remedies Code provides for choice of law when an action is brought in Texas based on an act or omission occurring out of state.  Section 71.031(c)  directs that "[t]he court shall apply the rules of substantive law that are appropriate under the facts of the case."  The Texas Supreme Court has interpreted this phrase to encompass an analysis of the "most significant relationship" under Restatement Sections 6 and 145.  *Total Oilfield Services, Inc. v. Garcia,* 711 S.W.2d 237, 239 (Tex. 1986); *see also Gutierrez,* 583 S.W.2d at 317-18 n. 3.  Accordingly, the most significant relationship test will determine whether Louisiana law or Texas law applies to the Plaintiffs' claims for wrongful death and survival.

(3)     Texas Choice of Law Rules Direct the Application of Louisiana Law

"The Court must apply the Restatement test and evaluate the applicable contacts and policy considerations to determine the most appropriate choice of law for *each* of Plaintiffs' distinct legal claims and other issues that impact the resolution of Plaintiffs' claims, such as contributory negligence and punitive damages."  *Black*, 2010 WL 4702344 at *8 (emphasis in original) (attached as Exhibit P).  The primary issue is whether Louisiana or Texas law applies to the Plaintiffs' claims.

When evaluated under Restatement Sections 6 and 145, it is clear that Louisiana has the most significant relationship to Plaintiffs' claims for wrongful death and survival.  Moreover, in

personal injury cases, the Restatement defers to the law of the jurisdiction in which the underlying accident occurred. *See* Restatement §146. Therefore, there is a presumption in this case that Louisiana law applies.

The four contacts enumerated in Restatement Section 145 support an application of Louisiana's wrongful death and survival statutes and punitive damages bar. A summary of the four contacts in this case, favoring the application of Louisiana law, is set forth below:

| **CONTACT** | **LOUISIANA** | **TEXAS** | **NEITHER** |
|---|---|---|---|
| The place where the injury occurred | X | | |
| The place where the conduct causing the injury occurred | X | | |
| The domicile, residence, nationality, place of incorporation and place of business of the parties | • Residence | | • Domicile<br>• Nationality<br>• Place of incorporation<br>• Place of business |
| The place where the relationship between the parties is centered | X | | |

### (i)      *The Injury Occurred in Louisiana*

It is undisputed that the injury underlying Plaintiffs' wrongful death and survival claims occurred in Louisiana. Decedent sustained fatal injuries when he fell from the Huey P. Long Bridge in Bridge City, Louisiana while erecting a rebar cage onto a cement column as part of JL Steel's work on the HPL Project. *See* Exhibit O, p. 32, l. 20-p. 34, l. 23; and p. 48, l. 20-p. 49, l. 20. The fact that the accident occurred in Louisiana is entitled to substantial weight per the Restatement.

Comment (e) to Restatement Section 145 provides that "[i]n the case of personal injuries or of injuries to tangible things, the place where the injury occurred is a contact that, as to most issues, plays an important role in the selection of the state of the applicable law (see §§146-

147)."      Notably, Comment (e) references Restatement Section 146, which creates a presumption in favor of the law of the state in which the injury occurred, when stating as follows:

> In an action for a personal injury, the local law of the state where the injury occurred determines the rights and liabilities of the parties, unless, with respect to the particular issue, some other state has a more significant relationship under the principles stated in §6 to the occurrence and to the parties, in which event the local law of the other state will be applied.

Further, the Fifth Circuit has acknowledged that the location of the injury is an important factor in determining the most appropriate law to apply. *See Huddy v. Fruehauf Corp.*, 953 F.2d 955, 957 (5th Cir. 1992). As such, this Court should give deference to the locality of the injury—Louisiana—when determining the choice of law issue.

### (ii)      The Conduct Causing the Injury Occurred in Louisiana

The injury in this case was caused by conduct immediately preceding Decedent's fall from the Huey P. Long Bridge **in Louisiana**. To the extent Plaintiffs attempt to attribute the cause of the injury to any design or engineering work, no design or engineering work on the Project occurred in Texas, and the Plaintiffs have not alleged that any such work occurred in Texas.

That both the injury and the cause of the injury occurred in Louisiana is, for all practical purposes, determinative according to the Restatement, which further states:

> So, for example, a state has an obvious interest in regulating the conduct of persons within its territory and in providing redress for injuries that occurred there. **Thus, subject only to <u>rare exceptions</u>, the local law of the state where conduct and injury occurred will be applied** to determine whether the actor satisfied the minimum standards of acceptable conduct and **whether the interest affected by the actor's conduct was entitled to legal protection** (see §§146-147).

17

Restatement §145 cmt. (d) (emphases added).  Comment (d) to Section 145 also directs the analysis to Section 146's presumption in favor of the law of the state of the injury.

### *(iii)     Decedent Resided in Louisiana*

Subsection (c) from Restatement Section 145 addresses the domicile, residence, nationality, place of incorporation and place of business of the parties.  As to a choice between Louisiana and Texas law, only the residence component of this factor is applicable here, as the others do not implicate either Texas or Louisiana.

With respect to residency, the evidence demonstrates that Decedent resided in Louisiana while working on the Huey P. Long Bridge Widening Project.  Mr. Rodriguez testified that Decedent and his girlfriend were living with Mr. Rodriguez and his wife in Louisiana.  Ex. "O" at p. 54, l. 22-p. 55, l. 2.   Thus, at the time of his death, Decedent resided in Louisiana. Decedent's residence at the time of his death controls his residence for choice of law purposes. *See Huddy Fruehauf Corp.*, 953 F.2d at 957.  Therefore, Decedent's residence at the time of his accident favors an application of Louisiana law.

The domicile, nationality, place of incorporation and place of business components of Subsection (c) are not applicable here because they involve states and countries other than Louisiana and Texas.  Decedent was not a citizen of Texas or any other state because he was not admitted to the United States for permanent residence.  *See* Exhibit N.  Plaintiffs are nationals, citizens and residents of Mexico.  *See* Exhibits L and M.  KECO is a Delaware corporation with its principal place of business in Omaha, Nebraska.  *See* Exhibit I.  Notably, KECO has no agent for service of process in the State of Texas.  *See id.*  Accordingly, these components are not entitled to any weight.  The only relevant consideration points to Louisiana law.

### (iv)    *The Relationship of the Parties is Centered in Louisiana*

Subsection (d) from Restatement Section 145 considers the place where the relationship, if any, between the parties is centered.  Here, Decedent did not have a relationship with KECO, which performed limited engineering services on the Project for KMTC JV.  The only possible connection Decedent had with KECO was through his work on the HPL Project, which occurred in Louisiana.   With respect to the Plaintiffs, they had no relationship with KECO prior to the accident.  The overall relationship between the parties consists of an accident that occurred in Louisiana.  Consequently, this factor also weighs in favor of the application of Louisiana law.

Therefore, all four contacts outlined in Restatement Section 145 direct an application of Louisiana law to Plaintiffs' claims for wrongful death and survival, as the place of injury, place of conduct, place of residency, and place of day-to-day relationship between the parties involve Louisiana rather than Texas.

### D.    Restatement Section 6 Favors an Application of Louisiana Law

Restatement Section 6 considers a state's policy interests in a choice of law analysis, as well as overall uniformity in an application of choice of law principles.  In addition, Section 6 considers the "protection of justified expectations" and the "basic policies underlying the particular field of law."  Restatement §6(2)(d) and (e).  Here, the policy interests at play favor an application of Louisiana law because Texas has no overriding interest in applying Texas law to wrongful death and survival claims arising out of an accident occurring in Louisiana, where none of the involved parties are citizens or residents of Texas.

### (1)    *Plaintiffs have No Justifiable Expectation of the Application of Texas Law*

Plaintiffs do not have a reasonable expectation that Texas law would apply to their claims, as Plaintiffs are Mexican citizens living in Mexico.  Moreover, Texas has no overriding interest in having its law applied to Plaintiffs' wrongful death and survival claims because

19

Plaintiffs are not Texas citizens.  Thus, Texas as the forum state does not have a policy interest in providing Plaintiffs with a remedy for wrongful death and/or survival or awarding punitive damages to any of the Plaintiffs for an incident that occurred in Louisiana.

(2)     *There are No Policy Reasons Favoring the Application of Texas Law*

Comparatively, based on the facts here, there are no policy reasons favoring an application of Texas law to Plaintiffs' wrongful death and survival claims.  Decedent was living and working in Louisiana at the time of his injury.  Furthermore, since the June 12, 2009 incident, all of the civil, law enforcement and administrative investigations by local, state and federal authorities have been conducted in Louisiana.  The investigating authorities include the Jefferson Parish Sheriff's Office, who performed the initial accident investigation as a first responder, and the accident investigation conducted by the U.S. Department of Labor Occupational Safety and Health Administration ("OSHA") in Louisiana.  Witnesses have been interviewed and deposed in Louisiana, and all accident site evidence has been preserved in Louisiana in accordance with the Evidence and Site Control Agreement.  *See* OSHA and KMTC Evidence and Site Control Agreement of June 15, 2009 attached as **Exhibit Q.**

Moreover, the State of Louisiana has been involved in the investigation, as the Project is a state-funded construction project that requires eighty percent (80%) of JL Steel's workforce employed on the Project to be Louisiana residents.  *See* Exhibit D at Article 3.

(3)     *Predictability Favors the Application of Louisiana Law*

The policy interests related to wrongful death and survival claims focus on the location of the injury.  Thus, from a predictability standpoint, an application of Louisiana law is justified based on the facts before the Court.  *See Gauthier,* 644 F.Supp.2d at 840.  In *Gauthier*, plaintiffs sued for wrongful death after an Amtrak train traveling on a Union Pacific track struck the

vehicle of Larry Gauthier, decedent, at the "Eddy Street crossing" in Vinton, Louisiana.  *Id.* at 829-30.  After applying the "most significant relationship" factors to the facts and determining that Louisiana law applied, the Court in *Gauthier* noted, "[a]ll key elements of the Plaintiffs' allegations center around the Eddy Street crossing."  *Id.* at 840.  Further, the Court stated, "the City of Vinton's involvement with the Eddy Street crossing and Union Pacific's history with the Eddy Street crossing (which the Plaintiffs emphasize as part of their case), put the crossing, located in Louisiana, at the center of the case."  *Id.*  Thus, the Court determined that the only relationship the case had with Texas was the fact that Union Pacific conducted business in Texas and a number their employees were reportedly located in Texas.  *Id.*

Likewise, here, all key elements of the Plaintiffs' allegations revolve around the construction site in Bridge City, Louisiana.  The only relationship to Texas is the fact that Decedent's employer, JL Steel, maintains an office in Texas.  However, JL Steel also maintains an office in Louisiana and currently has other ongoing construction projects as a subcontractor for Kiewit in Louisiana.  Ex. "D", p. 15, 278.  Further, JL Steel has been dismissed from the case and is no longer a party to this proceeding.

### E. Louisiana has the Most Significant Relationship to Plaintiffs' Wrongful Death and Survival Claims

All of the Restatement factors weigh in favor of applying Louisiana law to Plaintiffs' wrongful death and survival claims.  The injury and conduct underlying the injury occurred in Louisiana.  The Decedent was a resident of Louisiana at the time of his injury.  To the extent the parties can be construed as having a relationship, it is based upon an accident that occurred in Louisiana.   Further, Texas has virtually no relationship to the Plaintiffs' claims.  Likewise, Texas has no overriding policy interest in having its law applied to Plaintiffs' wrongful death and

survival claims.   Therefore, Louisiana has the most significant relationship to Plaintiffs' wrongful death and survival claims.

### F.   Louisiana Law Applies to Plaintiffs' Wrongful Death and Survival Claims

Because it has the most significant relationship to Plaintiffs' wrongful death and survival claims, Louisiana law governs these claims.   Application of Louisiana law in this case establishes that Plaintiffs exclusively assert claims for wrongful death and survival, and requires the dismissal of the Parents' and the Estate's claims, as well as all claims of punitive damages, which are not recoverable under Louisiana law.

### (1)   *Plaintiffs' Negligence Claims are Claims for Wrongful Death and Survival*

In the 3rd Complaint, Plaintiffs characterize their causes of action as being based on negligence and *res ipsa loquitor*.   Applying Louisiana law, Plaintiffs' negligence claims are actually claims for wrongful death and survival under Articles 2315.1 and 2315.2 of the Louisiana Civil Code.   Article 2315 of the Louisiana Civil Code provides the general negligence cause of action.   Articles 2315.1 and 2315.2 provide the survival and wrongful death causes of action, respectively.   As discussed, *infra*, the right to recover under Articles 2315.1 and 2315.2 is limited to specific classes of beneficiaries.   Parties who do not qualify under Articles 2315.1 and 2315.2 may not bring claims for wrongful death under Article 2315.   *See Whatley*, 178 So.2d at 441 (holding that mother, illegitimate children and concubine of decedent, who did not qualify under Articles 2315.1 or 2315.2, could not proceed under Article 2315 to recover for the wrongful death of a decedent).   "It is no longer open to argument that a wrongful death gives rise to only one action, for the suffering of the deceased and of his survivors."   *Id.*   Therefore, Plaintiffs may not circumvent the beneficiary limitations of Louisiana's wrongful death and survival statutes by couching their claims in terms of general negligence.

*Res ipsa loquitor* is not an independent cause of action.  It is a rule of circumstantial evidence. *Walker*  No further consideration need be given to this alleged claim.

### G.     The Parents and the Estate have No Standing to Assert Wrongful Death or Survival Claims under Louisiana Substantive Law

Under Louisiana law, neither the Parents nor the Estate has standing to assert wrongful death or survival claims against KECO.  Louisiana Civil Code Articles 2315.1 and 2315.2 set forth a hierarchy of beneficiaries who can recover damages in a survival action and a wrongful death suit, respectively.  "It is well settled that the right[s] of action created by [Articles 2315.1 and 2315.2] may be extended only to the statutorily designated beneficiaries enumerated in the article[s] and these classes of beneficiaries must be strictly construed." *Craig v. Scandia, Inc.,* 634 So.2d 944, 945-46 (La. App. 2 Cir. 3/30/94) (citing *Roche v. Big Moose Oil Field Truck Service,* 381 So.2d 396 (La. 2/15/80)); *see also Ruffin v. Leevac Corp.,* 543 So.2d 626 (La.App. 1 Cir. 5/16/89), *writ denied,* 548 So.2d 330 (La. 1989); *Allen v. Burrow,* 505 So.2d 880 (La.App. 2 Cir. 4/1/87), *writ denied,* 507 So.2d 229 (La. 6/5/87).  Courts have no authority to judicially expand the classes of beneficiaries identified in Articles 2315.1 and 2315.2.  *See Estate of Birch v. Hancock Holding Co.*, 39 So.3d 742, 749 (La. App. 1 Cir. 5/7/10).

The classes of beneficiaries and the applicable hierarchy are the same under both statutes, as set forth below:

> Survival action.
>
> A. If a person who has been injured by an offense or quasi offense dies, the right to recover all damages for injury to that person, his property or otherwise, caused by the offense or quasi offense, shall survive for a period of one year from the death of the deceased in favor of:
> (1) The surviving spouse and child or children of the deceased, or either the spouse or the child or children.
> (2) The surviving father and mother of the deceased, or either of them *if he left no spouse or child surviving*.

> (3) The surviving brothers and sisters of the deceased, or any of them, if he left no spouse, child, or parent surviving.
> (4) The surviving grandfathers and grandmothers of the deceased, or any of them, if he left no spouse, child, parent, or sibling surviving.

LA. CIV. CODE ANN. art. 2315.1 (emphasis added).

> Wrongful death action.
>
> A. If a person dies due to the fault of another, suit may be brought by the following persons to recover damages which they sustained as a result of the death:
> (1) The surviving spouse and child or children of the deceased, or either the spouse or the child or children.
> (2) The surviving father and mother of the deceased, or either of them *if he left no spouse or child surviving*.
> (3) The surviving brothers and sisters of the deceased, or any of them, if he left no spouse, child, or parent surviving.
> (4) The surviving grandfathers and grandmothers of the deceased, or any of them, if he left no spouse, child, parent, or sibling surviving.

LA. CIV. CODE ANN. art. 2315.2 (emphasis added).

Further, the rights are granted "in order of exclusionary preference," which means that a lower class cannot recover unless there are no members of a higher class. *See Estate of Birch,* 39 So.3d at 747. Specifically, where the decedent leaves a spouse or child, the decedent's parents may not assert a claim for wrongful death or survival. *See* LA. CIV. CODE ANN. art. 2315.1 and LA. CIV. CODE ANN. art. 2315.2; *see also Jenkins v. Mangano,* 774 So.2d 101, 105 (La. 12/4/00); *Alexander v. Wilson*, 640 So.2d 687, 689 (La. App. 3 Cir. 6/1/94); *Falcon v. Berwick*, 885 So.2d 1222, 1224 (La. App. 1 Cir. 6/25/04). In this case, Decedent is survived by two members of the primary class of beneficiaries—his Wife and Child. Therefore, the Parents lack standing to assert claims for wrongful death and survival under Louisiana law. Accordingly, the Parents' wrongful death and survival claims must be dismissed. Because the Parents do not and cannot

assert any other claims against KECO or M&M (except for the barred punitive damage claim discussed below), the Parents must be dismissed entirely from this lawsuit.

Likewise, the Estate's claims are subject to dismissal because the estate of a decedent is not included in any of the enumerated categories of beneficiaries under either statute. "To recover under a claim for wrongful death and survival, a plaintiff must fall within the class of persons designated as a beneficiary as prescribed by La. Civ. Code arts. 2315.1 and 2315.2." *Turner v. Busby*, 883 So.2d 412, 416 (La. 9/9/04). Thus, the Estate has no standing to assert wrongful death or survival claims. *See Estate of Francis v. City of Rayne*, 966 So.2d 1105, 1118 (La. App. 3 Cir. 10/3/07) (holding that award of general damages for wrongful death to decedent's estate was in error); *see also Turner*, 883 So.2d at 416 (limiting recovery for wrongful death and survival claims to designated beneficiary classes); *Estate of Birch,* 39 So.3d at 747("These rights [survival action and wrongful death action] do not pass through the victim's succession. Rather, these rights are granted by special statute to specified survivors in order of exclusionary preference, and in the absence of any of the specified survivors, the rights are not transmitted to any other persons"). The Estate asserts no other claims against KECO or M&M. Therefore, all of the Estate's claims and the Estate itself must be dismissed.

### H.     Plaintiffs' Claims for Punitive Damages are Barred

Plaintiffs' claims for punitive damages are also subject to Louisiana law. The remedy of punitive damages is predicated upon Plaintiffs' wrongful death and survival claims, which are governed by Louisiana law. *See Gauthier*, 644 F.Supp.2d at 844 (holding that punitive damages claims were subject to Louisiana law where underlying tort claims were governed by Louisiana law).

Moreover, Louisiana has a general public policy against punitive damages. *See Ross v. Conoco, Inc.*, 828 So.2d 546, 555 (La. 10/15/02).   "A state may decide that the benefits in regulating behavior by imposing punitive damages are outweighed by the danger of speculative jury awards.  That conclusion is a legitimate interest which a state may assert in administering its judicial system." *Karavokiros v. Indiana Motor Bus Co.*, 524 F.Supp. 385, 387 (E.D. La. 1981). Louisiana's interest certainly outweighs any interest that Texas could possibly have in awarding punitive damages against corporate entities that do not conduct business in Texas and in connection with an accident that neither occurred in Texas nor arose out of any conduct occurring in Texas.

In Louisiana, "punitive or other penalty damages are not allowable unless expressly authorized by statute." *Ross*, 828 So.2d at 555.  The only statutes permitting the recovery of punitive damages in Louisiana pertain to cases involving underage pornography, drunk driving, and child molestation, none of which is alleged here. *See* LA. CIV. CODE ANN.  art. 2315.3, art. 2315.4, and art. 2315.7, respectively.   Therefore, all of the Plaintiffs' claims for punitive damages must be dismissed as a matter of law.

## VII.    CONCLUSION

KECO is entitled to a declaration that Louisiana law applies to Plaintiffs' wrongful death and survival claims, dismissal of the Parents' and the Estate's wrongful death and survival claims and all claims for punitive damages, and dismissal of the Parents and the Estate from this proceeding.  The Parents' and the Estate's wrongful death and survival claims and all of the Plaintiffs' punitive damages claims are barred under Louisiana substantive law, which is applicable under Texas choice of law rules.   Those rules call for the application of the law of the state with the most significant relationship to the occurrence and the parties.   In this case,

Louisiana is the state with the most significant relationship and, therefore, the Plaintiffs' wrongful death, survival and punitive damages claims are subject to Louisiana law.

Neither the Estate nor the Parents have standing to assert claims for wrongful death or survival under Louisiana law.  A decedent's estate is not among the categories of beneficiaries entitled to assert claims for wrongful death or survival.  Likewise, parents may not recover damages for wrongful death or survival where, as in this case, the decedent is survived by a spouse or child.  Thus, the Estate's and Parents' wrongful death and survival claims must be dismissed for lack of standing.  Additionally, Louisiana law does not permit the recovery of punitive damages unless expressly authorized by statute.  None of the three statutes permitting such recovery is applicable here.  Therefore, all of the Plaintiffs' claims for punitive damages must be dismissed as a matter of law.  Because dismissal of the Parent's and the Estate's wrongful death and survival claims, along with their claims for punitive damages, would dispose of all of their claims, the Parents and the Estate must be dismissed from this lawsuit as well.

WHEREFORE Kiewit Engineering Company respectfully requests that the Court declare that Louisiana law applies to Plaintiffs' wrongful death and survival claims and dismiss (i) all claims for wrongful death and survival asserted by the Parents, Sylvia Ozuna Garcia, and Martin Reyes Adame, and the Estate of Decedent, (ii) dismiss all claims for punitive damages (iii) dismiss the Parents and the Estate from this lawsuit, with prejudice,, and (iv) grant any other relief to which KECO may be justly entitled.

By:     */s/ David S. Bland*
David S. Bland
Attorney-in-Charge
Texas Bar No.  00789021

So. Dist. of Texas Bar No. 32550
LEBLANC BLAND P.L.L.C.
1717 St. James Place, Suite 360
Houston, Texas 77056
Telephone:  (713) 627-7100
Facsimile:  (713) 627-7148

OF COUNSEL:
Beau E. LeBlanc
Texas Bar No. 24052964
Charles G. Clayton, IV
LA Bar No. 25368
LEBLANC BLAND P.L.L.C.
909 Poydras Street, Suite 1860
New Orleans, LA 70112
Telephone:  (504) 528-3088
Facsimile:  (504) 586-3419
and
C. Lee Winkelman
Texas Bar No. 24042176
So. Dist. Of Texas Bar No. 584631
LEBLANC BLAND P.L.L.C.
1717 St. James Place, Suite 360
Houston, Texas 77056
Telephone:  (713) 627-7100
Facsimile:  (713) 627-7148

**Attorneys for Defendants, Kiewit Engineering Company**

## CERTIFICATE OF SERVICE

I certify that on November 10, 2011, a true and correct copy of this document was served on all counsel of record by U.S. Mail, electronic mail or the Court's electronic filing system.

 /s/ *David S. Bland*

28