UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| GUADALUPE ARENAS VARGAS, et al., § | |
| § | |
| Plaintiffs, § | |
| § | |
| v. § | CIVIL ACTION NO. H-09-2521 |
| § | |
| KIEWIT LOUISIANA CO., et al., § | |
| § | |
| Defendants. § | |

### MEMORANDUM AND ORDER

Pending before the Court is the Motion for Partial Summary Judgment on Wrongful Death, Survival, and Punitive Damages Claims ("Motion") (Doc. No. 76) by Defendant Kiewit Engineering Company ("KECO" or "Defendant"). After considering the parties' arguments and the applicable law, the Court must grant Defendant's Motion.

I. BACKGROUND

This case arises from the death of Martin Anastacio Reyes Osuna ("Reyes"). Reyes died while working on a construction project on the Huey P. Long Bridge in Bridge City, Louisiana. At the time, Reyes was an employee of JL Steel Reinforcing, LLC ("JL Steel"). Plaintiffs state that the injuries causing Reyes' death were sustained while Reyes and other JL Steel employees were working on a steel rebar cage. The employees climbed to the top of the rebar cage to release it from a crane that had placed the cage in place on top of the pier. The cage crashed to the ground, killing Reyes and another JL Steel employee.

The construction project was a joint venture of Kiewit, Massman, and Traylor, along with a company they had jointly formed for purposes of the bridge project, Kiewit Massman Traylor Constructors ("KMTC"). KMTC contracted with the Louisiana Department of Transportation

and Development ("LADOTD") to widen the bridge and subcontracted with JL Steel to perform a portion of the contract. At the time of his death, Reyes was a citizen of Mexico. He was temporarily living in Louisiana during the construction project, but Plaintiffs contend that he was domiciled in Texas.

Plaintiff Guadalupe Arenas Vargas ("Arenas Vargas") brings suit individually as Reyes's wife, as representative of Reyes, and as next friend of Zaid Martin Reyes Arenas ("Reyes Arenas"), Reyes's son. Plaintiffs Juana Sylvia Ozuna Garcia ("Ozuna Garcia") and Martin Reyes Adame ("Reyes Adame") bring suit as Reyes's parents. Plaintiffs are all citizens of Mexico. Their Amended Complaint alleges that Defendants are liable for Reyes's death on the basis of negligence and the doctrine of res ipsa loquitor. Defendants contend that this claim is more appropriately seen as one for wrongful death and/or survival, and Plaintiff does not dispute this point. (Resp., Doc. No. 79, ¶¶ 2–3.)

The Court has previously dismissed Plaintiffs' claims against JL Steel (Doc. No. 19) and granted summary judgment to Defendants KMTC and the individual joint venturers, Kiewit Louisiana Co. ("Kiewit"), Massman Construction Co. ("Massman"), and Traylor Bros., Inc. ("Traylor") (Doc. No. 71). The Court also denied Defendant Modjeski and Masters, Inc.'s Motion to Dismiss (Doc. No. 80), and thus Modjeski and Masters and KECO are the only remaining Defendants. KECO moves for partial summary judgment on Ozuna Garcia and Reyes Adame's claim, on the basis that parents do not have standing to sue under Louisiana law if there is a surviving spouse or child. KECO also states that Plaintiffs' punitive damages claims are barred by Louisiana law. Plaintiffs agree that the relief requested is appropriate if the Court determines that Louisiana law applies to their wrongful survival claims, and request leave to amend their complaint if the Court so rules. (Resp., Doc. No. 79, ¶¶ 2–3.)

2

## II. LEGAL STANDARD

### A. Motion for Summary Judgment

A motion for summary judgment requires the Court to determine whether the moving party is entitled to judgment as a matter of law based on the evidence thus far presented. Fed. R. Civ. P. 56(c). Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Kee v. City of Rowlett*, 247 F.3d 206, 210 (5th Cir. 2001) (quotations omitted). A genuine issue of material fact exists if a reasonable jury could enter a verdict for the non-moving party. *Crawford v. Formosa Plastics Corp.*, 234 F.3d 899, 902 (5th Cir. 2000). The Court views all evidence in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Id.*; *see also Harvill v. Westward Communications*, L.L.C., 433 F.3d 428, 436 (5th Cir. 2005) (court may not make credibility determinations or weigh the evidence at the summary judgment stage). Hearsay, conclusory allegations, unsubstantiated assertions, and unsupported speculation are not competent summary judgment evidence. Fed. R. Civ. P. 56(e)(1); *see, e.g.*, *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996); *McIntosh v. Partridge*, 540 F.3d 315, 322 (5th Cir. 2008); *see also Little v. Liquid Air Corp.*, 37 F.3d 1069, 1975 (5th Cir. 1994) (noting that a non-movant's burden is "not satisfied with 'some metaphysical doubt as to the material facts'") (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).

Here, however, where the sole issue involves the Court's determination of what law applies, the traditional standard for summary judgment does not apply. *See Nunez v. Hunter Fan Co.*, 920 F. Supp. 716, 717–18 (S.D. Tex. 1996). Rather, the choice of law determination is a

question of law. *See Woodfield v. Bowman*, 193 F.3d 354, 358 (5th Cir. 1999); *Mayo v. Hartford Life Ins. Co.*, 220 F. Supp. 2d 714, 730 & n.37 (S.D. Tex. 2002); *Duncan v. Cessna Aircraft Co.*, 665 S.W.2d 414, 421 (Tex. 1984). "[T]he facts on which choice-of-law depends are properly determined by the Court after considering the affidavits, depositions, and other matters submitted by the parties." *Nunez*, 920 F. Supp. at 718 (citing *Vaz Borralho v. Keydril Co.,* 696 F.2d 379, 386–87 (5th Cir. 1983), *overruled on other grounds by In re Air Crash Disaster Near New Orleans, La.,* 821 F.2d 1147 (5th Cir. 1987), *vacated on other grounds by Pan Am. World Airways, Inc. v. Lopez,* 490 U.S. 1032 (1989)). Thus, the Court must disregard Plaintiffs' arguments urging the Court to deny summary judgment because an issue of material fact exists, and instead focus on whether the parties have presented sufficient evidence to make the choice of law determination.

### B. Choice of Law[1]

District courts sitting in diversity apply the choice-of-law rules of the state in which they sit. *Klaxon v. Stentor Elec. Mfg., Inc*., 313 U.S. 487, 496 (1941); *Mayo v. Hartford Life Ins. Co.,* 354 F.3d 400, 403 (5th Cir. 2004); *Smith v. EMC Corp.*, 393 F.3d 590, 597 (5th Cir. 2004). Under Texas law, when presented with a choice of law question, a court must first determine whether there is a conflict between the laws of the jurisdictions whose law potentially controls, and only when such a conflict is present should the Court conduct a choice of law analysis. *See Duncan v. Cessna Aircraft Co.*, 665 S.W.2d 414, 419 (Tex. 1984); *Tobin v. AMR Corp.*, 637 F. Supp. 2d 406, 412 (N.D. Tex. 2009).

When there is a conflict, Texas courts determine the appropriate choice of law by determining which state, with respect to the issues, has the most significant relationship to the

---

[1] The Court has previously engaged in the choice of law analysis in its Order granting Defendants' Motion for Summary Judgment (Doc. No. 71). The Court largely repeats the same standard here, although addressing the differences due to the dismissed defendants and the different issues at stake.

occurrence and the parties.  In doing so, they apply the "most significant relationship" test provided by the Restatement (Second) of Conflict of Laws (1971) (hereinafter "Restatement"). *Torrington Co. v. Stutzman*, 46 S.W.3d 829, 848 (Tex. 2000); *Gutierrez v. Collins*, 583 S.W.2d 312, 318 (Tex. 1979).  For tort cases, the Restatement instructs courts to consider the following contacts in determining which state possesses the most significant relationship:

> (a) the place where the injury occurred,
> (b) the place where the conduct causing the injury occurred,
> (c) the domicile, residence, nationality, place of incorporation and place of business of the parties, and,
> (d) the place where the relationship, if any, between the parties is centered.

Restatement § 145.  These contacts are to be evaluated according to their relative importance with respect "*to the particular substantive issue to be resolved.*"  *Hughes Wood Products, Inc. v. Wagner*, 18 S.W.3d 202, 205 (Tex. 2000) (citing Restatement § 145(1)) (emphasis in original). The number of contacts is less important than the qualitative nature of those contacts as affected by the policy factors of Section 6 of the Restatement.  *See Gutierrez*, 583 S.W.2d at 318–19. Indeed, Section 6 directs courts to consider the contacts involved in the case in light of the following general principles:

> (a) the needs of the interstate and international systems,
> (b) the relevant policies of the forum,
> (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,
> (d) the protection of justified expectations,
> (e) the basic policies underlying the particular field of law,
> (f) certainty, predictability and uniformity of result, and
> (g) ease in the determination and application of the law to be applied.

Restatement § 6.

     Additionally, Section 146, governing personal injuries, and section 175, governing wrongful death, create a presumption that

> the local law of the state where the injury occurred determines the rights and liabilities of the parties, unless, with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the occurrence and the parties, in which event the local law of the other state will be applied.

Restatement §§ 146, 175; *see also Enterprise Products Partners, L.P. v. Mitchell*, 340 S.W.3d 476, 480 (Tex. App.—Houston [1 Dist.] 2011).

### III.   ANALYSIS

In this case, the parties agree that there is a conflict between Louisiana and Texas law as it relates to this case. Specifically, with respect to Defendant's Motion, the states' laws differ with regard to: 1) when the parents of a deceased individual have standing to bring a survival or wrongful death action, and 2) whether Plaintiffs may recover punitive damages. With regard to the former, Louisiana Civil Code Articles 2315.1 and 2315.2 establish a hierarchy of beneficiaries who can recover damages in a survival action and wrongful death suit, respectively. Parties who do not qualify under Articles 2315.1 and 2315.2 may not bring claims for wrongful death under Article 2315, the negligence cause of action. As long as there is a surviving spouse and/or child, no one else may recover under Louisiana law. La. Civ. Code Ann. art. 2315.1, 2315.2. Texas law provides that other classes of beneficiaries may recover damages. Tex. Civ. Prac. & Rem. Code Ann. §§ 71.004, 71.021. With respect to the damages that plaintiffs may recover, Louisiana law does not allow the recovery of punitive damages except as authorized by statute. *Ross v. Conoco, Inc.*, 828 So.2d 546, 555 (La. 2002). The legislature has authorized punitive damages for cases involving child pornography, drunk driving, and child molestation. La. Civ. Code Ann. art. 2315.3, 2315.4, 2315.5. Texas law generally permits punitive damages in tort cases, subject to a cap of the greater of $200,000 or two times the amount of economic damages plus an amount equal to noneconomic damages, not to exceed $750,000. Tex. Civ.

Prac. & Rem. Code Ann. §41.008(a)–(b).[2] Accordingly, the Court must decide which state's law to apply. The Court will first analyze the relevant contacts under Restatement § 145 and then analyze them in light of the general principles outlined in § 6.

### A. The Place Where the Injury Occurred

It is undisputed that the injury occurred in Louisiana. Reyes sustained fatal injuries when he fell from the Huey P. Long Bridge in Bridge City, Louisiana while erecting a rebar cage on the bridge.

### B. The Place Where the Conduct Causing the Injury Occurred

The injuries causing Reyes' death were sustained in the course of his work as part of a construction crew on the Huey P. Long Bridge in Louisiana. However, Plaintiffs' claims not only encompass negligence at the construction site (Am. Compl., Doc. No. 51, ¶¶ 15(a)–15(h)), but also negligence in the design of the rebar cage and column guying system. (*Id.* ¶ 15(i).) They state that they do not know where this designing took place, as "it is still unclear which Defendants played what part in the design and engineering of the rebar cage and guying system." (Resp., Doc. No. 54, ¶ 14.) Plaintiffs do not allege that any of this design work took place in Texas, but only that none of the entities responsible for the engineering and design decisions was located in Louisiana. Of the nine acts and omissions identified by Plaintiffs in their Amended Complaint, eight discuss negligence occurring on the job site, such as failure to provide training and failing to ensure that safe work practices were followed, and only one involves the design of the rebar cage and column guying system. (Am. Compl. ¶ 15.) Even accepting as true Plaintiffs'

---

[2] Additionally, Defendant notes that there is a difference in the states' applications of contributory negligence—Texas law contains a total bar to recovery for any plaintiff found to be greater than 50 percent liable, whereas Louisiana law provides for a simple reduction of the damages award pursuant to the plaintiff's degree of fault, regardless of how great that percentage is. However, the Court does not consider this issue in this Order, as the parties did not fully brief the choice of law analysis with respect to this issue. The Court must consider each issue separately in determining which law applies. *See Hughes Wood Products, Inc. v. Wagner*, 18 S.W.3d 202, 205 (Tex. 2000). *See also* Restatement § 164 (relating to contributory fault).

contention that none of the design decisions were made in Louisiana, this factor still weighs in favor of Louisiana.

### C. The Domicile, Residence, Nationality, Place of Incorporation, and Place of Business of the Parties

Defendant KECO is a Delaware corporation with its principal place of business in Omaha, Nebraska, and has no agent for service of process in the State of Texas. (Doc. No. 76-10.) The only other remaining Defendant, Modjeski and Masters, is domiciled in Pennsylvania and does not have an office in Texas. (Doc. Nos. 76-11, 76-12.) It does, however, have a registered office in Louisiana. (Doc. No. 76-12.)

Plaintiffs are citizens of Mexico. Plaintiffs do not dispute that, with the exception of Reyes, they are also domiciled in and are residents of Mexico. At the time of his death, Reyes was a resident of Louisiana (Angel Corona Felipe Rodriguez Depo., Doc. No. 76-16, at 54–55; Resp., Doc. No. 54, ¶ 7.) Plaintiffs contend that he was domiciled in Austin, Texas. (*Id.*)

"Under Texas law, a "domicile" is defined as (1) an actual residence that is (2) intended to be a permanent home." *Bain v. Honeywell Int'l, Inc.*, 257 F. Supp. 2d 872, 876 (E.D. Tex. 2002) (citing *Snyder v. Pitts,* 241 S.W.2d 136, 139 (Tex. 1951)). "The Texas Supreme Court has construed "home" as meaning a 'true fixed and permanent home and principal establishment, and to which, whenever he is absent, he has the intention of returning.'" *Id.* (quoting *Synder*, 150 S.W.2d at 139; *Ex Parte Blumer,* 27 Tex. 734 (1865)). "There is a presumption of continuing domicile that applies whenever a person relocates. In order to defeat the presumption and establish a new domicile (the 'domicile of choice'), the person must demonstrate both (1) residence in a new state, and (2) an intention to remain in that state indefinitely." *Acridge v. Evangelical Lutheran Good Samaritan Soc.*, 334 F.3d 444, 448 (5th Cir. 2003))

Although the Court requested supplemental briefing on the issue of Mr. Reyes' domicile (Doc. No. 87), Plaintiffs did submit any additional argument or evidence on this issue. It is undisputed that Reyes lived in Mexico until he came to the United States in 2005, at age 22. (Guadalupe Arenas Vargas Depo., Doc. No. 88-1, at 19.) Plaintiffs have presented no evidence showing that Reyes intended to stay in Texas indefinitely. They point only to his wife's interrogatory answer indicating that his address was in Texas, as well as his employment application, U.S. government employment forms, and his Mexican ID card with his Austin address. These documents do not evince a clear intent to remain in Texas.

Reyes' wife, young child, and family remained in Mexico. Defendant also notes that Reyes was a Mexican citizen, and there is no evidence he sought to obtain permanent resident status. While immigration status is not dispositive of domicile intent, it is one factor that may be considered. *Fernandez v. Bustamante*, 305 S.W.3d 333, 343 (Tex. App.—Houston [14 Dist.] 2010, no pet.). When domicile is challenged, "the burden rest[s] on [the plaintiff] to show by a preponderance of the evidence that he was a citizen of that State." *Preston v. Tenet Healthsystem Memorial Medical Center, Inc.*, 485 F.3d 793, 798 (5th Cir. 2007) (quoting *Welsh v. American Sur. Co. of N.Y.*, 186 F.2d 16, 17 (5th Cir. 1951). Plaintiffs have failed to submit evidence to meet this burden, and thus have not overcome the presumption of Reyes' domcile in Mexico.

Accordingly, under this factor, it would seem that the greatest contacts are with Mexico, as Plaintiffs are all Mexican nationals and domiciled in Mexico. Each Plaintiff, with the exception of Reyes, was a current resident of Mexico as well. However, no party seeks to invoke the law of Mexico, and thus the Court will not consider it. *See Menendez ex rel. Menendez v. Wal-Mart Stores Inc.*, No. 1:10-CV-53, 2011 WL 2037006, at *9 (N.D. Ind. Mar. 30, 2011)

9

(applying Texas choice-of-law analysis) (citing *Bain*, 257 F. Supp. 2d at 878–79; *Perkins v. Dynasty Grp. Auto*, No. 08-01-00493-CV, 2003 WL 22810452, at *4 (Tex. App.—El Paso Nov. 25, 2003, no pet.). Louisiana was the place of Reyes' residence and a place of business for at least one Defendant. The Defendants' places of incorporation were in neither state. This factor weighs in favor of Louisiana.

### D. The Location of the Relationship Between the Parties

Plaintiffs state that they have no relationship with the two remaining Defendants. (Resp., Doc. No. 54, ¶ 16.) Defendant KECO performed only limited engineering services on the project, and thus it contends that its only relationship with Plaintiffs is through the work on the project with Reyes. This indirect relationship, centered on the site of the injury, is one that has been recognized in other similar cases. *See Menendez*, 2011 WL 2037006, at *8; *Beatty v. Isle of Capri Casino, Inc.*, 234 F. Supp. 2d 651, 655–56 (E.D. Tex. 2002).

### E. Policy Considerations

As shown above, the Restatement § 145 factors weigh strongly in favor of Louisiana. The Court will now apply these factors and those outlined in Restatement § 6[3] to each of the specific issues raised in Defendant's Motion.

#### 1. Standing of Reyes' Parents

The Fifth Circuit has held that the location of injury is an "important factor" in determining the most appropriate law to apply. *Huddy v. Fruehauf Corp.*, 953 F.2d 955, 957 (5th Cir. 1992). Indeed, under the Restatement, in tort cases, "the applicable law will usually be the

---

[3] Courts must consider: (a) the needs of the interstate and international systems; (b) the relevant policies of the forum; (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue; (d) the protection of justified expectations; (e) the basic policies underlying the particular field of law; (f) certainty, predictability and uniformity of result; and (g) ease in the determination and application of the law to be applied. Restatement § 6.

local law of the state where the injury occurred." Restatement § 156(2). Comment e to § 145 of the Restatement explains:

> In the case of personal injuries or of injuries to tangible things, the place where the injury occurred is a contact that, as to most issues, plays an important role in the selection of the state of the applicable law (see §§ 146–147). . . . This is so for the reason among others that persons who cause injury in a state should not ordinarily escape liabilities imposed by the local law of that state on account of the injury.

Restatement § 145 cmt. e. "Thus, with respect to tort claims, the Restatement emphasizes, but does not mandate, the choice of state substantive law with the greatest connection to the injury plaintiff seeks to remedy." *Jelec USA, Inc. v. Safety Controls, Inc.,* 498 F. Supp. 2d 945, 952 (S.D. Tex. 2007). Similarly, § 175 provides that "[i]n an action for wrongful death, the local law of the state where the injury occurred determines the rights and liabilities of the parties unless, *with respect to the particular issue*, some other state has a more significant relationship under the principles stated in § 6 to the occurrence and the parties." Restatement § 175 (emphasis added).

Plaintiffs note that this issue concerns the recovery of compensatory damages, not liability, and thus the location of the injury is less significant than it would be in the liability context. The Texas Supreme Court has stated that, "[c]onsidering the purpose of compensatory damages, contacts such as the site of the injury or where the tortious behavior occurred, which are important in determining which state's laws govern liability, are less important." *Torrington*, 46 S.W.3d at 849. However, as the Court found above, Plaintiffs are nationals, citizens, and residents of Mexico, and thus provide no explanation for why Texas would have a greater interest in protecting Plaintiffs. (Doc. Nos. 76-13, 76-14.) Additionally, Defendant KECO is a Delaware corporation with its principal place of business in Omaha, Nebraska, and has no agent for service of process in the State of Texas. (Doc. No. 76-10.) The only other remaining Defendant, Modjeski and Masters, is domiciled in Pennsylvania and does not have an office in

Texas. (Doc. Nos. 76-11, 76-12.) It does, however, have a registered office in Louisiana. (Doc. No. 76-12.) Thus, Texas also does not have a great interest in regulating Defendants' conduct. The Court finds that Louisiana law must apply to the standing issue.

### 2. Punitive Damages

The purpose of punitive damages in Texas is "punishment and deterrence." *Transportation Ins. Co. v. Moriel*, 879 S.W.2d 10, 17 (Tex. 1994). "The legal justification for punitive damages is similar to that for criminal punishment." *Id.* at 16. "In contrast, Louisiana's policy in disallowing punitive damages is to protect its domiciliaries from excessive legal liability." *Arabie v. Citgo Petroleum Corp.*, --- So. 3d ----, 2012 WL 798758, at *20 (La. 2012). "Louisiana's punitive damages law is intended to protect Louisiana tortfeasors." *Id.* As noted above, neither of the remaining Defendants has connections to Texas, so Texas would have minimal interest in punishing and deterring their conduct. The Defendants allegedly committed a tort in Louisiana. Thus, the Court finds that Louisiana also has the greatest interest in the application of punitive damages in this case.

## IV. CONCLUSION

For the reasons discussed in this order, Defendant's Motion for Partial Summary Judgment on Wrongful Death, Survival, and Punitive Damages Claims (Doc. No. 76) is **GRANTED**. The Court holds that Louisiana law applies to Plaintiffs' claims for wrongful death, survival, and punitive damages, and dismisses Plaintiffs' claims for punitive damages and the claims of Reyes' parents and the Estate. The Court allows Plaintiffs leave to amend their complaint, within 30 days, to assert their negligence claims against Defendants under the applicable Louisiana statutory provisions.

**IT IS SO ORDERED**.

**SIGNED** at Houston, Texas, on this the 26th day of March, 2012.

KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE