**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **GUADALUPE ARENAS VARGAS, et al.,** | § | **CIVIL ACTION NO. 4:09-CV-02521** |
| **Plaintiffs,** | § | |
| | § | |
| **v.** | § | **JUDGE KEITH P. ELLISON** |
| | § | |
| **KIEWIT LOUISIANA CO., et al.,** | § | |
| **Defendants.** | § | **JURY** |

<u>**MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION FOR**</u>
<u>**PARTIAL SUMMARY JUDGMENT ON PLAINTIFFS' WAGE CLAIMS**</u>

**NOW INTO COURT**, through undersigned counsel, comes Defendant, Kiewit Engineering

Company ("KECO" or "Defendant"), who submits this memorandum in support of its motion for

partial summary judgment in favor of KECO and against the plaintiffs, Guadalupe Arenas

Vargas, individually ("Wife" or "Vargas") and as representative of the Estate of Martin

Anastacio Reyes Osuna, deceased ("Estate") and as next friend of Zaid Martin Reyes Arenas

("Child"); and, Sylvia Ozuna Garcia and Martin Reyes Adame, parents of the deceased Martin

Anastacio Reyes Osuna ("Parents") (collectively, "Plaintiffs"), seeking the dismissal of all of

Plaintiffs' claims for special damages based on Martin Anastacio Reyes Osuna's past and future

lost wages, with prejudice.

# TABLE OF CONTENTS

Contents

I.     SUMMARY ............................................................................................................. 5

II.     STATEMENT OF THE ISSUES TO BE DECIDED BY THE COURT........................ 5

III.     STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDING ................. 6

IV.     LOUISIANA LAW APPLIES TO PLAINTIFFS' CLAIMS ......................................... 6

V.     BACKGROUND/FACTS ........................................................................................ 6

    A.    Summary of HPL Project and Role of Pertinent Parties ................................... 6

    B.    Plaintiffs' Pending Allegations ......................................................................... 7

    C.    Only KECO and M&M Remain as Defendants in this Case as KMTC JV, its Joint Venturers, and JL Steel Have Been Dismissed.................................................. 8

    D.    Citizenship of the Decedent ............................................................................ 8

VI.     SUMMARY JUDGMENT STANDARD ...................................................................... 9

    A.    Texas Federal Court Standard .......................................................................... 9

VII.     LEGAL ANALYSIS ............................................................................................. 10

    A.    Decedent's Undocumented Alien Immigration Status Precludes an Award of Lost Wages.............................................................................................................. 10

        1.    The IRCA Makes Criminal the Use of False Identification Documents to Obtain Employment.................................................................................................... 10

        2.    Decedent Used False Documentation to Prove Eligibility to Work in the U.S. ............ 10

        3.    Federal Immigration Regulations Preempt Conflicting State Law ................................ 11

        4.    The Award of Lost Wages is Preempted by IRCA ......................................................... 11

    B.    Alternatively, Decedent's Undocumented Worker Status Precludes an Award of U.S. Wages.............................................................................................................. 13

VIII.     CONCLUSION .................................................................................................... 15

**EXHIBITS**

**Exhibit A** – Deposition of Guadalupe Vargas

**Exhibit B** – The Memorandum and Order dated March 26, 2012

**Exhibit C** – Consular Identification Card of Decedent

**Exhibit D** – Decedent's birth certificate

**Exhibit E** – JL Steel Personnel File of Martin Anastacio Reyes Osuna


**ATTACHED AUTHORITIES**

*Rodriquez v. Kline*, 232 Cal. Rptr. 157 (Cal. Ct. App. 1986)

*Sanango v. 200 East 16th Street Housing Corp.,* 15 A.D.3d 36, 88 N.Y.S.2d 314 (N.Y.A.D. 1 Dept.2004)

*Rosa v. Partners in Progress, Inc.*, 152 N.H. 6 A.2d 994 (2005)

# TABLE OF AUTHORITIES

**Cases**

*Crawford v. Formosa Plastics Corp.*, 234 F.3d 899 (5th Cir. 2000) ............................................. 9

*Cruz v. Bridgestone/Firestone N. Am. Tire, LLC*, 2008 WL 5598439, at *7 (D.N.M. Aug. 29, 2008) ................................................................................................................................ 14

*DeCanas v. Bica*, 424 U.S. 351 (1976) .......................................................................................... 11

*Eason v. Thaler*, 73 F.3d 1322 (5th Cir. 1996) .............................................................................. 9

*Exxon Corp. v. Oxxford Clothes, Inc.*, 109 F.3d 1074 (5th Cir. 1997) .......................................... 9

*Figueroa v. Williams*, 2010 WL 5387599 (S.D. Tex. Dec. 17, 2010) .................................... 14, 15

*Garay v. Missouri Pac. R.R. Co.,* 60 F.Supp.2d 1168 (D.Kan.1999) ........................................... 14

*Hernandez-Cortez v. Hernandez*, 2003 WL 22519678, at *7 (D. Kan. Nov. 4, 2003) ............... 13

*Hoffman Plastic Compounds Inc. v. NLRB*, 535 U.S. 137 (2002) .............................. 11, 12, 13, 15

*Kee v. City of Rowlett*, 247 F.3d 206 (5th Cir. 2001) ..................................................................... 9

*Little v. Liquid Air Corp.*, 37 F.3d 1069 (5th Cir. 1994) ............................................................... 9

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d (1986) .......................................................................................................................... 9

*McIntosh v. Partridge*, 540 F.3d 315 (5th Cir. 2008) .................................................................... 9

*Minerva Avalos v. Atlas World Group, Inc.*, 2005 WL 6736327 at *3 (S.D. Miss. Apr. 4, 2005) 14

*Nyquist v. Mauclet*, 432 U.S. 1 (1977) .......................................................................................... 11

*Rodriquez v. Kline*, 232 Cal. Rptr. 157 (Cal. Ct. App. 1986) ...................................................... 13

*Rosa v. Partners in Progress, Inc.*, 152 N.H. 6 A.2d 994 (2005) ................................................. 14

*Sanango v. 200 East 16th Street Housing Corp.,* 15 A.D.3d 36, 788 N.Y.S.2d 314 (N.Y.A.D. 1 Dept.2004) ......................................................................................................................... 13, 14

*Takahashi v. Fish & Game Comm'n*, 334 U.S. 40 (1948) ............................................................. 11

*Toll v. Morena*, 458 U.S. 1 (1982) ................................................................................................ 11

*Veliz v. Rental Service Corp., USA, Inc.*, 313 F. Supp. 2d at 1319 ............................................... 12

**Statutes**

18 U.S.C. § 1546(b) ....................................................................................................................... 10

8 U.S.C. § 1324a ..................................................................................................................... passim

8 U.S.C. §§ 1324c(a)(1)-(3) .......................................................................................................... 10

U.S. Const. art. I, §8, cl. 4 ............................................................................................................. 11

**Rules**

Fed. R. Civ. P. 56(c) ........................................................................................................................ 9

Fed. R. Civ. P. 56(e)(1) .................................................................................................................... 9

## I.     SUMMARY

Plaintiffs assert claims against KECO for damages arising out of the workplace-related accident which lead to the death of Martin Anastacio Reyes Osuna ("Decedent"). Plaintiffs' Third Amended Complaint (the "3rd Complant"), ¶6. Among other remedies, Plaintiffs seek damages for loss of Decedent's wages and earning capacity. *Id.*, ¶ 21.

Guadalupe Vargas has admitted that as of June 12, 2009—the date of the accident at issue—Decedent was not a U.S. citizen and was in the United States illegally. **Ex. A**, Deposition of Guadalupe Vargas (Vargas Dep.) 72:19-73:7. There is no evidence that Decedent had a green card that authorized him to work in the United States legally. *See id.* at 72:12-14. The evidence indicates that Decedent was a Mexican citizen who entered the United States to work illegally by sneaking across the Mexican-United States border. *Id.* at 71:4-8.

An award of lost wages in this case is precluded by federal immigration law. This Court, therefore, should enter an order granting partial summary judgment against Plaintiffs on their lost wage claims against Defendant because any such award would represent compensation that Decedent could not have legally earned.

## II.     STATEMENT OF THE ISSUES TO BE DECIDED BY THE COURT

The issues before the Court are as follows: (1) whether an award of lost wages is preempted by federal immigration law, specifically the Immigration Reform and Control Act, and (2) whether, in the alternative, Plaintiffs' lost wage claims should be limited to the wages that Decedent could have lawfully earned as a Mexican citizen working in Mexico as a concrete rebar iron worker paid in Mexican currency.

## III.   STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDING

This is a wrongful death and survival case.  KECO and Modjeski and Masters, Inc. are the only two remaining defendants since the Court granted KMTC JV's Motion for Summary Judgment (Rec. No. 71) and JL Steel Reinforcing LLC's Motion to Dismiss (Rec. No. 19).  The discovery deadline is April 24, 2012, but the parties have agreed to a 30-day extension.  The trial of this matter is set for July 30, 2012.

## IV.   LOUISIANA LAW APPLIES TO PLAINTIFFS' CLAIMS

On March 26, 2012, the Court entered an order granting the Motion for Partial Summary Judgment By KECO on Wrongful Death, Survival, and Punitive Damages Claims (Rec. No. 89) (the "Order").[1]  In the Order, the Court held that Louisiana law applies to the Plaintiffs' claims for wrongful death, survival, and punitive damages.

Applying Louisiana law, the Court dismissed the Parents' and the Estate's wrongful death and survival claims, as well as all claims for punitive damages.  Only the Wife's and the Child's wrongful death and survival claims remain.  Any award of lost wages to the Wife and Child would be based on Louisiana state tort law.

## V.   BACKGROUND/FACTS

### A.  Summary of HPL Project and Role of Pertinent Parties

Plaintiffs' claims arise from a construction accident that occurred on June 12, 2009 in Bridge City, Louisiana.  On the date of the accident, Martin Anastacio Reyes Osuna, Decedent, was working for JL Steel Reinforcing, LLC ("JL Steel") on a portion of the Huey P. Long Bridge Widening Project ("HPL Project") being performed by Kiewit Louisiana Co., Massman Construction Co. and Traylor Bros., Inc., a Joint Venture d/b/a Kiewit Massman Traylor Constructors ("KMTC JV") as Contractor.

---

[1] The Memorandum and Order dated March 26, 2012 is attached hereto as **Exhibit B.**

KMTC JV's work on the HPL Project was being performed pursuant to a contract with the State of Louisiana, Department of Transportation and Development ("DOTD" or "Owner").

JL Steel executed a Subcontract with KMTC JV as the Contractor for the HPL Project on June 18, 2008, where JL Steel agreed to provide the labor necessary to pre-assemble, pre-tie and install all of the concrete reinforcing steel on the HPL Project.

KECO is an engineering firm that provided a limited scope of work on the HPL Project for KMTC JV, which work included providing rebar cage guying plans for wind loading purposes only for the Lift 2 of bridge columns EBB W2 and EBB W1.

Modjeski and Masters, Inc. ("M&M") was the engineering firm of record for the HPL Project. M&M was retained by the DOTD to design and prepare preliminary and final construction plans and prepare specifications and construction cost estimates for the HPL Project.

## B. Plaintiffs' Pending Allegations

The only Plaintiffs with claims in this case are Guadalupe Arenas Vargas, Decedent's Wife, and Zaid Martin Reyes Arenas, Decedent's Child, (brought by wife as next friend). As previously stated, the claims asserted by the Parents and the Estate have been dismissed.[2]

The most recent version of the Plaintiffs' allegations is contained in Plaintiffs' 3rd Complaint, which was filed on May 25, 2011. At that time, there were six remaining defendants:

- KMTC JV;
- Kiewit Louisiana Co. (individual joint venturer of KMTC JV);
- Massman Construction Co. (individual joint venturer of KMTC JV);
- Traylor Bros., Inc. (individual joint venturer of KMTC JV);
- KECO; and
- M&M.

---

[2] *See* Exhibit B, the Order at p. 13.

The Plaintiffs do not distinguish between the different defendants when setting forth their causes of action. *See* 3rd Complaint at ¶¶13-19. Furthermore, the Plaintiffs seek the same categories of damages against all of the listed defendants, namely, actual damages, exemplary or punitive damages, pre-judgment and post-judgment interest, court costs and any other relief to which Plaintiffs may be justly entitled. *See id.* at ¶21. The Order dismissed all claims for punitive damages.[3]

**C. Only KECO and M&M Remain as Defendants in this Case as KMTC JV, its Joint Venturers, and JL Steel Have Been Dismissed**

On August 11, 2011, this Court dismissed KMTC JV and the individual joint venturers from this case with prejudice (Rec.Doc. 71) (hereafter, "Dismissal Order") on the grounds that those defendants are immune from tort suit as statutory employers of the Decedent under the applicable Louisiana workers' compensation regime. JL Steel, Decedent's direct employer, was earlier dismissed with prejudice from this case. JL Steel's Motion to Dismiss (Rec.Doc. 17), which was unopposed by the Plaintiffs, was granted by this Court on March 4, 2010 (Rec.Doc. 19). Accordingly, only KECO and M&M remain as defendants in this case.

**D. Citizenship of the Decedent**

The evidence demonstrates that Decedent was not admitted to the United States for permanent residence. *See* Consular Identification Card of Decedent, attached hereto as **Exhibit C**. At the time of his death, Decedent was a citizen of Mexico, who was working in the United States without proper documentation. *See* Exhibit A, Vargas Dep. 71:4-8 and 72:19-73:6; **Exhibit D,** Decedent's birth certificate.

---

[3] Exhibit B, p. 13.

## VI. SUMMARY JUDGMENT STANDARD

### A. Texas Federal Court Standard

A motion for summary judgment requires the Court to determine whether the moving party is entitled to judgment as a matter of law based on the evidence thus far presented. Fed. R. Civ. P. 56(c). Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Kee v. City of Rowlett*, 247 F.3d 206, 210 (5th Cir. 2001) (internal quotations omitted). A genuine issue of material fact exists if a reasonable jury could enter a verdict for the non-moving party. *Crawford v. Formosa Plastics Corp.*, 234 F.3d 899, 902 (5th Cir. 2000). The party moving for summary judgment must demonstrate the absence of a genuine issue of material fact, but need not negate the elements of the nonmovant's case. *Exxon Corp. v. Oxxford Clothes, Inc.*, 109 F.3d 1070, 1074 (5th Cir. 1997). If the movant meets this burden, then the nonmovant is required to go beyond its pleadings and designate, by competent summary judgment evidence, the specific facts showing that there is a genuine issue for trial. *Id.*

The Court views all evidence in the light most favorable to the nonmoving party and draws all reasonable inferences in that party's favor. *Id.* Hearsay, conclusory allegations, unsubstantiated assertions, and unsupported speculation are not competent summary judgment evidence. Fed. R. Civ. P. 56(e)(1); *see, e.g.*, *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996); *McIntosh v. Partridge*, 540 F.3d 315, 322 (5th Cir. 2008); *see also Little v. Liquid Air Corp.*, 37 F.3d 1069, 1975 (5th Cir. 1994) (noting that a non-movant's burden is "not satisfied with 'some metaphysical doubt' as to the material facts") (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)).

## VII.  LEGAL ANALYSIS

### A. Decedent's Undocumented Alien Immigration Status Precludes an Award of Lost Wages

#### 1. The IRCA Makes Criminal the Use of False Identification Documents to Obtain Employment

The payment of lost wages to an illegal alien is barred by the *Immigration Reform and Control Act ("IRCA"), 8 U.S.C. § 1324a.*  The *IRCA* is a comprehensive scheme prohibiting the employment of illegal aliens in the U.S and establishing an extensive "employment verification system."  Of particular importance here is the *IRCA*'s criminalization of the use or attempt to use any false identification for purposes of obtaining employment by an undocumented alien. *See* 8 U.S.C. §§ 1324c(a)(1)-(3); *see also* 18 U.S.C. § 1546(b).

#### 2. Decedent Used False Documentation to Prove Eligibility to Work in the U.S.

The summary judgment evidence is clear that Decedent used false identification documents to obtain employment with JL Steel in violation of the *IRCA*.  Upon being employed by JL Steel, Decedent presented JL Steel with a social security card and his Consular Identification Card as proof that he was eligible to work in the United States.  *See* **Exhibit E**, JL Steel Personnel File of Martin Anastacio Reyes Osuna.   The testimony adduced during Plaintiff Vargas' deposition, however, demonstrates that Decedent was an undocumented alien, without authorization to work in the U.S.   *See* Ex. A, Vargas Dep. 71:4-8 and 72:19-73:6.   Thus, Decedent knowingly presented JL Steel with fake identification to gain employment. Ex., I.  In her deposition, Vargas testified that Decedent had no papers, which made his travel to and from Mexico from the United States "difficult" because he was crossing the border illegally. Ex. A, at Vargas Dep. 71:4-8 and 72:19-73:6.   In so doing, Decedent violated the express provisions of the *IRCA*, exposing himself to criminal prosecution.

### 3. Federal Immigration Regulations Preempt Conflicting State Law

The regulation of immigration is within the exclusive domain of the federal government. *See* U.S. Const. art. I, §8, cl. 4 (granting Congress authority to "establish an uniform Rule of Naturalization"); *Toll v. Morena*, 458 U.S. 1, 10 (1982); *Nyquist v. Mauclet*, 432 U.S. 1, 10 (1977); *DeCanas v. Bica*, 424 U.S. 351, 353 (1976); *Takahashi v. Fish & Game Comm'n*, 334 U.S. 40, 419 (1948) (holding the regulation power of Congress extends not only to admission and naturalization of aliens, but also to the "regulation of their conduct before naturalization"). The supremacy of the federal government's power to regulate issues relating to immigration and naturalization precludes a state from interfering. *Nyquist*, 432 U.S. at 10. When the statute or common law at issue is incongruous with the goals and objectives of federal legislation, the conflicting statute or common-law principle is preempted by the action of Congress. *See Hoffman Plastic Compounds Inc. v. NLRB*, 535 U.S. 137, 151-52 (2002).

### 4. The Award of Lost Wages is Preempted by IRCA

The award of lost wages to an illegal alien who obtained his employment by fraud is in direct contravention of the *IRCA*, which criminalizes such conduct. *See Hoffman* , 535 U.S. at 1515. The United States Supreme Court addressed this very issue in *Hoffman Plastic Compounds Inc. v. NLRB*, 535 U.S. 137, 151 (2002), holding that the National Labor Relations Board (NLRB) could not award back-pay under the *National Labor Relations Act* to an undocumented alien who had obtained employment using false identification in violation of the *IRCA* because such an award would run afoul of the *IRCA* by compensating him "for wages that could not lawfully have been earned." *Id.* at 150. The United States Supreme Court specifically stated:

> We therefore conclude that allowing the Board to award backpay
> to illegal aliens would unduly trench upon explicit statutory
> prohibitions critical to federal immigration policy, as expressed in

IRCA.  It would encourage the successful evasion of apprehension by immigration authorities, condone prior violations of the immigration laws, and encourage future violations.

*Id.* at 151.

Likewise, the award of lost wages on behalf of an illegal alien who obtained his employment under fraudulent pretenses would undermine federal immigration policy.  The Decedent's submission of fraudulent identification "subverts the cornerstone of IRCA's enforcement mechanism."  *Id.* at 148.  Like the Board in *Hoffman*, Plaintiffs ask this Court to overlook Decedent's fraud and "award [wages] to an illegal alien for years of work not performed, for wages that could not lawfully have been earned, and for a job obtained in the first instance by a criminal fraud."  *Id.* at 149.  Decedent's fraud, however, is at the heart of the issue. The award of lost wages for a job attained in violation of *IRCA* would effectively reward conduct prohibited under the *IRCA*, thereby giving rise to a conflict between state and federal law that must be resolved in favor of federal law under preemption principles.

The U.S. District Court for the Middle District of Florida came to this precise conclusion in *Veliz v. Rental Service Corp., USA, Inc.*, which involved virtually identical facts as those herein.  The plaintiff, David Veliz, was the Personal Representative of the Estate of Felipe Valdivia Ignacio (the decedent). *Veliz*, 313 F. Supp. 2d at 1319. Ignacio, an undocumented alien who had tendered false identification documents to obtain employment, was killed in a work-related accident after the forklift on which he was riding toppled over. *Id.* at 1320-21. Veliz sued for damages, including Ignacio's lost past and future wages.  *Id.* at 1319.  The district court granted the defendant manufacturer's motion for summary judgment on preemption grounds.

In reaching its decision, the court concluded that it simply could not "condone an award of lost wages" in light of *IRCA* preemption. *Id.* at 1335-1336.  For the *Veliz* court, "[i]n addition to trenching upon the immigration policy of the United States and condoning prior violations of

immigration laws, awarding lost wages *would be tantamount to violating the IRCA*." *Id.* (emphasis added).

This Court should similarly grant partial summary judgment in favor of Defendants and dismiss Plaintiffs' lost wage claims as being preempted by the *IRCA*. It is undisputed that the Decedent was an undocumented alien who unlawfully obtained employment with JL Steel by knowingly using false identification. *See, e.g.,* Ex A, Vargas Dep. 71:4-8 and 72:19-73:6; Ex. I. Under these circumstances, any damages award based on Decedent's lost wages would unlawfully compensate Plaintiffs for wages that could not have lawfully been earned and would also entrench upon federal immigration policies and condone violations of the *IRCA*. Accordingly, the Court should issue an order granting this motion for partial summary judgment as requested.

## B. Alternatively, Decedent's Undocumented Worker Status Precludes an Award of U.S. Wages

In the alternative, if the Court decides not to dismiss the Plaintiffs' lost wage claims in their entirety, the Court should, at the very least, issue an Order limiting those lost wage claims to the wages that Decedent could have lawfully earned as a Mexican citizen working in Mexico as a concrete rebar iron worker paid in Mexican currency. *See San Agno v. 200 16th Street House Corp.*, 788 N.Y.S. 2nd 314 (App. Div. 2004) (holding that an award of lost wages to an undocumented alien based on the wage scale and industry pay rates of the U.S. would violate *Hoffman*) and the *IRCA*); *see also*, *Rodriquez v. Kline*, 232 Cal. Rptr. 157, 158 (Cal. Ct. App. 1986) (awarding loss wages in Mexican currency where an undocumented alien failed to present any evidence that he was able to work in the U.S. legally); *Hernandez-Cortez v. Hernandez*, CIV.A. 01-1241-JTM, 2003 WL 22519678, at *7 (D. Kan. Nov. 4, 2003) (plaintiff could not recover lost income based on projected United States earnings); *Sanango v. 200 East 16th Street*

*Housing Corp.,* 15 A.D.3d 36, 788 N.Y.S.2d 314, 321(N.Y.A.D. 1 Dept.2004) (cited by *Figueroa v. Williams*, 2010 WL 5387599 (S.D. Tex. Dec. 17, 2010) (vacating plaintiff's existing award for lost earnings and remanding "to afford plaintiff an opportunity to prove the wages that, but for his injuries, he would have been able to earn in his home country"); *Rosa v. Partners in Progress, Inc.*, 152 N.H. 6, 13, 868 A.2d 994, 1000 (2005) (internal citations omitted) ("The strongest argument against the recovery of lost United States earnings is that a contrary rule, of course, would allow someone who is not lawfully available for future work in the United States to receive compensation to which he is not entitled. Allowing an illegal alien to recover lost United States earnings creates a paradoxical situation in which an illegal alien can lawfully become entitled to the value of United States wages only if he becomes physically unable to work."), ("we hold that generally an illegal alien may not recover lost United States earnings, because such earnings may be realized only if that illegal alien engages in unlawful employment."); *Minerva Avalos v. Atlas World Group, Inc.*, 2:03CV174, 2005 WL 6736327, at *3 (S.D. Miss. Apr. 4, 2005) (preventing plaintiff's expert from presenting evidence of lost wages based 100% on U.S. earnings until retirement age of plaintiff; even where illegal immigrant would have planned to stay in the U.S. indefinitely, the court said it would be inappropriate and unrealistic to present evidence to the jury of 100% U.S. wages; *Garay v. Missouri Pac. R.R. Co.,* 60 F.Supp.2d 1168, 1173 (D.Kan.1999) (excluding an expert's economic analysis based on U.S. wages on the ground that the expert's failure "to take into account the decedent's illegal status in the United States renders his opinion as to future lost wages wholly unreliable"); *Cruz v. Bridgestone/Firestone N. Am. Tire, LLC*, CIV 06-538 BB/DJS, 2008 WL 5598439, at *7 (D.N.M. Aug. 29, 2008) (excluding expert testimony as to the value of a statistical life and as to the value of lost earning capacity, lost household services, future medical

expenses, and the statistical value of an average life in America as barred by *Daubert* as they were all computed using average figures applicable only in the United States and should have been based on figures of plaintiff's home country); *Figueroa v. Williams*, V-05-56, 2010 WL 5387599 (S.D. Tex. Dec. 17, 2010) (granting defendant's motion for application of foreign law and stating that "it would make no *practical* sense to determine Plaintiffs' recovery for support and future support without reference to the wage rates of the decedents' home countries").

## VIII.   CONCLUSION

For the reasons set forth above, Defendant is entitled to an order granting its motion for partial summary judgment and dismissing Plaintiffs' claims for lost wages. At the time of his death, Decedent was employed by JL Steel illegally; that is, Decedent—an undocumented alien and citizen of Mexico—indisputably violated the *IRCA* by knowingly using false identification and immigration documents to obtain employment with JL Steel. Given these facts, and in light of the U.S. Supreme Court's decision in *Hoffman* to preclude awards of back-pay to undocumented aliens as a remedy under the *NLRA*, this Court should similarly preclude Plaintiffs from obtaining an award of lost wages, which Decedent could have never legally earned. In the alternative, Plaintiffs' lost wage claims should be limited to the wages that Decedent could have lawfully earned as a Mexican citizen working in Mexico as a concrete rebar iron worker paid in Mexican currency.

Respectfully Submitted,

LEBLANC BLAND P.L.L.C.


/s/ Beau E. LeBlanc
David S. Bland (LA Bar #1257)
Beau E. LeBlanc (LA Bar # 25761)
Charles G. Clayton, IV (LA Bar # 25368)
909 Poydras Street, Suite 1860
New Orleans, LA 70112
Telephone:  (504) 528-3088
Facsimile:  (504) 586-3419
**Attorneys for Defendants KMTC JV.
KECO and Zurich**


## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing pleading has been served upon all

counsel of record either by hand delivery, facsimile or by placing the same in the United States

mail, properly addressed and postage pre-paid, this 24th day of April, 2012.


/s/ Beau E. LeBlanc
BEAU E. LEBLANC