UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| GUADALUPE ARENAS VARGAS, et al., | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-09-2521 |
| | § | |
| KIEWIT LOUISIANA CO., et al., | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM AND ORDER**

Pending before the Court is Defendants' Motion for Partial Summary Judgment on Plaintiffs' Wage Claims ("Motion"), filed by Defendant Kiewit Engineering Company ("KECO") (Doc. Nos. 95, 96) and joined by Defendant Modjeski and Masters, Inc. ("Modjeski") (Doc. No. 98). After considering the parties' arguments and the applicable law, the Court must deny Defendants' Motion.

**I.    BACKGROUND**

This case arises from the death of Martin Anastacio Reyes Osuna ("Reyes"). Reyes was a citizen of Mexico. He died while working on a construction project on the Huey P. Long Bridge in Bridge City, Louisiana. Plaintiff Guadalupe Arenas Vargas ("Arenas Vargas") brings suit individually as Reyes's wife, as representative of Reyes, and as next friend of Zaid Martin Reyes Arenas ("Reyes Arenas"), Reyes's son. Plaintiff also is a citizen of Mexico.

At the time of his death, Reyes was an employee of JL Steel Reinforcing, LLC ("JL Steel"). Plaintiff alleges that the injuries causing Reyes' death were sustained while Reyes and other JL Steel employees were working on a steel rebar cage. The employees climbed to the top

1

of the rebar cage to release it from a crane that had placed the cage in place on top of the pier. The cage crashed to the ground, killing Reyes and another JL Steel employee.

The construction project was a joint venture of Kiewit Louisiana Co. ("Kiewit"), Massman Construction Co. ("Massman"), and Traylor Bros., Inc. ("Traylor"), along with a company they had jointly formed for purposes of the bridge project, Kiewit Massman Traylor Constructors ("KMTC").  KMTC contracted with the Louisiana Department of Transportation and Development ("LADOTD") to widen the bridge and subcontracted with JL Steel to perform a portion of the contract.

Reyes obtained his employment with JL Steel by providing a social security card and his Consular Identification Card.  (JL Steel Personnel File of Martin Anastacio Reyes Osuna, Doc. No. 96-5.)  However, Plaintiff has admitted that Reyes did not have authorization to remain or work in the United States.  (Vargas Depo., Doc. No. 96-1, at 71, 72.)  There is no indication whether JL Steel checked these documents or knew of their falsity.

Plaintiff's Fourth Amended Complaint alleges that Defendants are liable for Reyes's death on the basis of negligence.  She brings a survival claim, under article 2315.1 of the Louisiana Civil Code, as well as a wrongful death claim, under article 2315.2.

The Court has previously dismissed Plaintiffs' claims against JL Steel (Doc. No. 19) and granted summary judgment to KMTC and the individual joint venturers, Kiewit, Massman, and Traylor (Doc. No. 71).  The Court also denied Modjeski's Motion to Dismiss (Doc. No. 80), and thus Modjeski and KECO are the only remaining Defendants.

## II.    LEGAL STANDARD

A motion for summary judgment requires the Court to determine whether the moving party is entitled to judgment as a matter of law based on the evidence thus far presented.  Fed. R.

Civ. P. 56(c).  Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Kee v. City of Rowlett*, 247 F.3d 206, 210 (5th Cir. 2001) (quotations omitted). A genuine issue of material fact exists if a reasonable jury could enter a verdict for the non-moving party. *Crawford v. Formosa Plastics Corp.*, 234 F.3d 899, 902 (5th Cir. 2000). The Court views all evidence in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Id.*; *see also Harvill v. Westward Communications*, L.L.C., 433 F.3d 428, 436 (5th Cir. 2005) (court may not make credibility determinations or weigh the evidence at the summary judgment stage). Hearsay, conclusory allegations, unsubstantiated assertions, and unsupported speculation are not competent summary judgment evidence. Fed. R. Civ. P. 56(e)(1); *see, e.g.*, *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996); *McIntosh v. Partridge*, 540 F.3d 315, 322 (5th Cir. 2008); *see also Little v. Liquid Air Corp.*, 37 F.3d 1069, 1975 (5th Cir. 1994) (noting that a non-movant's burden is "not satisfied with 'some metaphysical doubt as to the material facts'") (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).

### III.   ANALYSIS

Defendants assert that an award of "lost wages"[1] in this case would be in direct contravention of the Immigration Reform and Control Act of 1986 ("IRCA"). IRCA is a

---

[1] The Court assumes that Defendants are objecting to damages for past loss of earnings and loss of future earnings. In a wrongful death action, these damages are relevant to determine loss of support for any plaintiff who can show prior actual support from the decedent. *See Matis v. Joseph*, CIV. A. 05-2615, 2008 WL 3850489, at *2 (E.D. La. Aug. 14, 2008). In a survival action, a plaintiff may recover damages for any loss of wages the decedent incurred before his death. *Subervielle v. State Farm Mut. Auto. Ins. Co,* 32 So.3d 811, 814 (La. Ct. App.2009); *Hollingsworth v. State Through Dept. of Transp. & Dev.*, 663 So. 2d 357, 361 (La. Ct. App. 1995), *writ denied*, 666 So. 2d 322 (La. 1996). The Complaint alleges that Reyes was not killed instantly (Compl., Doc. No. 94, ¶ 6), but the Court is not aware of how long he survived. Thus, the Court will refer to loss of earnings under both the survival and wrongful death actions.

"comprehensive scheme prohibiting the employment of illegal aliens in the United States." *Hoffman Plastic Compounds, Inc. v. N.L.R.B.*, 535 U.S. 137, 147 (2002).  IRCA is "focused foremost on the employer," *Bollinger Shipyards, Inc. v. Director, Office of Worker's Comp. Programs*, 604 F.3d 864, 874 (5th Cir. 2010), as employers must examine specified documents for all newly-hired workers to verify their identity and eligibility for work in the United States.  8 U.S.C. § 1324a(b).  Employers who hire employees who fail to provide the required documentation are subject to civil fines and criminal prosecution.  8 U.S.C. §§ 1324a(a)(1), 1324a(f)(1).  Additionally, a potential employee who tenders false or fraudulent documents for purposes of obtaining employment is subject to fines and criminal prosecution, but the statute "provid[es] nothing regarding *civil* effects." *Bollinger Shipyards*, 604 F.3d at 874.

As the Fifth Circuit explained in *Bollinger Shipyards*, the Supreme Court, on multiple occasions, has addressed situations in which actions of the National Labor Relations Board have been in tension with other federal laws. *See Bollinger Shipyards*, 604 F.3d at 875–77 (discussing *Southern S.S. Co. v. N.L.R.B.*, 316 U.S. 31 (1942); *Sure-Tan, Inc. v. N.L.R.B.*, 467 U.S. 883 (1984); *Hoffman Plastic*, 535 U.S. 137). In *Hoffman Plastic*, the most recent decision in this line of cases, the Supreme Court held that allowing the Board to award backpay to undocumented immigrants would "unduly trench" upon the federal immigration policy expressed in the IRCA.

Although neither party discusses the relevant legal standards, it is important to enumerate the scope of the Supremacy Clause and the standards for determining preemption. Defendants assert that this case is governed squarely by *Hoffman Plastic*.  However, the Supreme Court in that case determined whether a *federal* statute unduly trenched upon IRCA; specifically, whether the NLRB exceeded its discretion in awarding backpay because the remedy conflicted with IRCA objectives.  In this situation, however, the Court must determine whether IRCA preempts

4

a *state* law, a question which implicates federalism concerns. *See Madeira v. Affordable Housing Foundation*, 469 F.3d 219, 236 (2d Cir. 2006).[2]

The Supremacy Clause provides that federal law "shall be the supreme Law of the Land . . . , any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const. art. VI, cl. 2. A state law is preempted by federal law where "(1) Congress expressly preempts state law; (2) Congressional intent to preempt is inferred from the existence of a pervasive regulatory scheme; or (3) state law conflicts with federal law or interferes with the achievement of federal objectives." *Hodges v. Delta Airlines, Inc.*, 44 F.3d 334, 336 n.1 (5th Cir. 1995). The burden of persuasion lies with the party asserting preemption. *AT&T Corp. v. Pub. Util. Com'n of Texas*, 373 F.3d 641, 645 (5th Cir. 2004).

As to the first of the three means of preemption, IRCA does not expressly preempt state tort law allowing undocumented workers to recover compensatory damages; rather, the express preemption clause applies only to "any State or local law imposing civil or criminal sanctions" on persons who employ or assist in the employment of illegal aliens. 8 U.S.C. § 1324a(h)(2); *Madeira*, 469 F.3d at 239. As to the second, although Congress's interest is pervasive and dominant in immigration, tort and labor are areas that traditionally have been left to the states to regulate. *See* U.S. Const. art. I, § 8, cl. 4; *Madeira*, 469 F.3d at 240 (citing *Hines v. Davidowitz*, 312 U.S. 52, 62 (1941); *Silkwood v. Kerr-McGee Corp.,* 464 U.S. 238, 255 (1984)).

The third means of preemption, implicit conflict preemption, presents the most difficult question. Federal law impermissibly conflicts with state law where "compliance with both federal and state regulations is a physical impossibility" or where the state law "stands as an

---

[2] Additionally, the case primarily relied upon by Defendants, *Veliz v. Rental Service Corp., USA, Inc.*, 313 F. Supp. 2d 1317 (M.D. Fla. 2003), does not discuss federalism concerns or the preemption standards, but merely concludes that awarding lost wages "trench[es] upon the immigration policy of the United States," "condon[es] prior violations of immigration laws," and is "tantamount to violating the IRCA." *Id.* at 1336.

obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Arizona v. U.S.*, --- U.S. ---, 132 S. Ct. 2492, 2501 (2012) (quoting *Florida Lime & Avocado Growers, Inc. v. Paul*, 373 U.S. 132, 142–43 (1963); *Hines*, 312 U.S. at 67). Providing damages for lost wages and complying with IRCA is not physically impossible. Thus, the Court must consider the latter criterion.

As the Supreme Court has noted, "the case for federal pre-emption is particularly weak where Congress has indicated its awareness of the operation of state law in a field of federal interest, and has nonetheless decided to 'stand by both concepts and to tolerate whatever tension there [is] between them.'" *Bonito Boats, Inc. v. Thunder Craft Boats, Inc.,* 489 U.S. 141, 166–67 (1989) (citing *Silkwood*, 464 U.S. at 256). In its enactment of IRCA, Congress noted that the legislation was not intended "to undermine or diminish in any way labor protections in existing law." H.R. Rep. 99-682(I), at 58, *as reprinted in* 1986 U.S.C.C.A.N. at 5662; *see also Brown v. Ames*, 201 F.3d 654, 661 (5th Cir. 2000) (finding a House Report relevant in this determination, and concluding that Congress did not intend to preempt state law). Tension between federal and state law is not enough to establish conflict preemption. *Incalza v. Fendi N. Am., Inc.*, 479 F.3d 1005, 1010 (9th Cir. 2007) (citing *Silkwood*, 464 U.S. at 256); *Madeira*, 469 F.3d at 241.

Nothing in IRCA demands, or even implies, that tortfeasors should not be held liable for their negligence if the person whom they harm is working in this country illegally or has violated IRCA. Instead, as in *Hoffman Plastic*, the conflict at issue is whether the remedy of lost earnings based on U.S. wages is in conflict with the policy expressed in IRCA, as it presumes continued IRCA violations.[3] The Second Circuit exhaustively examined this issue in *Madeira*, and found

---

[3] Defendants have presented no arguments that convince the Court that *all* awards of future earnings present a potential conflict with IRCA. There is no reason that an award of lost earnings based on Mexican wages would present a conflict with IRCA, as it does not presume future violations of IRCA. Preventing Plaintiff from recovering lost earnings based on Mexican wages would only be a punishment for a previous IRCA violation, and one that is

6

that the New York provision at issue was not preempted by IRCA by comparing the situation to that in *Hoffman Plastics*. *See Madeira*, 469 F.3d at 243–49. As in *Hoffman Plastics*, the Second Circuit considered a variety of factors in the "conflict balance." *Id.* at 246.

Although surprisingly not cited by either party, the Court finds the Fifth Circuit's opinion in *Bollinger Shipyards* highly instructive in assessing this case in light of *Hoffman Plastic* and determining whether a conflict exists by balancing the relevant factors. In *Bollinger Shipyards*, the Fifth Circuit considered whether an undocumented immigrant could receive workers' compensation benefits under the Longshore and Harbor Workers' Compensation Act ("LHWCA"). It distinguished *Hoffman Plastic* on three grounds. First, it found that workers' compensation under the LHWCA is a non-discretionary, statutory remedy, unlike the discretionary backpay awarded under the NLRA in *Hoffman Plastic*. *Bollinger Shipyards*, 604 F.3d at 877. Second, it found that, unlike the NLRA, the LHWCA's remedial scheme is a substitute for tort claims, and the Fifth Circuit had held previously that an undocumented immigrant has the right to sue a vessel owner in tort for negligence and recover future lost wages based on his employment at the time of injury. *Bollinger Shipyards*, 604 F.3d at 878 (citing *Hernandez v. M/V Rajaan*, 841 F.2d 582, *amended after rehearing*, 848 F.2d 498 (5th Cir. 1988)). Third, the Fifth Circuit held that awarding benefits under the LHWCA does not "unduly trench upon explicit statutory prohibitions critical to federal immigration policy." *Bollinger Shipyards*, 604 F.3d at 879. To award benefits under the LHWCA, the employee did not need to remain in the United States illegally or trigger new IRCA violations, as LHWCA claimants are not required to mitigate damages by working. *Id.* Importantly, the court found that Plaintiff was

---

not contemplated by the statute. Thus, the Court evaluates only Defendants' argument in the alternative—that Plaintiff should be precluded from obtaining an award of lost earnings based on U.S. wages and should only be able to recover lost wages based on Reyes's earning potential in Mexico.

not "being 'rewarded' for a past violation of the IRCA, as workers' compensation is not backpay, but compensation for an injury incurred." *Id.*

By this reasoning, the lost earnings damages available under wrongful death and survival statutes must not be preempted under the stricter standards applicable to state law preemption. Like workers' compensation, lost earnings must be awarded based on the evidence a plaintiff produces at trial to meet her burden. *See Ryan v. Zurich American Ins. Co.*, 988 So. 2d 214, 218 (La. 2007) (appellate courts must determine if the factfinder abused its vast discretion in awarding damages and raise or lower the award to the highest (or lowest) point reasonably within the discretion of that court) (citing *Coco v. Winston Industries, Inc.*, 341 So. 2d 332 (La. 1977)).

Lost earnings awards in wrongful death and survival actions are also clearly tort remedies equivalent to those authorized in *Bollinger Shipyards* and *Hernandez*. An award of lost earnings is intended to make the decedent, and those who relied on him for support, whole, by paying them the amount that the decedent would have earned if not for Defendants' negligence. In tort actions, "the wrong being compensated is personal injury not authorized by IRCA under any circumstances," unlike the layoff at issue in *Hoffman Plastic*. *Madeira*, 469 F.3d at 246. Specifically, in wrongful death and survival actions, the wage-earner is deceased, and thus there will be no new IRCA violations possibly triggered by this award; decedent cannot possibly mitigate any lost earnings damages. Moreover, as in *Hernandez*, Defendants are third parties that "do[] not stand in the same relationship to the decedent as an employer," which thus "does not present the conflict between federal labor policy and federal immigration policy present in both *Sure-Tan* and *Hoffman*." *Minerva Avalos v. Atlas World Group, Inc.*, 2:03CV174, 2005 WL 6736327, at *4 (S.D. Miss. Apr. 4, 2005).

Defendants stress that Reyes used false identification documents to obtain employment with JL Steel in violation of IRCA. Thus, they believe that an award of lost earnings would undermine immigration policy by condoning violations of IRCA and awarding wages to someone for wages that could not lawfully have been earned. However, this Court does not find the same danger of motivating immigration policy violations to be present in this case, as immigrants will not be motivated to violate IRCA in order to obtain additional U.S. wages after suffering fatal injuries. Rather, the Court's ruling today counteracts another competing motivation—that of third-parties to exercise less caution and endanger the lives of any undocumented immigrants. *Madeira*, 469 F.3d at 248; *Rosa v. Partners in Progress, Inc.*, 868 A.2d 994, 1000 (N.H. 2005) ("To refuse to allow recover against a person responsible for an illegal alien's employment who knew or should have known of the illegal alien's status would provide an incentive for such persons to target illegal aliens for employment in the most dangerous jobs or to provide illegal aliens with substandard working conditions.").

Additionally, Plaintiff will not be guaranteed future wages based on the rate Reyes would have received in the United States. Instead, Defendants will be entitled to establish that "the use of past wages to calculate future damages was factually improper and, if so, what a proper measure of damages should be." *Hernandez*, 848 F.2d at 500; *see also Coco*, 341 So. 2d at 338 ("Wages at time of injury are usually suggestive of the individual's future earnings. This is not an absolute unvarying rule. In many instances, changes in work and increase of earnings would be more probable."). Defendants may present proof that Reyes "was about to be deported or would surely be deported," or proof that his false documents may have been discovered and thus eliminate his chances of continuing or finding additional work in the United States. *See Madeira*, 469 F.3d at 248–49 (approving an instruction to consider the worker's removability in

9

calculating the amount of compensation to award). The precise language of this instruction will be decided after it is discussed by the parties prior to trial and submitted as part of their proposed jury instructions.

## IV. CONCLUSION

Based on the foregoing, Defendants' Motion for Partial Summary Judgment on Plaintiff's Wage Claims (Doc. No. 95, 98) is **DENIED**.

**IT IS SO ORDERED**.

**SIGNED** at Houston, Texas, on this the 18th day of July, 2012.

*/s/ Keith P. Ellison*

KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE